# EXHIBIT A

## SALES AGREEMENT

| | |
|---|---|
| Buyer: | SEI SOCIETE D'EQUIPMENT INTERNATIONAUX |
| End User: | Minister of Defence Nigeria |
| Seller: | Dolarian Capital, Inc. |
| **DCI Contract No:** | **14_090v4** |

THIS SALE AGREEMENT (the "Agreement"), is made this ___ day of June 2014 (the "Effective Date") by and between Dolarian Capital, Inc. ("Dolarian" or "SELLER"), a California corporation, incorporated in the State of California, with its principal place of business at 1284 N. Shaw Avenue, Suite 102, Fresno, CA 93711 or assignee, and Nigerian Army, Ministry of Defence Area 7 Garki, Abuja ("Buyer") and (collectively, the "Parties").

### DEFINITIONS

1. Goods and Services. Goods subject to this Agreement are set forth in Attachment "A".

2. Price. The Price is Goods as set forth in Attachment "A". Delivery, which is an optional service to the Final Destination.

3. Dispatch. Dispatch is defined as the date on which the freight forwarder takes possession of SELLER's Goods. This transaction may require multiple dispatches, delivery and partial shipments.

4. Customs. BUYER is responsible for all Custom's clearances at the Final Destination; Delivery Duty Unpaid (DDU).

5. Delivery: To a BUYERS Port. Price does not include inland transportation in BUYERS Territory. Attachment "C".

### TERMS AND CONDITIONS

**NOW, THEREFORE, based on mutual consideration, the receipt and adequacy of which is mutually acknowledged, the parties agree to the following terms and conditions:**

1. **Compliance with Laws.**

    a. SELLER warrants that it is in full compliance with all applicable United States laws, and regulations and will remain in full compliance with all applicable laws and legal standards during the term of this Agreement. SELLER further covenants, warrants and represents that it shall comply with all applicable United States laws, including regulations and Executive Orders, applicable to this Agreement and performance of the obligations herein, including but not limited to any applicable United States export control laws and trade restrictions, including but not limited to the U.S. International Traffic in Arms Regulations ("ITAR") and Foreign Assets Control Regulations ("OFAC Regulations"), which govern the export and re-export of U.S., Origin defense articles and technology and goods and technology subject to U.S. jurisdiction.

    b. BUYER acknowledges and agrees that the Materials may be subject to Export Controls. The Parties may not export, re-export or transfer, whether directly or indirectly, the Materials, or any portion thereof, without first complying strictly and fully with any applicable Export Controls regarding the Materials.



2. **Import/Export License.** SELLER agrees that it shall maintain all permits, licenses and other governmental approvals that may be required by the United States for SELLER's performance under this Agreement. Specifically, SELLER is responsible for all Export License(s) applications from Country of Export and the End User (BUYER) is responsible for Import Permits or Waivers thereof. Buyer will cooperate with Seller and will provide a valid executed acceptable End User Certificate and other documentation, if required by any Governmental Agency associated with this transaction. Attachment "B".

3. **Foreign Corrupt Practices Act.** The Parties also acknowledge that Seller shall not take any action in violation of national anti-corruption laws, including the U.S. Foreign Corrupt Practices Act and the UK Bribery Act. The provisions of this section shall survive any termination or expiration of this Agreement.

3. **Recordkeeping.** The Parties shall maintain all records related to the Agreement as necessary to secure Export permits and/or Import Licenses.

4. **Changes and Alterations.** Should BUYER change a specification, quantity, and or delay and or fail to provide requested documents, and or provide incorrect instructions and or documents, any and all extra costs incurred by the SELLER shall be the responsibility of the BUYER.

5. **Specification and Performance.** The Goods supplied will be substantially in compliance with the specification attached to this Agreement, subject to commercially reasonable manufacturing variations. Such variation shall not be the basis of any claim against SELLER or its suppliers. No advertisements, catalogues, or other publications or statements regarding the Performance of the Goods other than as set forth in Attachment "A" is part of the Agreement. SELLER reserves the right to supply Goods in fulfillment of its obligations under this Agreement utilizing modified design criteria or manufacturing means and/or methods, provided that the performance of the Goods is not adversely affected.

6. **Conditions Precedent.** SELLER's obligations and responsibilities to proceed shall commence upon the signing, sealing of this Agreement and receipt of the payment as provided in Attachment "A".

7. **Indemnity.** BUYER shall hold SELLER, its subsidiaries, affiliates, related entities, partners, agents, officers, directors, employees, members, shareholders, attorneys, heirs, successors, and assigns, and each of them, harmless from and against any and all claims, actions, suits, proceedings, demands, losses, damages, judgments, settlements, obligations, costs and expenses (including reasonable attorneys' fees and expenses), and liabilities of every kind and character whatsoever (a "Claim"), in connection with any personal injury, including death, or any damage to property, which may be suffered by BUYER's use, operation, or failure of the Goods furnished to perform as set forth in Attachment "A".

8. **Force Majeure.** If SELLER's ability to perform its obligation under the Agreement is limited, delayed or prevented in whole or in part by any reason whatsoever not reasonably within the control of SELLER, or its suppliers, including without limitation, act of God, war, invasion, act of foreign enemy, hostilities, civil war, rebellion, civil strife, strikes and/or industrial dispute or by any law, rule, regulation, order or other action by any public authority, transportation delays or the refusal of any necessary export or import license. SELLER shall be excused, discharged, and released of performance to the extent such performance is so limited, delayed or prevented without liability of any kind.

9. **Entire Agreement.** This Agreement: (i) constitutes the entire Agreement between the Parties hereto with respect to the subject matter hereof; (ii) supersedes and replaces all prior agreements, oral or written, between the Parties relating to the subject matter hereof; and (iii) may be amended only by a written instrument clearly setting forth the amendment(s) and executed by an officer of SELLER. In



the event of a conflict between this Agreement and any other Agreement, this Agreement shall supersede and take precedence over such conflicting terms and conditions.

10. **Notice.** All notices, requests, demands or other communications which are required or may be given pursuant to the Terms and Conditions of the Agreement shall be in writing and shall be deemed to have been dully given if delivered by hand or mail by certified or registered mail, postage prepaid specified by the parties in the Agreement.

11. **Governing Law.** All questions with respect to the construction of this Agreement or the rights and liabilities of the parties under this Agreement shall be determined in accordance with the laws of the United States of America excluding any conflicts of laws provisions. BUYER hereby agrees to submit himself to the International Chamber of Commerce (ICC) for purposes of resolving any disputes or breaches of this Agreement only. BUYER waives any and all rights and or claims to Sovereign Immunity in connection with the claims and/or disputes arising under this Agreement.

12. **Venue.** The Parties agree that any claim and/or dispute arising under this Agreement shall be submitted to the International Chamber of Commerce (ICC) for resolution. Said body shall be the sole and exclusive entity with jurisdiction to resolve the dispute and/or claim. The Parties to this Agreement hereby adopt the Rules of the ICC for Arbitration and agree that any award issued by the ICC shall be binding, final and enforceable anywhere in the world.

13. **Assignment.** This Agreement may be assigned, or the rights granted under this Agreement transferred or sub-licensed, by either party without the express prior written consent of the other party.

14. **Language.** Governing language for this Agreement is English.

15. **General.** Any provision or provisions of the Agreement prohibited by, or unlawful under, any applicable law of any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provision of the Agreement, provided, however, that where the provisions of any such applicable law may be waived, they are hereby waived by BUYER as to the full extent permitted by law, to the end that the Agreement shall be deemed to valid, binding, and enforceable in accordance with its terms.

16. **Headings.** The headings of the various paragraphs in the Agreement are intended solely for reference and are not intended to explain, modify or place any construction upon any of the provisions of this Agreement.

17. **Notice.** All notices and demands of any kind or nature that either party may be required or may desire to serve upon the other in connection with this Agreement shall be in writing and may be served personally, by fax, by certified mail, or by overnight courier, with constructive receipt deemed to have occurred on the date of the mailing, sending or faxing of such notice, to the following addresses or fax numbers:

| If to SELLER: | If to BUYER: |
|---|---|
| Ara G Dolarian | Mr. H Aboubakar |
| Dolarian Capital, Inc. | SEI Nigeria Limited |

The Parties through their duly authorized representatives agree to this Agreement as of the date and year first above written.

BUYER:

By: Mr. I\[illegible\] Aboubakar
Its: Director

SELLER:

By: Ara G Dolarian
Its: President

Page 5

## ATTACHMENT "A"

| | |
|---|---|
| DCI Ref. No.: | 14_90v4 Nigeria A&W |
| End User: | MOD Nigeria |
| Terms: | 50% Advance Payment, Balance due at dispatch |
| Freight: | DDU Nigeria |
| Price Valid: | 20-Jun-14 |
| Condition | Acceptable End User Certificate, Export License and other approvals deemed necessary |
| Delivery: | After all approvals and Payments, Partial Deliveries |

| Item | Description | Quantity | Price | Extension |
|---|---|---|---|---|
| | **Weapon(s)** | | | |
| 1.0 | DEFA Type 553 Gun | 6 | 21,000.00 | 126,000.00 |
| 2.0 | Arming Wire for 125kg bomb, ARM MLE FZA | 40 | 4.20 | 168.00 |
| 3.0 | Arming Wire for 250kg bomb, SECU MLE FZA | 50 | 4.20 | 210.00 |
| 4.0 | Arming Wire for 250kg bomb, SAMP MLE FZ9 | 100 | 4.20 | 420.00 |
| 5.0 | Marta 155 Type Launch Pod | 16 | 40,530.00 | 648,480.00 |
| | | | Sub-Total | 775,278.00 |

| Item | Description | Quantity | Price | Extension |
|---|---|---|---|---|
| | **Ammunition** | | | |
| 6.0 | 250kg Bomb HE | 500 | 4,375.00 | 2,187,500.00 |
| 7.0 | 100kg Bomb HE | 500 | 2,770.25 | 1,385,125.00 |
| 8.0 | 30x113mm DEFA | 25,000 | 53.75 | 1,343,750.00 |
| 9.0 | Pylon, F71A | 3,000 | 7.80 | 23,389.50 |
| 10.0 | 68mm SNEB Rocket | 5,000 | 580.20 | 2,901,000.00 |
| | | | Sub-Total | 7,840,764.50 |
| | | | Total | 8,616,042.50 |

## ATTACHMENT "B"

Required Documents and Certification for Delivery of Attached "A":

1. SELLER will prepare End User Certificate for BUYER and BUYER will return to SELLER the executed original to SELLER.
2. BUYER to provide SELLER with original Import Certificate or Waiver of Requirement.
3. Original of this Agreement Signed and Sealed by BUYER.
4. Certificate of Delivery Confirmation. BUYER is required by law to return to SELLER within 10 days a Certificate of Delivery Confirmation. SELLER will provide to BUYER this document.



Page 5

## ATTACHMENT "C"

1. Date of carriage is subject to final confirmation of vehicle, load, build and break arrangements at routing and ports of entire requiring necessary permits, license(s), and rights.

2. Freight includes the shipment of Goods with basic load and build.

    a. Freight Price excludes: external crane, storage, customs clearance, duties, taxes, royalties, de-icing, declared value coverage, warehousing, and ground transportation at loading or other, if these cost are incurred they will be charged to BUYER.

3. BUYER agrees to pay surcharges for Goods, if any for: fuel, fluctuation in the U.S. Dollar, handling, load, stevedore, security and / or war risk, hazardous and dangerous goods, build, break, and port fees.

4. BUYER agrees that the carriage schedule and routing are subject to change based on, mechanical issues, hostilities, war, civil unrest, political affairs, embargo(s), and delays caused by shipments prior to the BUYERS shipment, and changes in cargo handling arrangements.

5. BUYER is responsible for having the necessary equipment to off load at port as well as ground transportation.

6. BUYER is responsible to return to SELLER all of SELLERS equipment the BUYER used during the course of business within 15 days. If BUYER is does not return to SELLER its equipment, SELLER may replace equipment and charge BUYER, SELLERS cost.

7. SELLER has the right to offset goods in ATTACHMENT "A" if payment on Invoice(s) are not paid by within 30 days.

