

1   Ara G. Dolarian
    1284 W. Shaw Ave #102
2   Fresno, CA 93711

3   In Pro Per

FILED

NOV 1 8 2015

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

4

5

6                   UNITED STATES DISTRICT COURT

7              EASTERN DISTRICT OF CALIFORNIA - FRESNO

8

9   SOCIETE D'EQUIPMENTS                 )   Case No.  1:15-CV-01553 ----SKO
    INTERNATIONAUX NIGERIA, LTD,         )
10                                       )   COUNTERCLAIM and THIRD PARTY
    Plaintiff/Counterclaim Defendant     )   CLAIM BY ARA DOLARAIAN
11                                       )
            vs.                          )
12                                       )
                                         )
13                                       )
    DOLARIAN CAPITAL, INC., Defendant    )
14  and ARA G. DOLARIAN
    Counterclaim Plaintiff and Defendant  and
15  3rd Party Plaintiff

16
            vs.
17

18  Amanda Giovanni, 3rd Party Defendant

19  COMES NOW ARA DOLARIAN TO PLEAD its Counterclaim as follows:

20  1. Ara G. Dolarian (Dolarian) is a US Citizen residing in Fresno, CA and is the sole

21  shareholder of Dolarian Capital, Inc. (DCI).  At all relevant times as alleged herein, DCI

22  is licensed by the US Department of State to buy and sell weapons and ammunition,

23  which are subject to US Department of State control under the International Traffic in

24  Arms Regulation (ITAR). Dolarian has standing to file this Counterclaim in that the

25  damages alleged by Counterclaim Defendant relate to or flow from the duties and actions

26  alleged herein.

27  2. Societe D'Equipments InternationAUX Nigeria, LTD (SEI) is a foreign entity with

28  known offices in Paris, France and Nigeria.  All of DCI's negotiations with SEI prior to

- 1 -

1  contracting were conducted in Europe by and through Mr. Hima Aboubakar for SEI and

2  Mr. Marion Ford, agent for DCI.

3  3. Each of the individuals acting on behalf of SEI were acting as agents for or on behalf

4  of SEI throughout the times alleged in the CounterClaim.

5  <center>First Counterclaim for Relief</center>

6  <center>(Breach of Contract by SEI)</center>

7  4. Dolarian herein incorporates by reference each and every allegation of paragraph 1

8  through 3 as though set forth in their entirety.

9  5. Commencing in May 2014, DCI was contacted by Marion Ford, a US citizen residing

10  in Prague. Mr. Ford was known to DCI but had not been employed by DCI in any

11  capacity prior to the contracts with Societe E'Equipments Internationaux Nigeria, LTD

12  (SEI). Mr. Ford stated that he had a customer, who wanted to buy weapons, aircraft, and

13  ammunition on behalf of the Nigerian government.

14  6. Ford is not licensed by the US Department of State. DCI offered him an Agency

15  Agreement whereby he would be paid a commission on purchases by SEI. Ford accepted

16  and signed the Agency Agreement. All of the negotiations for the goods alleged in SEI's

17  complaint were conducted by Ford while in Prague, Czech, EU, up to date of signing

18  Exhibit A attached to SIE's complaint. Upon information and belief, Mr. Hima

19  Aboubakar was in Paris, France during said negotiations.

20  7. Thereafter, SEI signed the following contracts: 14_089 (June 2014), 14_090 (June

21  2014), 14_095 (June 4, 2014), 14_096 (June 4, 2014), 14_121 (July 24, 2014), and

22  14_149 (August 17, 2014) for a total contract value of $246,433,542.50. A true copy of

23  each of the contracts is attached hereto as collective Exhibit "A". DCI signed the

24  contracts after SEI while located in Fresno, Ca. Each of said contracts required the

25  payment of a deposit in the sum of 50% of the contract value, said payment was to be

26  received by DCI in conjunction with the signing and sealing of the contract. SEI was to

27  provide DCI with the necessary End User Certificate(s).

28

9. Following the signing of the above referenced contracts, SEI made two (2) deposits of funds in the sum of $8,618,646.57. Such deposit was less than the amount required by the above contracts, which DCI asserts is the sum of $123,216,771.25. DCI has demanded that SEI perform its contractual duties as set out in each of the contracts and make the necessary deposit of funds, but SEI has failed and refused to make such deposit.

10. Following receipt of the deposit in the sum of $8_____ but based upon promises by SEI to provide additional funds required by the contract, DCI submitted to the US Department of State a request for issuance of a license to supply the goods subject to the contracts.

11. Such license is necessary for the release of the goods to fulfill the contract(s). Said license request is pending as of the date of this Counterclaim.

12. Counterclaim defendant has breached the written terms of the contracts set forth above and has failed and refused to provide End User certificates for contracts signed by the CounterClaim Defendant. Said End User Certificates are required by the US Department of State and are identified in the contracts as necessary documents to enable the delivery of the weapons and ammunition to SEI.

13. As a direct cause and result of SEI's failure to perform its obligations and duties assumed in said contracts, DCI has been damaged in amount estimated to be in excess of $20,000,000 but which has not been calculated as of the date hereof. DCI will seek leave of the court to set forth amount of damages when known.

<div align="center">

First 3rd Party Claim for Relief

(Intentional Interference with Contract)

</div>

14. DCI herein incorporates by reference each and every allegation of paragraphs 1 and 3 as though set forth in their entirety.

15. Third Party Defendant, Amanda Giovanni (AG) is an individual residing in US District of Columbia. She has performed the acts alleged herein concerning among others the Nigerian Weapons Contracts attached as Exhibit A to the complaint as more fully alleged hereinbelow. She claims to be an employee of the US Department of State

1  and has the necessary contacts and influence to obtain approvals of licenses for the

2  export/import of defense items which are subject to control under the International

3  Traffic in Arms Regulations (22 CFR §120.1 et seq).

4  16. On or about  DCI July 2015, Dolarian was contacted by his Washington DC agent,

5  that it was important that he come to Washington DC for a meeting.  This request come

6  from Colby Miller, who was trusted confidant to Dolarian.  Miller had advised Dolarian

7  on various contracts and assisted in dealing with issues with the US Department of State.

8  Miller represented that he had been contacted AG and that she could solve all issues

9  regarding the outstanding Dolarian contracts.

10  17. The US Department of State has exclusive jurisdiction over the interpretation and

11  implementation of the International Traffic in Arms Regulations pursuant to 22 CFR

12  §120.1 by delegation of the President of the United States to the Secretary of State.

13  18. 22 CFR §123.1 provides that a person seeking to export or import a defense article

14  must obtain the approval of the Directorate of Defense Trade Controls (Department of

15  State) prior to the export or import of said defense article.

16  19. In July, 2015 and while the above contracts with SIE were pending approval for a

17  license from the US Department of State, 3rd Party defendant, AG told Dolarian that she

18  could solve all problems with the Department of State and secure approvals for the

19  Nigerian contracts.  That Dolarian would be required to assign the pending contracts to

20  her company, BIDS, in order for the approvals to take place.

21  20. Thereafter in the presence of Dolarian, AG allegedly telephoned Daniel Cook, who is

22  known to Dolarian as the Chief of the License section for the US Department of State.

23  AG told Cook that the license would only be issued after Dolarian assigned the written

24  contracts to her and until that occurred that he should withhold approval of said contracts.

25  21. Dolarian has refused to assign the Nigerian contracts to AG and her company BIDS

26  as such act would be a breach of the contract.  As a direct cause and effect of the acts of

27  AG, the US Department of State has withheld approval of the license for the Nigerian

28  contracts.

21.  Said conduct on the apart of AG constitutes intentional  interference with contract.

22.  Said acts were taken with oppression and malice by 3rd party defendant AG and justifies the imposition of exemplary damages.

<div align="center">Second 3rd Party Claim for Relief</div>

<div align="center">(Negligent Interference with Contract)</div>

23.  DCI incorporates by reference each and every allegation of paragraphs 1 and 3 and the First 3rd Party claim for Relief (paragraphs 14 through 22).

24.  DCI asserts that if the acts of 3rd Party Defendant AG were not intentional then the acts alleged were negligent and resulted in interference with the Nigerian contracts alleged herein above.

WHEREFORE DCI prays the court enter judgment as follows:

1.  For damages according to proof as to Counterclaim defendant SEI;

2.  For damages according to proof as to 3rd Party defendant Kiser;

3.  For costs of suit herein;

4.  For such other and additional damages and relief as the court deems just and proper.

Dated:

Ara G. Dolarian

Ledgend of Exhibits

| Ex # | Description DCI Reference No. / Exept Exhibit G | Executed Contract(s) between SEI & DCI | | | Nigerian Government End User | | Contract | |
|---|---|---|---|---|---|---|---|---|
| | | Date | Value | Deposit | Certificate Issued | Branch of Military | Notice of Future Cancelation | Demand for Money |
| A | 14_089 | 11-Jun-14 | 100,000,000.00 | No | No | Air Force | No | No |
| B | 14_089 Invoice | 1-Aug-14 | 50,000,000.00 | No | No | Air Force | No | No |
| | 14_090v4 | Jun-14 | 8,616,042.50 | Yes | Yes | Air Force | No | No |
| | 14_090 v4 Exhibit A-1 | 14-Jul-14 | 5,585,000.00 | Yes | Yes | Air Force | No | No |
| C | 14_095 | 4-Jun-14 | 1,250,000.00 | No | Yes | Army | Yes | No |
| D | 14_096 | 4-Jun-14 | 2,675,000.00 | No | Yes | Army | Yes | No |
| E | 14_121v4 | 24-Jul-14 | 63,307,500.00 | No | Yes | Army | Yes | No |
| F | 14_149v1 | 17-Aug-14 | 15,000,000.00 | No | Yes | Army | Yes | No |
| G | SEI Letter of 13 May 2015 | | | | | | | |

Total Contract Value     $ 246,433,542.50

U.S. Depatment of State Directorate of Defense Trade Control (DDTC) Application Submissions

| Ex # | Description DCI Reference No. | DDTC | | | | |
|---|---|---|---|---|---|---|
| | | Date of Application | Date Issued | Reply | Submission Number | Reason |
| A | 14_089v4 | | | | | |
| | 14_089 Invoice | | | | | |
| | 14_089 | | | | | |
| B | 14_090v4 | 6-Jun-14 | Jun-14 | RWA | 1 | Request to Resubmit |
| | 14_090 v4 Exhibit A-1 | 19-Jun-14 | 8-Aug-14 | RWA | 2 | End Use Monitoring |
| | | 3-Jun-15 | 30-Jul-15 | Denied | 3 | Foreign Policy |
| C | 14_095 | | | | | |
| D | 14_096 | | | | | |
| E | 14_121v4 | 13-Jul-15 | Open | None | 1 | Pending at DDTC |
| F | 14_149v1 | | | | | |

# ATTACHMENT

# A

## SALES AGREEMENT

Buyer:                    SEI SOCIETE D'EQUIPMENT INTERNATIONAUX

End User:                 Minister of Defence Nigeria

Seller:                   Dolarian Capital, Inc.

**DCI Contract No:        14_089v4 Nigeria Helio**

THIS SALE AGREEMENT (the "Agreement"), is made this 3 day of August 2014 (the "Effective Date") by and between Dolarian Capital, Inc. ("Dolarian" or "SELLER"), a California corporation, incorporated in the State of California, with its principal place of business at 1284 N. Shaw Avenue, Suite 102, Fresno, CA 93711 or assignee, and Nigerian Army, Ministry of Defence Area 7 Garki, Abuja ("Buyer") and (collectively, the "Parties").

### DEFINITIONS

1. Goods and Services. Goods subject to this Agreement are set forth in Attachment "A".

2. Price. The Price is Goods as set forth in Attachment "A". Delivery, which is an optional service to the Final Destination.

3. Dispatch. Dispatch is defined as the date on which the freight forwarder takes possession of SELLER's Goods. This transaction may require multiple dispatches, delivery and partial shipments.

4. Customs. BUYER is responsible for all Custom's clearances at the Final Destination; Delivery Duty Unpaid (DDU).

5. Delivery: To a BUYERS Port. Price does not include inland transportation in BUYERS Territory. Attachment "C".

### TERMS AND CONDITIONS

**NOW, THEREFORE, based on mutual consideration, the receipt and adequacy of which is mutually acknowledged, the parties agree to the following terms and conditions:**

1. **Compliance with Laws.**

   a. SELLER warrants that it is in full compliance with all applicable United States laws, and regulations and will remain in full compliance with all applicable laws and legal standards during the term of this Agreement. SELLER further covenants, warrants and represents that it shall comply with all applicable United States laws, including regulations and Executive Orders, applicable to this Agreement and performance of the obligations herein, including but not limited to any applicable United States export control laws and trade restrictions, including but not limited to the U.S. International Traffic in Arms Regulations ("ITAR") and Foreign Assets Control Regulations ("OFAC Regulations"), which govern the export and re-export of U.S.; Origin defense articles and technology and goods and technology subject to U.S. jurisdiction.

   b. BUYER acknowledges and agrees that the Materials may be subject to Export Controls. The Parties may not export, re-export or transfer, whether directly or indirectly, the Materials, or any portion thereof, without first complying strictly and fully with any applicable Export Controls regarding the Materials.

2. **Import/Export License**. SELLER agrees that it shall maintain all permits, licenses and other governmental approvals that may be required by the United States for SELLER's performance under this Agreement. Specifically, SELLER is responsible for all Export License(s) applications from Country of Export and the End User (BUYER) is responsible for Import Permits or Waivers thereof. Buyer will cooperate with Seller and will provide a valid executed acceptable End User Certificate and other documentation, if required by any Governmental Agency associated with this transaction. Attachment "B".

3. **Foreign Corrupt Practices Act**. The Parties also acknowledge that Seller shall not take any action in violation of national anti-corruption laws, including the U.S. Foreign Corrupt Practices Act and the UK Bribery Act. The provisions of this section shall survive any termination or expiration of this Agreement.

3. **Recordkeeping.** The Parties shall maintain all records related to the Agreement as necessary to secure Export permits and/or Import Licenses.

4. **Changes and Alterations**. Should BUYER change a specification, quantity, and or delay and or fail to provide requested documents, and or provide incorrect instructions and or documents, any and all extra costs incurred by the SELLER shall be the responsibility of the BUYER.

5. **Specification and Performance**. The Goods supplied will be substantially in compliance with the specification attached to this Agreement, subject to commercially reasonable manufacturing variations. Such variation shall not be the basis of any claim against SELLER or its suppliers. No advertisements, catalogues, or other publications or statements regarding the Performance of the Goods other than as set forth in Attachment "A" is part of the Agreement. SELLER reserves the right to supply Goods in fulfillment of its obligations under this Agreement utilizing modified design criteria or manufacturing means and/or methods, provided that the performance of the Goods is not adversely affected.

6. **Conditions Precedent.** SELLER's obligations and responsibilities to proceed shall commence upon the signing, sealing of this Agreement and receipt of the payment as provided in Attachment "A".

7. **Indemnity.** BUYER shall hold SELLER, its subsidiaries, affiliates, related entities, partners, agents, officers, directors, employees, members, shareholders, attorneys, heirs, successors, and assigns, and each of them, harmless from and against any and all claims, actions, suits, proceedings, demands, losses, damages, judgments, settlements, obligations, costs and expenses (including reasonable attorneys' fees and expenses), and liabilities of every kind and character whatsoever (a "Claim"), in connection with any personal injury, including death, or any damage to property, which may be suffered by BUYER's use, operation, or failure of the Goods furnished to perform as set forth in Attachment "A".

8. **Force Majeure**. If SELLER's ability to perform its obligation under the Agreement is limited, delayed or prevented in whole or in part by any reason whatsoever not reasonably within the control of SELLER, or its suppliers, including without limitation, act of God, war, invasion, act of foreign enemy, hostilities, civil war, rebellion, civil strife, strikes and/or industrial dispute or by any law, rule, regulation, order or other action by any public authority, transportation delays or the refusal of any necessary export or import license, SELLER shall be excused, discharged, and released of performance to the extent such performance is so limited, delayed or prevented without liability of any kind.

9. **Entire Agreement**. This Agreement: (i) constitutes the entire Agreement between the Parties hereto with respect to the subject matter hereof; (ii) supersedes and replaces all prior agreements, oral or written, between the Parties relating to the subject matter hereof; and (iii) may be amended only by a written instrument clearly setting forth the amendment(s) and executed by an officer of SELLER. In the event of a conflict between this Agreement and any other Agreement, this Agreement shall supersede and take precedence over such conflicting terms and conditions.

10. **Notice.** All notices, requests, demands or other communications which are required or may be given pursuant to the Terms and Conditions of the Agreement shall be in writing and shall be deemed to have been dully given if delivered by hand or mail by certified or registered mail, postage prepaid specified by the parties in the Agreement.

11. **Governing Law.** All questions with respect to the construction of this Agreement or the rights and liabilities of the parties under this Agreement shall be determined in accordance with the laws of the United States of America excluding any conflicts of laws provisions. BUYER hereby agrees to submit himself to the International Chamber of Commerce (ICC) for purposes of resolving any disputes or breaches of this Agreement only. BUYER waives any and all rights and or claims to Sovereign Immunity in connection with the claims and/or disputes arising under this Agreement.

12. **Venue.** The Parties agree that any claim and/or dispute arising under this Agreement shall be submitted to the International Chamber of Commerce (ICC) for resolution. Said body shall be the sole and exclusive entity with jurisdiction to resolve the dispute and/or claim. The Parties to this Agreement hereby adopt the Rules of the ICC for Arbitration and agree that any award issued by the ICC shall be binding, final and enforceable anywhere in the world.

13. **Assignment.** This Agreement may be assigned, or the rights granted under this Agreement transferred or sub-licensed, by either party without the express prior written consent of the other party.

14. **Language.** Governing language for this Agreement is English.

15. **General.** Any provision or provisions of the Agreement prohibited by, or unlawful under, any applicable law of any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provision of the Agreement, provided, however, that where the provisions of any such applicable law may be waived, they are hereby waived by BUYER as to the full extent permitted by law, to the end that the Agreement shall be deemed to valid, binding, and enforceable in accordance with its terms.

16. **Headings.** The headings of the various paragraphs in the Agreement are intended solely for reference and are not intended to explain, modify or place any construction upon any of the provisions of this Agreement.

17. **Notice.** All notices and demands of any kind or nature that either party may be required or may desire to serve upon the other in connection with this Agreement shall be in writing and may be served personally, by fax, by certified mail, or by overnight courier, with constructive receipt deemed to have occurred on the date of the mailing, sending or faxing of such notice, to the following addresses or fax numbers:

    **If to SELLER:**                          **If to BUYER:**

    Ara G Dolarian                             Mr. H Aboubakar
    Dolarian Capital, Inc.                     SEI Nigeria Limited

The Parties through their duly authorized representatives agree to this Agreement as of the date and year first above written.

BUYER:

_____

By:  Mr. H Aboubakar
Its:   Director

SELLER:

_____

By:  Ara G Dolarian
Its:   President

## ATTACHMENT "A"

- Goods: **Mi-24/Mi-35 Helicopter**
- Price Each: $25,000,000.00
- Quantity: Six (6)
- Total Price: $150,000,000.00
- Delivery: Quantity of two (2) helicopters per shipment. Forty-five (45) days after the delivery of the first two (2) helicopters an additional payment of $50,000,000.00 will be due and payable for the next two (2) helicopters that will ship upon payment.
- Terms: Payment 100% in advance of each shipment to two (2) of $50,000,000.00.
- Incoterms: Shipment DDU Nigeria
- Condition of Goods: "As Is" vehicles are in service
- Built: 2009 or later
- Condition of Sale: Acceptable End User Certificate, Export License and other approvals deemed necessary. Delivery to begin after all approvals and payments are received.

### General Specifications

Armament:
- ➢ Rocket Launch Pods Two (2) each 57mm.
  Capacity 32 rounds each, ammunition 75mm S-5MO
- ➢ GSh-2-30 cannon, dual barrel (30 x 165mm)

General characteristics
- Crew: 2–3: pilot, weapons system officer and technician (optional)
- Capacity: 8 troops or 4 stretchers or 2400 kg (5,291 lb) cargo on an external sling
- Length: 17.5 m (57 ft 4 in)
- Rotor diameter: 17.3 m (56 ft 7 in)
- Wingspan: 6.5 m (21 ft 3 in)
- Height: 6.5 m (21 ft 3 in)
- Disc area: 235 m² (2,530 ft²)
- Empty weight: 8,500 kg (18,740 lb)
- Max. takeoff weight: 12,000 kg (26,500 lb)
- Powerplant: 2 × Isotov TV3-117 turbines, 1,600 kW (2,200 hp) each

Performance
- Maximum speed: 335 km/h (208 mph)
- Range: 450 km (280 miles)
- Service ceiling: 4,900 m (16076 ft)

External stores
- Total payload is 1,500 kg of external stores.
- Inner hardpoints can carry at least 500 kg
- Outer hardpoints can carry up to 250 kg
- Wing-tip pylons

Bomb-load
- Bombs within weight range (presumably ZAB, FAB, RBK, ODAB etc.), Up to 500 kg.
- MBD multiple ejector racks (presumably MBD-4 with 4 × FAB-100)

## ATTACHMENT "B"

Required Documents and Certification for Delivery of Attached "A":

1. SELLER will prepare End User Certificate for BUYER and BUYER will return to SELLER the executed original to SELLER.
2. BUYER to provide SELLER with original Import Certificate or Waiver of Requirement.
3. Original of this Agreement Signed and Sealed by BUYER.
4. Certificate of Delivery Confirmation, BUYER is required by law to return to SELLER within 10 days a Certificate of Delivery Confirmation. SELLER will provide to BUYER this document.

## ATTACHMENT "C"

1. Date of carriage is subject to final confirmation of vehicle, load, build and break arrangements at routing and ports of entire requiring necessary permits, license(s), and rights.
2. Freight includes the shipment of Goods with basic load and build.
   a. Freight Price excludes: external crane, storage, customs clearance, duties, taxes, royalties, de-icing, declared value coverage, warehousing, and ground transportation at loading or other, if these cost are incurred they will be charged to BUYER.
3. BUYER agrees to pay surcharges for Goods, if any for: fuel, fluctuation in the U.S. Dollar, handling, load, stevedore, security and / or war risk, hazardous and dangerous goods, build, break, and port fees.
4. BUYER agrees that the carriage schedule and routing are subject to change based on, mechanical issues, hostilities, war, civil unrest, political affairs, embargo(s), and delays caused by shipments prior to the BUYERS shipment, and changes in cargo handling arrangements.
5. BUYER is responsible for having the necessary equipment to off load at port as well as ground transportation.
6. BUYER is responsible to return to SELLER all of SELLERS equipment the BUYER used during the course of business within 15 days. If BUYER is does not return to SELLER its equipment, SELLER may replace equipment and charge BUYER, SELLERS cost.
7. SELLER has the right to offset goods in ATTACHMENT "A" if payment on Invoice(s) are not paid by within 30 days.

**INVOICE 14_089v4Invoice Nigeria**

Buyer:                        SEI SOCIETE D'EQUIPMENT INTERNATIONAUX

End User:                   Minister of Defence Nigeria

Seller:                       Dolarian Capital, Inc.

This invoice is subject to the Terms and Condition of DCI Contract Number: 14_089v4 Nigeria.

- Goods:             **Mi-24P**
- Price Each:        $25,000,000.00
- Quantity:          Two (2)
- Total Invoice:     $50,000,000.00
- Condition of Goods: "As Is" Helicopters are in service
- Built:  2009 or later
- Condition of Sale:     Acceptable End User Certificate, Export License and other approvals
                         deemed necessary.  Delivery to begin after all approvals and
                         payments are received.

**Wiring Instructions:**   Myron F Smith, Attorney
Account of:              Chase
Bank Name:              588102975
Account No.:            322271627
Routing No.:            CHASU33
SWIFT:                  1380 West Shaw Avenue
Bank Address:           Fresno California 93711 3



Page 1

# ATTACHMENT

# B

## SALES AGREEMENT

Buyer:                          SEI SOCIETE D'EQUIPMENT INTERNATIONAUX

End User:                       Minister of Defence Nigeria

Seller:                         Dolarian Capital, Inc.

**DCI Contract No:**            **14_090v4**

THIS SALE AGREEMENT (the "Agreement"), is made this ___ day of June 2014 (the "Effective Date") by and between Dolarian Capital, Inc. ("Dolarian" or "SELLER"), a California corporation, incorporated in the State of California, with its principal place of business at 1284 N. Shaw Avenue, Suite 102, Fresno, CA 93711 or assignee; and Nigerian Army, Ministry of Defence Area 7 Garki, Abuja ("Buyer") and (collectively, the "Parties").

### DEFINITIONS

1.  Goods and Services.  Goods subject to this Agreement are set forth in Attachment "A".

2.  Price.  The Price is Goods as set forth in Attachment "A".  Delivery, which is an optional service to the Final Destination.

3.  Dispatch.  Dispatch is defined as the date on which the freight forwarder takes possession of SELLER's Goods.  This transaction may require multiple dispatches, delivery and partial shipments.

4.  Customs.  BUYER is responsible for all Custom's clearances at the Final Destination; Delivery Duty Unpaid (DDU).

5.  Delivery:  To a BUYERS Port.  Price does not include inland transportation in BUYERS Territory. Attachment "C".

### TERMS AND CONDITIONS

**NOW, THEREFORE, based on mutual consideration, the receipt and adequacy of which is mutually acknowledged, the parties agree to the following terms and conditions:**

1.  **Compliance with Laws.**

    a.  SELLER warrants that it is in full compliance with all applicable United States laws, and regulations and will remain in full compliance with all applicable laws and legal standards during the term of this Agreement. SELLER further covenants, warrants and represents that it shall comply with all applicable United States laws, including regulations and Executive Orders, applicable to this Agreement and performance of the obligations herein, including but not limited to any applicable United States export control laws and trade restrictions, including but not limited to the U.S. International Traffic in Arms Regulations ("ITAR") and Foreign Assets Control Regulations ("OFAC Regulations"), which govern the export and re-export of U.S., Origin defense articles and technology and goods and technology subject to U.S. jurisdiction.

    b.  BUYER acknowledges and agrees that the Materials may be subject to Export Controls. The Parties may not export, re-export or transfer, whether directly or indirectly, the Materials, or any portion thereof, without first complying strictly and fully with any applicable Export Controls regarding the Materials.



2. **Import/Export License.** SELLER agrees that it shall maintain all permits, licenses and other governmental approvals that may be required by the United States for SELLER's performance under this Agreement. Specifically, SELLER is responsible for all Export License(s) applications from Country of Export and the End User (BUYER) is responsible for Import Permits or Waivers thereof. Buyer will cooperate with Seller and will provide a valid executed acceptable End User Certificate and other documentation, if required by any Governmental Agency associated with this transaction. Attachment "B".

3. **Foreign Corrupt Practices Act.** The Parties also acknowledge that Seller shall not take any action in violation of national anti-corruption laws, including the U.S. Foreign Corrupt Practices Act and the UK Bribery Act. The provisions of this section shall survive any termination or expiration of this Agreement.

3. **Recordkeeping.** The Parties shall maintain all records related to the Agreement as necessary to secure Export permits and/or Import Licenses.

4. **Changes and Alterations.** Should BUYER change a specification, quantity, and or delay and or fail to provide requested documents, and or provide incorrect instructions and or documents, any and all extra costs incurred by the SELLER shall be the responsibility of the BUYER.

5. **Specification and Performance.** The Goods supplied will be substantially in compliance with the specification attached to this Agreement, subject to commercially reasonable manufacturing variations. Such variation shall not be the basis of any claim against SELLER or its suppliers. No advertisements, catalogues, or other publications or statements regarding the Performance of the Goods other than as set forth in Attachment "A" is part of the Agreement. SELLER reserves the right to supply Goods in fulfillment of its obligations under this Agreement utilizing modified design criteria or manufacturing means and/or methods, provided that the performance of the Goods is not adversely affected.

6. **Conditions Precedent.** SELLER's obligations and responsibilities to proceed shall commence upon the signing, sealing of this Agreement and receipt of the payment as provided in Attachment "A".

7. **Indemnity.** BUYER shall hold SELLER, its subsidiaries, affiliates, related entities, partners, agents, officers, directors, employees, members, shareholders, attorneys, heirs, successors, and assigns, and each of them, harmless from and against any and all claims, actions, suits, proceedings, demands, losses, damages, judgments, settlements, obligations, costs and expenses (including reasonable attorneys' fees and expenses), and liabilities of every kind and character whatsoever (a "Claim"), in connection with any personal injury, including death, or any damage to property, which may be suffered by BUYER's use, operation, or failure of the Goods furnished to perform as set forth in Attachment "A".

8. **Force Majeure.** If SELLER's ability to perform its obligation under the Agreement is limited, delayed or prevented in whole or in part by any reason whatsoever not reasonably within the control of SELLER, or its suppliers, including without limitation, act of God, war, invasion, act of foreign enemy, hostilities, civil war, rebellion, civil strife, strikes and/or industrial dispute or by any law, rule, regulation, order or other action by any public authority, transportation delays or the refusal of any necessary export or import license, SELLER shall be excused, discharged, and released of performance to the extent such performance is so limited, delayed or prevented without liability of any kind.

9. **Entire Agreement.** This Agreement: (i) constitutes the entire Agreement between the Parties hereto with respect to the subject matter hereof; (ii) supersedes and replaces all prior agreements, oral or written, between the Parties relating to the subject matter hereof; and (iii) may be amended only by a written instrument clearly setting forth the amendment(s) and executed by an officer of SELLER. In



the event of a conflict between this Agreement and any other Agreement, this Agreement shall supersede and take precedence over such conflicting terms and conditions.

10. **Notice.** All notices, requests, demands or other communications which are required or may be given pursuant to the Terms and Conditions of the Agreement shall be in writing and shall be deemed to have been dully given if delivered by hand or mail by certified or registered mail, postage prepaid specified by the parties in the Agreement.

11. **Governing Law.** All questions with respect to the construction of this Agreement or the rights and liabilities of the parties under this Agreement shall be determined in accordance with the laws of the United States of America excluding any conflicts of laws provisions. BUYER hereby agrees to submit himself to the International Chamber of Commerce (ICC) for purposes of resolving any disputes or breaches of this Agreement only. BUYER waives any and all rights and or claims to Sovereign Immunity in connection with the claims and/or disputes arising under this Agreement.

12. **Venue.** The Parties agree that any claim and/or dispute arising under this Agreement shall be submitted to the International Chamber of Commerce (ICC) for resolution. Said body shall be the sole and exclusive entity with jurisdiction to resolve the dispute and/or claim. The Parties to this Agreement hereby adopt the Rules of the ICC for Arbitration and agree that any award issued by the ICC shall be binding, final and enforceable anywhere in the world.

13. **Assignment.** This Agreement may be assigned, or the rights granted under this Agreement transferred or sub-licensed, by either party without the express prior written consent of the other party.

14. **Language.** Governing language for this Agreement is English.

15. **General.** Any provision or provisions of the Agreement prohibited by, or unlawful under, any applicable law of any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provision of the Agreement, provided, however, that where the provisions of any such applicable law may be waived, they are hereby waived by BUYER as to the full extent permitted by law, to the end that the Agreement shall be deemed to valid, binding, and enforceable in accordance with its terms.

16. **Headings.** The headings of the various paragraphs in the Agreement are intended solely for reference and are not intended to explain, modify or place any construction upon any of the provisions of this Agreement.

17. **Notice.** All notices and demands of any kind or nature that either party may be required or may desire to serve upon the other in connection with this Agreement shall be in writing and may be served personally, by fax, by certified mail, or by overnight courier, with constructive receipt deemed to have occurred on the date of the mailing, sending or faxing of such notice, to the following addresses or fax numbers:

| | |
|---|---|
| **If to SELLER:** | **If to BUYER:** |
| Ara G Dolarian | Mr. H Aboubakar |
| Dolarian Capital, Inc. | SEI Nigeria Limited |

The Parties through their duly authorized representatives agree to this Agreement as of the date and year first above written.

BUYER:

By:   Mr. M. Aboubakar
Its:   Director

SELLER:

By:   Ara G Dolarian
Its:   President

## ATTACHMENT "A"

| | |
|---|---|
| DCI Ref. No.: | 14_90v4 Nigeria A&W |
| End User: | MOD Nigeria |
| Terms: | 50% Advance Payment, Balance due at dispatch |
| Freight: | DDU Nigeria |
| Price Valid: | 20-Jun-14 |
| Condition | Acceptable End User Certificate, Export License and other approvals deemed necessary |
| Delivery: | After all approvals and Payments, Partial Deliveries |

| Item | Description | Quantity | Price | Extension |
|---|---|---|---|---|
| | Weapon(s) | | | |
| 1.0 | DEFA Type 553 Gun | 6 | 21,000.00 | 126,000.00 |
| 2.0 | Arming Wire for 125kg bomb, ARM MLE FZA | 40 | 4.20 | 168.00 |
| 3.0 | Arming Wire for 250kg bomb, SECU MLE FZA | 50 | 4.20 | 210.00 |
| 4.0 | Arming Wire for 250kg bomb; SAMP MLE FZ9 | 100 | 4.20 | 420.00 |
| 5.0 | Marta 155 Type Launch Pod | 16 | 40,530.00 | 648,480.00 |
| | | | Sub-Total | 775,278.00 |

| Item | Description | Quantity | Price | Extension |
|---|---|---|---|---|
| | Ammunition | | | |
| 6.0 | 250kg Bomb HE | 500 | 4,375.00 | 2,187,500.00 |
| 7.0 | 100kg Bomb HE | 500 | 2,770.25 | 1,385,125.00 |
| 8.0 | 30x113mm DEFA | 25,000 | 53.75 | 1,343,750.00 |
| 9.0 | Pylon, F71A | 3,000 | 7.80 | 23,389.50 |
| 10.0 | 68mm SNEB Rocket | 5,000 | 580.20 | 2,901,000.00 |
| | | | Sub-Total | 7,840,764.50 |

| | | | | |
|---|---|---|---|---|
| | | | Total | 8,616,042.50 |

## ATTACHMENT "B"

Required Documents and Certification for Delivery of Attached "A":

1. SELLER will prepare End User Certificate for BUYER and BUYER will return to SELLER the executed original to SELLER.
2. BUYER to provide SELLER with original Import Certificate or Waiver of Requirement.
3. Original of this Agreement Signed and Sealed by BUYER.
4. Certificate of Delivery Confirmation, BUYER is required by law to return to SELLER within 10 days a Certificate of Delivery Confirmation. SELLER will provide to BUYER this document.

## ATTACHMENT "C"

1. Date of carriage is subject to final confirmation of vehicle, load, build and break arrangements at routing and ports of entire requiring necessary permits, license(s), and rights.

2. Freight includes the shipment of Goods with basic load and build.

   a. Freight Price excludes: external crane, storage, customs clearance, duties, taxes, royalties, de-icing, declared value coverage, warehousing, and ground transportation at loading or other, if these cost are incurred they will be charged to BUYER.

3. BUYER agrees to pay surcharges for Goods, if any for: fuel, fluctuation in the U.S. Dollar, handling, load, stevedore, security and / or war risk, hazardous and dangerous goods, build, break, and port fees.

4. BUYER agrees that the carriage schedule and routing are subject to change based on, mechanical issues, hostilities, war, civil unrest, political affairs, embargo(s), and delays caused by shipments prior to the BUYERS shipment, and changes in cargo handling arrangements.

5. BUYER is responsible for having the necessary equipment to off load at port as well as ground transportation.

6. BUYER is responsible to return to SELLER all of SELLERS equipment the BUYER used during the course of business within 15 days. If BUYER is does not return to SELLER its equipment, SELLER may replace equipment and charge BUYER, SELLERS cost.

7. SELLER has the right to offset goods in ATTACHMENT "A" if payment on Invoice(s) are not paid by within 30 days.

Amendment to June 2014 Sales Agreement
Dolarian Capital, Inc. No.: 14_090v4

## EXHIBIT A-1

This Exhibit amends the Sales Agreement between Dolarian Capital, Inc. and the SEI Society D'Equipment Internationaux for the increased and additional quantity of certain items listed below. All other terms and condition of said agreement remain in full effect unchanged.  **When signed this exhibit becomes part of DCI No: 14_090v4.**

| Item | Description | Quantity | Price | Extension |
|------|-------------|----------|-------|-----------|
| | **Ammunition** | | | |
| 1.0 | 250kg Bomb HE  Shrapnel Live | 500 | 4,820.00 | 2,410,000.00 |
| 2.0 | 68mm SNEB Rocket HEAP Live | 5,000 | 635.00 | 3,175,000.00 |
| | | | Total | 5,585,000.00 |

The terms and conditions of the of this Amendment  are acceptable on this 14 July 2014:

Ara G Dolarian
President

Hima Aboubakar



**Headquarters**
**Nigerian Air Force**
**Ministry of Defence**
**Abuja – Nigeria**
**Tel/FAX:   09 – 8702694**
**E-mail: info@nigerianairforce.net**

Reference: NAF/515/CTOP

## END USER CERTIFICATE

### #NAF/515/CTOP dated 27 June 2014

1.    This is to certify that the Nigerian Air Force of the Federal Republic of Nigeria authorizes that SEI Company, BP 1173, Paris to carry out the purchase of the specified products listed at Annex A from Dolarian Capital Inc, 1284 West Shaw Avenue, Suite 102, Fresno California, CA93711 – USA.

2.    The Nigerian Air Force of the Federal Republic of Nigeria guarantees that these products will be used exclusively by the Nigerian Air Force of the Federal Republic of Nigeria and will not be re-exported, sold, leased or transferred to any third party including in Nigeria without prior written consent of Dolarian Capital Inc, 1284 West Shaw Avenue, Suite 102, Fresno California, CA93711 – USA.

OT OGUNTOYINBO
Air Vice Marshall
for Chief of the Air Staff

Annex:

A.    List of Alpha Jet Weapons.

Unauthorised Disclosure of Information on this sheet is unpatriotic and against the official Secrets Act.

<u>**ANNEX A TO**</u>
<u>**NAF/515/CTOP**</u>
<u>**DATED 27 JUNE 2014**</u>

## <u>LIST OF ALPHA JET WEAPONS</u>

| Serial | The item Description | Qty | Remarks |
|:------:|----------------------|:---:|:-------:|
| **(a)** | **(b)** | **(c)** | **(d)** |
| 1 | 68mm SNEB Rocket HEAT – Live | 10,000 | |
| 2 | 68mm SNEB ROCKET HEAP –Live | 10,000 | |
| 3 | 250kg LD Bomb HE – Live | 1,000 | |
| 4 | 250kg LD Bomb HE (Shrapnel) – Live | 1,000 | |
| 5 | 120kg HE Bomb – Live | 500 | |
| 6 | 30mm Cannon – Live | 50,000 | For Defa Gun |
| 7 | **Accessories** | | |
| | a.  F71A Pylon Cartridges. | 5,000 | |
| | b.  Matra Type 155 Rocket Launcher Pod. | 16 | |
| | c.  ARM MLE FZA (Arming Wire) for 125kg Bomb. | 40 | |
| | d.  SECU MLE FZA (Arming Wire) for 250kg HD. | 50 | |
| | e.  SAMP MLE FZ9 (Arming Wire) for 250kg LD. | 100 | |
| | f.  Defa Gun Type 553. | 6 | |

**Unauthorised Disclosure of Information on this sheet is unpatriotic and against the official Secrets Act.**

# ATTACHMENT

# C

## SALES AGREEMENT

Buyer: SEI SOCIETE
D'EQUIPMENT
INTERNATIONAUX

End User: NIGERIAN ARMY

Seller:                        Dolarian Capital, Inc.

**DCI Contract No:**         **14_095 Niger 20mm**

THIS SALE AGREEMENT (the "Agreement"), is made this 04 day of June 2014 (the "Effective Date") by and between Dolarian Capital, Inc. ("Dolarian" or "SELLER"), a California corporation, incorporated in the State of California, with its principal place of business at 1284 N. Shaw Avenue, Suite 105, Fresno, CA 93711 or assignee, and SEI NIGERIA LIMITED ("Buyer") and (collectively, the "Parties").

### DEFINITIONS

1.  Goods and Services. Goods subject to this Agreement are set forth in Attachment "A".

2.  Price. The Price is Goods as set forth in Attachment "A". Delivery, which is an optional service to the Final Destination.

3.  Dispatch. Dispatch is defined as the date on which the freight forwarder takes possession of SELLER's Goods. This transaction may require multiple dispatches, delivery and partial shipments.

4.  Customs. BUYER is responsible for all Custom's clearances at the Final Destination; Delivery Duty Unpaid (DDU).

### TERMS AND CONDITIONS

**NOW, THEREFORE, based on mutual consideration, the receipt and adequacy of which is mutually acknowledged, the parties agree to the following terms and conditions:**

1.  Compliance with Laws.

    a.  SELLER warrants that it is in full compliance with all applicable United States laws, and regulations and will remain in full compliance with all applicable laws and legal standards during the term of this Agreement. SELLER further covenants, warrants and represents that it shall comply with all applicable United States laws, including regulations and Executive Orders, applicable to this Agreement and performance of the obligations herein, including but not limited to any applicable United States export control laws and trade restrictions, including but not limited to the U.S. International Traffic in Arms Regulations ("ITAR") and Foreign Assets Control Regulations ("OFAC Regulations"), which govern the export and reexport of U.S. origin defense articles and technology and goods and technology subject to U.S. jurisdiction.



b. BUYER acknowledges and agrees that the Materials may be subject to Export Controls. The Parties may not export, re-export or transfer, whether directly or indirectly, the Materials, or any portion thereof, without first complying strictly and fully with any applicable Export Controls regarding the Materials.

2. **Import/Export License.** SELLER agrees that it shall maintain all permits, licenses and other governmental approvals that may be required by the United States for SELLER's performance under this Agreement. Specifically, SELLER is responsible for all Export License(s) applications from Country of Export and the End User (BUYER) is responsible for Import Permits or Waivers thereof. Buyer will cooperate with Seller and will provide a valid executed, acceptable End User Certificate and other documentation, if required by any Governmental Agency associated with this transaction. Attachment "B".

3. **Foreign Corrupt Practices Act.** The Parties also acknowledge that Seller shall not take any action in violation of national anti-corruption laws, including the U.S. Foreign Corrupt Practices Act and the UK Bribery Act. The provisions of this section shall survive any termination or expiration of this Agreement.

3. **Recordkeeping.** The Parties shall maintain all records related to the Agreement as necessary to secure Export permits and/or Import Licenses.

4. **Changes and Alterations.** Should BUYER change a specification, quantity, and or delay and or fail to provide requested documents, and or provide incorrect instructions and or documents, any and all extra costs incurred by the SELLER shall be the responsibility of the BUYER.

5. **Specification and Performance.** The Goods supplied will be substantially in compliance with the specification attached to this Agreement, subject to commercially reasonable manufacturing variations. Such variation shall not be the basis of any claim against SELLER or its suppliers. No advertisements, catalogues, or other publications or statements regarding the Performance of the Goods other than as set forth in Attachment "A" is part of the Agreement. SELLER reserves the right to supply Goods in fulfillment of its obligations under this Agreement utilizing modified design criteria or manufacturing means and/or methods, provided that the performance of the Goods is not adversely affected.

6. **Conditions Precedent.** SELLER's obligations and responsibilities to proceed shall commence upon the signing, sealing of this Agreement and receipt of the payment as provided in Attachment "A".

7. **Indemnity.** BUYER shall hold SELLER, its subsidiaries, affiliates, related entities, partners, agents, officers, directors, employees, members, shareholders, attorneys, heirs, successors, and assigns, and each of them, harmless from and against any and all claims, actions, suits, proceedings, demands, losses, damages, judgments, settlements, obligations, costs and expenses (including reasonable attorneys' fees and expenses), and liabilities of every kind and character whatsoever (a "Claim"), in connection with any personal injury, including death, or any damage to property, which may be suffered by BUYER's use, operation, or failure of the Goods furnished to perform as set forth in Attachment "A".

8. **Force Majeure.** If SELLER's ability to perform its obligation under the Agreement is limited, delayed or prevented in whole or in part by any reason whatsoever not reasonably within the control of SELLER, or its suppliers, including without limitation, act of God, war, invasion, act of foreign enemy, hostilities, civil war, rebellion, civil strife, strikes and/or



industrial dispute or by any law, rule, regulation, order or other action by any public authority, transportation delays or the refusal of any necessary export or import license, SELLER shall be excused, discharged, and released of performance to the extent such performance is so limited, delayed or prevented without liability of any kind.

9. **Entire Agreement.** This Agreement: (i) constitutes the entire Agreement between the Parties hereto with respect to the subject matter hereof; (ii) supersedes and replaces all prior agreements, oral or written, between the Parties relating to the subject matter hereof; and (iii) may be amended only by a written instrument clearly setting forth the amendment(s) and executed by an officer of SELLER. In the event of a conflict between this Agreement and any other Agreement, this Agreement shall supersede and take precedence over such conflicting terms and conditions.

10. **Notice.** All notices, requests, demands or other communications which are required or may be given pursuant to the Terms and Conditions of the Agreement shall be in writing and shall be deemed to have been dully given if delivered by hand or mail by certified or registered mail, postage prepaid specified by the parties in the Agreement.

11. **Governing Law.** All questions with respect to the construction of this Agreement or the rights and liabilities of the parties under this Agreement shall be determined in accordance with the laws of the United States of America excluding any conflicts of laws provisions. BUYER hereby agrees to submit himself to the International Chamber of Commerce (ICC) for purposes of resolving any disputes or breaches of this Agreement only. BUYER waives any and all rights and or claims to Sovereign Immunity in connection with the claims and/or disputes arising under this Agreement.

12. **Venue.** The Parties agree that any claim and/or dispute arising under this Agreement shall be submitted to the International Chamber of Commerce (ICC) for resolution. Said body shall be the sole and exclusive entity with jurisdiction to resolve the dispute and/or claim. The Parties to this Agreement hereby adopt the Rules of the ICC for Arbitration and agree that any award issued by the ICC shall be binding, final and enforceable anywhere in the world.

13. **Assignment.** This Agreement may be assigned, or the rights granted under this Agreement transferred or sub-licensed, by either party without the express prior written consent of the other party.

14. **Language.** Governing language for this Agreement is English.

15. **General.** Any provision or provisions of the Agreement prohibited by, or unlawful under, any applicable law of any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provision of the Agreement, provided, however, that where the provisions of any such applicable law may be waived, they are hereby waived by BUYER as to the full extent permitted by law, to the end that the Agreement shall be deemed to valid, binding, and enforceable in accordance with its terms.

16. **Headings.** The headings of the various paragraphs in the Agreement are intended solely for reference and are not intended to explain, modify or place any construction upon any of the provisions of this Agreement.

17. **Notice.** All notices and demands of any kind or nature that either party may be required or may desire to serve upon the other in connection with this Agreement shall be in writing and may be served personally, by fax, by certified mail, or by overnight courier, with constructive receipt deemed to have occurred on the date of the mailing, sending or faxing of such notice, to the following addresses or fax numbers:



If to Dolarian:                                    If to:

Dolarian Capital, Inc.
Fresno, California, USA                            SEI Nigeria Limited


The Parties through their duly authorized representatives agree to this Agreement as of the date and year first above written.

BUYER:

By:
Its: SEI Nigeria Limited          H. Aboubakar

SELLER:  DOLARIAN CAPITAL, INC.


By:  Ara G Dolarian
Its:  President

## ATTACHMENT "A"

DCI Ref. #: 14_95 Niger 20mm W
End User: MOD Niger
Terms: 50% Advance Payment, Balance due at dispatch
Freight: FOB EU
Price Valid: 20-Jun-14
Condition Acceptable End User Certificate, Export License and other approvals deemed
necessary
Delivery: After all approvals and Payments, Partial Deliveries

| Item | Description | Quantity | Price | Extension |
|------|-------------|----------|-------|-----------|
| | Weapon(s) | | | |
| 1.0 | 20x110mm, Autocannon, single barrel, standard trigger group. | 50 | 25,000.00 | 1,250,000.00 |
| | | | Total | 1,250,000.00 |

## ATTACHMENT "B"

Required Documents and Certification for Delivery of Attached "A":

1. SELLER will prepare End User Certificate for BUYER and BUYER will return to SELLER the executed original to SELLER.
2. BUYER to provide SELLER with original Import Certificate or Waiver of Requirement.
3. Original of this Agreement Signed and Sealed by BUYER.
4. Certificate of Delivery Confirmation, BUYER is required by law to return to SELLER within 10 days a Certificate of Delivery Confirmation. SELLER will provide to BUYER this document.





**AHQ DAPP/G3/220/148**

**Headquarters
Nigerian Army
Ministry of Defence
Area 7 Garki,
Abuja.
E-mail:ahq.dapp@army.mil.ng**

TO WHOM IT MAY CONCERN:

## END USER CERTIFICATE

We, the NIGERIAN ARMY in the territory of NIGERIA , here officially confirm the following equipment:

| Item | Description | Qty |
|------|-------------|-----|
| 1. | 20 x 110 MM autocannon, single barrel, standard trigger group | 50 |
| 2. | Ammunition for 20MM | 50,000 |

The above will be delivered to the NIGERIAN ARMY in the territory of NIGERIA by "DOLARIAN CAPITAL", Inc, located at 1284 W. Shaw Ave. #102, CA 93711. USA with its representative office.

The equipment indicated in the present certificate will be used by the Government of NIGERIA and will not be re-exported, sold, disposed of, or transferred to any third countries without the written permission of the State service of export control of NIGERIA.

The signature of the authorized senior officer of the NIGERIAN ARMY shown below serves to prove the authenticity of this End User Certificate.

End User Certificate is issued in the City of ABUJA , Country of NIGERIA on 04 day of June 2014.

On behalf of the NIGERIAN ARMY

Rank: **Major General**        Title: **Chief of Policy and Plans (Army)**

Name: **JO NWAOGBO**           Official Stamp:                Date: 4 Jun 14

Signature:

# ATTACHMENT

# D

# SALES AGREEMENT

Buyer: SEI SCOIETE D'EQUIPMENTS NIG. LIMITED

End User: NIGERIAN ARMY

Seller:  Dolarian Capital, Inc

**DCI Contract No:  14_096 Nigeria**

THIS SALE AGREEMENT (the "Agreement"), is made this 04 day of June 2014 (the "Effective Date") by and between Dolarian Capital, Inc. ("Dolarian" or "SELLER"), a California corporation, incorporated in the State of California, with its principal place of business at 1284 N. Shaw Avenue, Suite 102, Fresno, CA 93711 or assignee, and SEI SCOIETE D'EQUIPMENTS NIG. LIMITED ("Buyer") and (collectively, the "Parties").

## DEFINITIONS

1.  Goods and Services.  Goods subject to this Agreement are set forth in Attachment "A".

2.  Price.  The Price is Goods as set forth in Attachment "A".  Delivery, which is an optional service to the Final Destination.

3.  Dispatch.  Dispatch is defined as the date on which the freight forwarder takes possession of SELLER's Goods.  This transaction may require multiple dispatches, delivery and partial shipments.

4.  Customs.  BUYER is responsible for all Custom's clearances at the Final Destination; Delivery Duty Unpaid (DDU).

## TERMS AND CONDITIONS

**NOW, THEREFORE, based on mutual consideration, the receipt and adequacy of which is mutually acknowledged, the parties agree to the following terms and conditions:**

1.  **Compliance with Laws**

    a.  SELLER warrants that it is in full compliance with all applicable United States laws, and regulations and will remain in full compliance with all applicable laws and legal standards during the term of this Agreement.  SELLER further covenants, warrants and represents that it shall comply with all applicable United States laws, including regulations and Executive Orders, applicable to this Agreement and performance of the obligations herein, including but not limited to any applicable United States export control laws and trade restrictions, including but not limited to the U.S. International Traffic in Arms Regulations ("ITAR") and Foreign Assets Control Regulations ("OFAC Regulations"), which govern the export and reexport of U.S. origin defense articles and technology and goods and technology subject to U.S. jurisdiction.



b.  BUYER acknowledges and agrees that the Materials may be subject to Export Controls. The Parties may not export, re-export or transfer, whether directly or indirectly, the Materials, or any portion thereof, without first complying strictly and fully with any applicable Export Controls regarding the Materials.

2.  **Import/Export License.** SELLER agrees that it shall maintain all permits, licenses and other governmental approvals that may be required by the United States for SELLER's performance under this Agreement. Specifically, SELLER is responsible for all Export License(s) applications from Country of Export and the End User (BUYER) is responsible for Import Permits or Waivers thereof. Buyer will cooperate with Seller and will provide a valid executed acceptable End User Certificate and other documentation, if required by any Governmental Agency associated with this transaction. Attachment "B".

3.  **Foreign Corrupt Practices Act.** The Parties also acknowledge that Seller shall not take any action in violation of national anti-corruption laws, including the U.S. Foreign Corrupt Practices Act and the UK Bribery Act. The provisions of this section shall survive any termination or expiration of this Agreement.

3.  **Recordkeeping.** The Parties shall maintain all records related to the Agreement as necessary to secure Export permits and/or Import Licenses.

4.  **Changes and Alterations.** Should BUYER change a specification, quantity, and or delay and or fail to provide requested documents, and or provide incorrect instructions and or documents, any and all extra costs incurred by the SELLER shall be the responsibility of the BUYER.

5.  **Specification and Performance.** The Goods supplied will be substantially in compliance with the specification attached to this Agreement, subject to commercially reasonable manufacturing variations. Such variation shall not be the basis of any claim against SELLER or its suppliers. No advertisements, catalogues, or other publications or statements regarding the Performance of the Goods other than as set forth in Attachment "A" is part of the Agreement. SELLER reserves the right to supply Goods in fulfillment of its obligations under this Agreement utilizing modified design criteria or manufacturing means and/or methods, provided that the performance of the Goods is not adversely affected.

6.  **Conditions Precedent.** SELLER's obligations and responsibilities to proceed shall commence upon the signing, sealing of this Agreement and receipt of the payment as provided in Attachment "A".

7.  **Indemnity.** BUYER shall hold SELLER, its subsidiaries, affiliates, related entities, partners, agents, officers, directors, employees, members, shareholders, attorneys, heirs, successors, and assigns, and each of them, harmless from and against any and all claims, actions, suits, proceedings, demands, losses, damages, judgments, settlements, obligations, costs and expenses (including reasonable attorneys' fees and expenses), and liabilities of every kind and character whatsoever (a "Claim"), in connection with any personal injury, including death, or any damage to property, which may be suffered by BUYER's use, operation, or failure of the Goods furnished to perform as set forth in Attachment "A".

8.  **Force Majeure.** If SELLER's ability to perform its obligation under the Agreement is limited, delayed or prevented in whole or in part by any reason whatsoever not reasonably within the control of SELLER, or its suppliers, including without limitation, act of God, war, invasion, act of foreign enemy, hostilities, civil war, rebellion, civil strife, strikes and/or industrial dispute or by any law, rule, regulation, order or other action by any public authority,



transportation delays or the refusal of any necessary export or import license, SELLER shall be excused, discharged, and released of performance to the extent such performance is so limited, delayed or prevented without liability of any kind.

9. **Entire Agreement.** This Agreement: (i) constitutes the entire Agreement between the Parties hereto with respect to the subject matter hereof; (ii) supersedes and replaces all prior agreements, oral or written, between the Parties relating to the subject matter hereof; and (iii) may be amended only by a written instrument clearly setting forth the amendment(s) and executed by an officer of SELLER. In the event of a conflict between this Agreement and any other Agreement, this Agreement shall supersede and take precedence over such conflicting terms and conditions.

10. **Notice.** All notices, requests, demands or other communications which are required or may be given pursuant to the Terms and Conditions of the Agreement shall be in writing and shall be deemed to have been dully given if delivered by hand or mail by certified or registered mail, postage prepaid specified by the parties in the Agreement.

11. **Governing Law.** All questions with respect to the construction of this Agreement or the rights and liabilities of the parties under this Agreement shall be determined in accordance with the laws of the United States of America excluding any conflicts of laws provisions. BUYER hereby agrees to submit himself to the International Chamber of Commerce (ICC) for purposes of resolving any disputes or breaches of this Agreement only. BUYER waives any and all rights and or claims to Sovereign Immunity in connection with the claims and/or disputes arising under this Agreement.

12. **Venue.** The Parties agree that any claim and/or dispute arising under this Agreement shall be submitted to the International Chamber of Commerce (ICC) for resolution. Said body shall be the sole and exclusive entity with jurisdiction to resolve the dispute and/or claim. The Parties to this Agreement hereby adopt the Rules of the ICC for Arbitration and agree that any award issued by the ICC shall be binding, final and enforceable anywhere in the world.

13. **Assignment.** This Agreement may be assigned, or the rights granted under this Agreement transferred or sub-licensed, by either party without the express prior written consent of the other party.

14. **Language.** Governing language for this Agreement is English.

15. **General.** Any provision or provisions of the Agreement prohibited by, or unlawful under, any applicable law of any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provision of the Agreement, provided, however, that where the provisions of any such applicable law may be waived, they are hereby waived by BUYER as to the full extent permitted by law, to the end that the Agreement shall be deemed to valid, binding, and enforceable in accordance with its terms.

16. **Headings.** The headings of the various paragraphs in the Agreement are intended solely for reference and are not intended to explain, modify or place any construction upon any of the provisions of this Agreement.

17. **Notice.** All notices and demands of any kind or nature that either party may be required or may desire to serve upon the other in connection with this Agreement shall be in writing and may be served personally, by fax, by certified mail, or by overnight courier, with constructive receipt deemed to have occurred on the date of the mailing, sending or faxing of such notice, to the following addresses or fax numbers:



If to Dolarian:                                          If to:

Dolarian Capital, Inc.
Fresno, California, USA

**The Parties through their duly authorized representatives agree to this Agreement as of the date and year first above written.**

BUYER:

By: HUMA Aboubakar
Its:

SELLER:  DOLARIAN CAPITAL, INC.

By: Ara G Dolarian
Its: President

## ATTACHMENT "A"

| | |
|---|---|
| DCI No.: | 14_96 Niger W |
| End User: | Nigerian Army |
| Terms: | 50% Advance Payment, Balance due at dispatch |
| Freight: | FOB EU |
| Price Valid: | 20-Jun-14 |
| Condition: | Acceptable End User Certificate, Export License and other approvals deemed necessary |
| Delivery: | After all approvals and Payments; Partial Deliveries |

| Item | Description | Quantity | Price | Extension |
|---|---|---|---|---|
| | **Ammunition** | | | |
| 1.0 | 20x110mm, Ammunition for Autocannon API | 50,000 | 53.50 | 2,675,000.00 |
| | | | Total | 2,675,000.00 |

## ATTACHMENT "B"

Required Documents and Certification for Delivery of Attached "A":

1. SELLER will prepare End User Certificate for BUYER and BUYER will return to SELLER the executed original to SELLER.
2. BUYER to provide SELLER with original Import Certificate or Waiver of Requirement.
3. Original of this Agreement Signed and Sealed by BUYER.
4. Certificate of Delivery Confirmation, BUYER is required by law to return to SELLER within 10 days a Certificate of Delivery Confirmation. SELLER will provide to BUYER this document.





**AHQ DAPP/G3/220/148**

**Headquarters**
**Nigerian Army**
**Ministry of Defence**
**Area 7 Garki,**
**Abuja.**
**E-mail:ahq.dapp@army.mil.ng**

TO WHOM IT MAY CONCERN:

### END USER CERTIFICATE

We, the NIGERIAN ARMY in the territory of NIGERIA , here officially confirm the following equipment:

| Item | Description | Qty |
|------|-------------|-----|
| 1. | 20 x 110 MM autocannon, single barrel, standard trigger group | 50 |
| 2. | Ammunition for 20MM | 50,000 |

The above will be delivered to the NIGERIAN ARMY in the territory of NIGERIA by "DOLARIAN CAPITAL", Inc, located at 1284 W. Shaw Ave. #102, CA 93711. USA with its representative office.

The equipment indicated in the present certificate will be used by the Government of NIGERIA and will not be re-exported, sold, disposed of, or transferred to any third countries without the written permission of the State service of export control of NIGERIA.

The signature of the authorized senior officer of the NIGERIAN ARMY shown below serves to prove the authenticity of this End User Certificate.

End User Certificate is issued in the City of ABUJA , Country of NIGERIA on 04 day of June 2014.

On behalf of the NIGERIAN ARMY

Rank: **Major General**      Title: **Chief of Policy and Plans (Army)**

Name: **JO NWAOGBO**      Official Stamp:      Date: 4 Jun 14

Signature:

# ATTACHMENT

E

# SALES AGREEMENT

Buyer:                          SEI SOCIETE D'EQUIPMENT INTERNATIONAUX

End User:                       Minister of Defence Nigeria

Seller:                         Dolarian Capital, Inc.

**DCI Contract No:**            14_121v4

THIS SALE AGREEMENT (the "Agreement"), is made this 24 day of July 2014 (the "Effective Date") by and between Dolarian Capital, Inc. ("Dolarian" or "SELLER"), a California corporation, incorporated in the State of California, with its principal place of business at 1284 N. Shaw Avenue, Suite 102, Fresno, CA 9371 l or assignee, and Nigerian Army, Ministry of Defence Area 7 Garki, Abuja ("Buyer") and (collectively, the "Parties").

## DEFINITIONS

1. Goods and Services. Goods subject to this Agreement are set forth in Attachment "A".

2. Price. The Price is Goods as set forth in Attachment "A". Delivery, which is an optional service to the Final Destination.

3. Dispatch. Dispatch is defined as the date on which the freight forwarder takes possession of SELLER's Goods. This transaction may require multiple dispatches, delivery and partial shipments.

4. Customs. BUYER is responsible for all Custom's clearances at the Final Destination; Delivery Duty Unpaid (DDU).

5. Delivery: To a BUYERS Port. Price does not include inland transportation in BUYERS Territory. Attachment "C".

## TERMS AND CONDITIONS

**NOW, THEREFORE, based on mutual consideration, the receipt and adequacy of which is mutually acknowledged, the parties agree to the following terms and conditions:**

1. **Compliance with Laws.**

   a. SELLER warrants that it is in full compliance with all applicable United States laws, and regulations and will remain in full compliance with all applicable laws and legal standards during the term of this Agreement. SELLER further covenants, warrants and represents that it shall comply with all applicable United States laws, including regulations and Executive Orders, applicable to this Agreement and performance of the obligations herein, including but not limited to any applicable United States export control laws and trade restrictions, including but not limited to the U.S. International Traffic in Arms Regulations ("ITAR") and Foreign Assets Control Regulations ("OFAC Regulations"), which govern the export and re-export of U.S., Origin defense articles and technology and goods and technology subject to U.S. jurisdiction.

   b. BUYER acknowledges and agrees that the Materials may be subject to Export Controls. The Parties may not export, re-export or transfer, whether directly or indirectly, the Materials, or any portion thereof, without first complying strictly and fully with any applicable Export Controls regarding the Materials.

2. **Import/Export License.** SELLER agrees that it shall maintain all permits, licenses and other governmental approvals that may be required by the United States for SELLER's performance under this Agreement. Specifically, SELLER is responsible for all Export License(s) applications from Country of Export and the End User (BUYER) is responsible for Import Permits or Waivers thereof. Buyer will cooperate with Seller and will provide a valid executed acceptable End User Certificate and other documentation, if required by any Governmental Agency associated with this transaction. Attachment "B".

3. **Foreign Corrupt Practices Act.** The Parties also acknowledge that Seller shall not take any action in violation of national anti-corruption laws, including the U.S. Foreign Corrupt Practices Act and the UK Bribery Act. The provisions of this section shall survive any termination or expiration of this Agreement.

3. **Recordkeeping.** The Parties shall maintain all records related to the Agreement as necessary to secure Export permits and/or Import Licenses.

4. **Changes and Alterations.** Should BUYER change a specification, quantity, and or delay and or fail to provide requested documents, and or provide incorrect instructions and or documents, any and all extra costs incurred by the SELLER shall be the responsibility of the BUYER.

5. **Specification and Performance.** The Goods supplied will be substantially in compliance with the specification attached to this Agreement, subject to commercially reasonable manufacturing variations. Such variation shall not be the basis of any claim against SELLER or its suppliers. No advertisements, catalogues, or other publications or statements regarding the Performance of the Goods other than as set forth in Attachment "A" is part of the Agreement. SELLER reserves the right to supply Goods in fulfillment of its obligations under this Agreement utilizing modified design criteria or manufacturing means and/or methods, provided that the performance of the Goods is not adversely affected.

6. **Conditions Precedent.** SELLER's obligations and responsibilities to proceed shall commence upon the signing, sealing of this Agreement and receipt of the payment as provided in Attachment "A".

7. **Indemnity.** BUYER shall hold SELLER, its subsidiaries, affiliates, related entities, partners, agents, officers, directors, employees, members, shareholders, attorneys, heirs, successors, and assigns, and each of them, harmless from and against any and all claims, actions, suits, proceedings, demands, losses, damages, judgments, settlements, obligations, costs and expenses (including reasonable attorneys' fees and expenses), and liabilities of every kind and character whatsoever (a "Claim"), in connection with any personal injury, including death, or any damage to property, which may be suffered by BUYER's use, operation, or failure of the Goods furnished to perform as set forth in Attachment "A".

8. **Force Majeure.** If SELLER's ability to perform its obligation under the Agreement is limited, delayed or prevented in whole or in part by any reason whatsoever not reasonably within the control of SELLER, or its suppliers, including without limitation, act of God, war, invasion, act of foreign enemy, hostilities, civil war, rebellion, civil strife, strikes and/or industrial dispute or by any law, rule, regulation, order or other action by any public authority, transportation delays or the refusal of any necessary export or import license, SELLER shall be excused, discharged, and released of performance to the extent such performance is so limited, delayed or prevented without liability of any kind.

9. **Entire Agreement.** This Agreement: (i) constitutes the entire Agreement between the Parties hereto with respect to the subject matter hereof; (ii) supersedes and replaces all prior agreements, oral or written, between the Parties relating to the subject matter hereof; and (iii) may be amended only by a written instrument clearly setting forth the amendment(s) and executed by an officer of SELLER. In

the event of a conflict between this Agreement and any other Agreement, this Agreement shall supersede and take precedence over such conditioning terms and conditions.

10. **Notice.** All notices, requests, demands or other communications which are required or may be given pursuant to the Terms and Conditions of the Agreement shall be in writing and shall be deemed to have been duly given if delivered by hand or mail by certified or registered mail, postage prepaid specified by the parties in the Agreement.

11. **Governing Law.** All questions with respect to the construction of this Agreement or the rights and liabilities of the parties under this Agreement shall be determined in accordance with the laws of the United States of America excluding any conflicts of laws provisions. BUYER hereby agrees to submit himself to the International Chamber of Commerce (ICC) for purposes of resolving any dispute or breaches of this Agreement only. BUYER waives any and all rights and/or claims to Sovereign Immunity in connection with the claims and/or disputes arising under this Agreement.

12. **Venue.** The Parties agree that any claim and/or dispute arising under this Agreement shall be submitted to the International Chamber of Commerce (ICC) for resolution. Said body shall be the sole and exclusive entity with jurisdiction to resolve the dispute and/or claim. The Parties to this Agreement hereby adopt the Rules of the ICC for Arbitration and agree that any award issued by the ICC shall be binding, final and enforceable anywhere in the world.

13. **Assignment.** This Agreement may be assigned, or the rights granted under this Agreement transferred or sub-licensed, by either party without the express prior written consent of the other party.

14. **Language.** Governing language for this Agreement is English.

15. **General.** Any provision or provisions of the Agreement prohibited by, or unlawful under, any applicable law of any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provision of the Agreement, provided, however, that where the provisions of any such applicable law may be waived, they are hereby waived by BUYER as to the full extent permitted by law, to the end that the Agreement shall be deemed to valid, binding, and enforceable in accordance with its terms.

16. **Headings.** The headings of the various paragraphs in the Agreement are intended solely for reference and are not intended to explain, modify or place any construction upon any of the provisions of this Agreement.

17. **Notice.** All notices and demands of any kind or nature that either party may be required or may desire to serve upon the other in connection with this Agreement shall be in writing and may be served personally, by fax, by certified mail, or by overnight courier, with constructive receipt deemed to have occurred on the date of the mailing, sending or faxing of such notice, to the following addresses or fax numbers:

**If to SELLER:**

Ara G Dolarian
Dolarian Capital, Inc.

**If to BUYER:**

Mr. H Ab...
SEI N... Limited

The Parties through their duly authorized representatives agree to this Agreement as of the date and year first above written.

BUYER:

By:  Mr H Aboubakar
Its:  Director

SELLER:

By:  Ara G Dolarian
Its:  President

**ATTACHMENT "A"**

DCI Ref. No.:   14_121v1 Nigeria AA & MBT
End User:       MOD Nigeria
Terms:          50% Advance Payment, Balance due at dispatch
Freight:        FOB Black Sea Port
Price Valid:    August 2014 or Prior Sale
Condition       Acceptable End User Certificate, Export License and other approvals deemed necessary
Delivery:       After all approvals and Payments

| Item | Description | Quantity | Price | Extension |
|------|-------------|----------|-------|-----------|
| | **Vehicle** | | | |
| 1.0 | T-72 MBT | 30 | 85,000.00 | 2,550,000.00 |
| 2.0 | Zu-23-4, 23mm 4 barrel AA tracked vehicle | 20 | 105,000.00 | 2,100,000.00 |
| | | | Sub-Total | 4,650,000.00 |

| Item | Description | Quantity | Price | Extension |
|------|-------------|----------|-------|-----------|
| | **Ammunition** | | | |
| 3.0 | Zu-23-4, Round 23 x 152mm | 400,000 | 72.90 | 29,160,000.00 |
| | The round is fuse is delayed action, self-destruction | | | - |
| 4.0 | 125mm HE for T-72, new production | 13,500 | 2,185.00 | 29,497,500.00 |
| 4.1 | 125mm APFSDS-T from stock | 1,500 | 3,240.00 | 4,860,000.00 |
| | | | Sub-Total | 58,657,500.00 |

Total        63,307,500.00

## ATTACHMENT "B"

Required Documents and Certification for Delivery of Attached "A";

1. SELLER will prepare End User Certificate for BUYER and BUYER will return to SELLER the executed original to SELLER.
2. BUYER to provide SELLER with original Import Certificate or Waiver of Requirement.
3. Original of this Agreement Signed and Sealed by BUYER.
4. Certificate of Delivery Confirmation, BUYER is required by law to return to SELLER within 10 days a Certificate of Delivery Confirmation. SELLER will provide to BUYER this document.

## ATTACHMENT "C"

1. Date of carriage is subject to final confirmation of vehicle, load, build and break arrangements at routing and ports of entire requiring necessary permits, license(s), and rights.

2. Freight includes the shipment of Goods with basic load and build.

   a. Freight Price excludes: external crane, storage, customs clearance, duties, taxes, royalties, de-icing, declared value coverage, warehousing, and ground transportation at loading or other, if these cost are incurred they will be charged to BUYER.

3. BUYER agrees to pay surcharges for Goods, if any for: fuel, fluctuation in the U.S. Dollar, handling, load, stevedore, security and / or war risk, hazardous and dangerous goods, build, break, and port fees.

4. BUYER agrees that the carriage schedule and routing are subject to change based on, mechanical issues, hostilities, war, civil unrest, political affairs, embargo(s); and delays caused by shipments prior to the BUYERS shipment, and changes in cargo handling arrangements.

5. BUYER is responsible for having the necessary equipment to off load at port as well as ground transportation.

6. BUYER is responsible to return to SELLER all of SELLERS equipment the BUYER used during the course of business within 15 days. If BUYER is does not return to SELLER its equipment, SELLER may replace equipment and charge BUYER, SELLERS cost.

7. SELLER has the right to offset goods in ATTACHMENT "A" if payment on Invoice(s) are not paid by within 30 days.



**Headquarters**
Nigerian Army
Ministry of Defence
Area 7 Garki,
Abuja.
E-mail: ahq.dapp@army.mil.ng

AHQ DAPP/G5/220/148

### END USER CERTIFICATE

To Whom It May Concern

This is to certify that the Nigerian Army, Federal Republic of Nigeria is ready to procure the following Material from Dolarien Capital inc, 1284 West Shaw Avenue, Suite 102, Fresno, California 93711 USA through SEI Nigeria Limited, BP 11737 Abuja. All the below mentioned Materials are intended for the use by the Nigerian Army and will not be re-exported or sold for export to a Third Party.

| Serial | Description | Quantity |
|--------|-------------|----------|
| (a) | (b) | (c) |
| 1. | T-72 MI | 30 |
| 2. | ZSU 23-4 | 20 |

We certify that the goods will not be used for any purpose connected with chemical, biological or nuclear weapons or missiles capable of delivering such weapons, and that they will not be re-exported or otherwise re-sold or transferred if it is known or suspected that they are intended or likely to be used for such purposes.

For and on behalf of the Nigeria Army,

Rank: Major General

Title: Chief of Policy and Plans (Army)

Name: **JO NWAOGBO**

Official Stamp:

Signature:...................................

Date: 25 Jul 14



**Headquarters**
Nigerian Army
Ministry of Defence
Area 7 Garki,
Abuja.
E-mail: ahq.dapp@army.mil.ng

AHQ DAPP/G5/220/148

## END USER CERTIFICATE

To Whom It May Concern

This is to certify that the Nigerian Army, Federal Republic of Nigeria is ready to procure the following Material from Dolarien Capital inc, 1284 West Shaw Avenue, Suite 102, Fresno, California 93711 USA through SEI Nigeria Limited, BP 11737 Abuja. All the below mentioned Materials are intended for the use by the Nigerian Army and will not be re-exported or sold for export to a Third Party.

| Serial | Description | Quantity |
|--------|-------------|----------|
| (a) | (b) | (c) |
| 1. | Calibre 23 x 152mm | 400,000 |
| 2. | Calibre 125mm HE for T-72 Tank | 13,500 |
| 3. | Calibre 125mm APFSDS-T | 1,500 |

We certify that the goods will not be used for any purpose connected with chemical, biological or nuclear weapons or missiles capable of delivering such weapons, and that they will not be re-exported or otherwise re-sold or transferred if it is known or suspected that they are intended or likely to be used for such purposes.

For and on behalf of the Nigeria Army,

Rank: Major General

Title: Chief of Policy and Plans (Army)

Name: **JO NWAOGBO**

Official Stamp:

Signature:.....................................

Date: 25 Jul 14



**Headquarters**
Nigerian Army
Ministry of Defence
Area 7 Garki,
Abuja.
E-mail: ahq.dapp@army.mil.ng

AHQ DAPP/G5/220/136

Dolarien Capital inc,
1284 West Shaw Avenue,
Suite 102, Fresno,
California 93711
**USA**

25 July 2014

## AUTHORITY TO PROCURE MILITARY EQUIPMENT
## MR HIMA ABOUBAKAR OF SEI COMPANY

1.  I am directed to formally introduce to you Mr Hima Aboubakar of SEI Nigeria Limited, BP11737 Abuja as an approved dealer in military equipment. Consequently, I am to convey the Chief of Army Staff's authority for SEI Nigeria Limited to procure the underlisted items on behalf of the Nigerian Army:

| Serial (a) | Description (b) | Quantity (c) |
|-----------|-----------------|--------------|
| 1. | Calibre 23 x 152mm | 400,000 |
| 2. | Calibre 125mm HE for T-72 Tank | 13,500 |
| 3. | Calibre 125mm APFSDS-T | 1,500 |
| 4. | T-72 MI | 30 |
| 5. | ZSU-23-4 | 20 |

2.  You are therefore requested to kindly accord him and his company all necessary assistance and cooperation for a smooth and successful business transaction.

3.  Please accept the assurances and esteemed regards of the Chief of Army Staff.

Your's faithfully,

2 5 JUL 2014

**JO NWAOGBO**
Major General
for Chief of Army Staff

Copy to:

Office of the Chief of Army Staff

# ATTACHMENT

# F

## SALES AGREEMENT

| | |
|---|---|
| Buyer: | SEI SOCIETE D'EQUIPMENT INTERNATIONAUX |
| End User: | Minister of Defence Nigeria |
| Seller: | Dolarian Capital, Inc. |
| DCI Contract No: | 14_149v1 Nigeria |

THIS SALE AGREEMENT (the "Agreement"), is made this 17 day of August 2014 (the "Effective Date") by and between Dolarian Capital, Inc. ("Dolarian" or "SELLER"), a California corporation, incorporated in the State of California, with its principal place of business at 1284 N. Shaw Avenue, Suite 102, Fresno, CA 93711 or assignee, and Nigerian Army, Ministry of Defence Area 7 Garki, Abuja ("Buyer") and (collectively, the "Parties"):

### DEFINITIONS

1. Goods and Services. Goods subject to this Agreement are set forth in Attachment "A".

2. Price. The Price is Goods as set forth in Attachment "A". Delivery, which is an optional service to the Final Destination.

3. Dispatch. Dispatch is defined as the date on which the freight forwarder takes possession of SELLER's Goods.

4. Customs. BUYER is responsible for all Custom's clearances at the Final Destination; Delivery Duty Unpaid (DDU).

### TERMS AND CONDITIONS

**NOW, THEREFORE**, based on mutual consideration, the receipt and adequacy of which is mutually acknowledged, the parties agree to the following terms and conditions:

1. **Compliance with Laws**

   a. SELLER warrants that it is in full compliance with all applicable United States laws, and regulations and will remain in full compliance with all applicable laws and legal standards during the term of this Agreement. SELLER further covenants, warrants and represents that it shall comply with all applicable United States laws, including regulations and Executive Orders, applicable to this Agreement and performance of the obligations herein, including but not limited to any applicable United States export control laws and trade restrictions, including but not limited to the U.S. International Traffic in Arms Regulations ("ITAR") and Foreign Assets Control Regulations ("OFAC Regulations"), which govern the export and re-export of U.S., Origin defense articles and technology and goods and technology subject to U.S. jurisdiction.

   b. BUYER acknowledges and agrees that the Materials may be subject to Export Controls. The Parties may not export, re-export or transfer, whether directly or indirectly, the Materials, or any portion thereof, without first complying strictly and fully with any applicable Export Controls regarding the Materials.

2. **Import/Export License.** SELLER agrees that it shall maintain all permits, licenses and other governmental approvals that may be required by the United States for SELLER's performance under

this Agreement. Specifically, SELLER is responsible for all Export License(s) applications from Country of Export and the End User (BUYER) is responsible for Import Permits or Waivers thereof. Buyer will cooperate with Seller and will provide a valid executed acceptable End User Certificate and other documentation, if required by any Governmental Agency associated with this transaction, Attachment "B".

3. **Foreign Corrupt Practices Act.** The Parties also acknowledge that Seller shall not take any action in violation of national anti-corruption laws, including the U.S. Foreign Corrupt Practices Act and the UK Bribery Act. The provisions of this section shall survive any termination or expiration of this Agreement.

3. **Recordkeeping.** The Parties shall maintain all records related to the Agreement as necessary to secure Export permits and/or Import Licenses.

4. **Changes and Alterations.** Should BUYER change a specification, quantity, and/or delay and or fail to provide requested documents, and/or provide incorrect instructions and or documents, any and all extra costs incurred by the SELLER shall be the responsibility of the BUYER.

5. **Specification and Performance.** The Goods supplied will be substantially in compliance with the specification attached to this Agreement, subject to commercially reasonable manufacturing variations. Such variation shall not be the basis of any claim against SELLER or its suppliers. No advertisements, catalogues, or other publications or statements regarding the Performance of the Goods other than as set forth in Attachment "A" is part of the Agreement. SELLER reserves the right to supply Goods in fulfillment of its obligations under this Agreement utilizing modified design criteria or manufacturing means and/or methods, provided that the performance of the Goods is not adversely affected.

6. **Conditions Precedent.** SELLER's obligations and responsibilities to proceed shall commence upon the signing, sealing of this Agreement and receipt of the payment as provided in Attachment "A".

7. **Indemnity.** BUYER shall hold SELLER, its subsidiaries, affiliates, related entities, partners, agents, officers, directors, employees, members, shareholders, attorneys, heirs, successors, and assigns, and each of them, harmless from and against any and all claims, actions, suits, proceedings, demands, losses, damages, judgments, settlements, obligations, costs and expenses (including reasonable attorneys' fees and expenses), and liabilities of every kind and character whatsoever (a "Claim"), in connection with any personal injury, including death, or any damage to property, which may be suffered by BUYER's use, operation, or failure of the Goods furnished to perform as set forth in Attachment "A".

8. **Force Majeure.** If SELLER's ability to perform its obligation under the Agreement is limited, delayed or prevented in whole or in part by any reason whatsoever not reasonably within the control of SELLER, or its suppliers, including without limitation, act of God, war, invasion, act of foreign enemy, hostilities, civil war, rebellion, civil strife, strikes and/or industrial dispute or by any law, rule, regulation, order or other action by any public authority, transportation delays or the refusal of any necessary export or import license, SELLER shall be excused, discharged, and released of performance to the extent such performance is so limited, delayed or prevented without liability of any kind.

9. **Entire Agreement.** This Agreement: (i) constitutes the entire Agreement between the Parties hereto with respect to the subject matter hereof; (ii) supersedes and replaces all prior agreements, oral or written, between the Parties relating to the subject matter hereof; and (iii) may be amended only by a written instrument clearly setting forth the amendment(s) and executed by an officer of SELLER. In the event of a conflict between this Agreement and any other Agreement, this Agreement shall supersede and take precedence over such conflicting terms and conditions.

10. **Notice.** All notices, requests, demands or other communications which are required or may be given pursuant to the Terms and Conditions of the Agreement shall be in writing and shall be deemed to

have been dully given if delivered by hand or mail by certified or registered mail, postage prepaid specified by the parties in the Agreement.

11. **Governing Law.** All questions with respect to the construction of this Agreement or the rights and liabilities of the parties under this Agreement shall be determined in accordance with the laws of the United States of America excluding any conflicts of laws provisions. BUYER hereby agrees to submit himself to the International Chamber of Commerce (ICC) for purposes of resolving any disputes or breaches of this Agreement only. BUYER waives any and all rights and or claims to Sovereign Immunity in connection with the claims and/or disputes arising under this Agreement.

12. **Venue.** The Parties agree that any claim and/or dispute arising under this Agreement shall be submitted to the International Chamber of Commerce (ICC) for resolution. Said body shall be the sole and exclusive entity with jurisdiction to resolve the dispute and/or claim. The Parties to this Agreement hereby adopt the Rules of the ICC for Arbitration and agree that any award issued by the ICC shall be binding, final and enforceable anywhere in the world.

13. **Assignment.** This Agreement may be assigned, or the rights granted under this Agreement transferred or sub-licensed, by either party without the express prior written consent of the other party.

14. **Language.** Governing language for this Agreement is English.

15. **General.** Any provision or provisions of the Agreement prohibited by, or unlawful under, any applicable law of any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provision of the Agreement, provided, however, that where the provisions of any such applicable law may be waived, they are hereby waived by BUYER as to the full extent permitted by law, to the end that the Agreement shall be deemed to valid, binding, and enforceable in accordance with its terms.

16. **Headings.** The headings of the various paragraphs in the Agreement are intended solely for reference and are not intended to explain, modify or place any construction upon any of the provisions of this Agreement.

17. **Notice.** All notices and demands of any kind or nature that either party may be required or may desire to serve upon the other in connection with this Agreement shall be in writing and may be served personally, by fax, by certified mail, or by overnight courier, with constructive receipt deemed to have occurred on the date of the mailing, sending or faxing of such notice, to the following addresses or fax numbers:

If to SELLER:                                    If to BUYER:

Ara G Dolarian                                   Mr. H Aboubakar
Dolarian Capital, Inc.                           SEI Nigeria Limited

Page 3

The Parties through their duly authorized representatives agree to this Agreement as of the date and year first above written.

BUYER:

By: Mr. H Aboubakar
Its:   Director

SELLER:

By: Ara G Dolarian
Its:   President

Page 4

# ATTACHMENT "A"

DCI No.:       14_149 Nigeria
End User:      MOD Nigeria
Terms:         100% Payment on Invoice
Freight:       FOB Sea Port
Condition:     Acceptable End User Certificate, Export License and other approvals deemed necessary.
Delivery:      After all approvals and Payments, Partial Deliveries.

| Item | Description | Quantity | Price | Extension |
|------|-------------|----------|-------|-----------|
| | **Ammunition** | | | |
| 1.0 | 20 x 128mm  API, stripped | 300,000 | 50.00 | 15,000,000.00 |
| | | | | |
| | | | | |
| | | | Total | 15,000,000.00 |

## ATTACHMENT "B"
### Required Documents and Certification for Delivery of Attached "A":
1. SELLER will prepare End User Certificate for BUYER and BUYER will return to SELLER the executed original to SELLER.
2. BUYER to provide SELLER with original Import Certificate or Waiver of Requirement.
3. Original of this Agreement Signed and Sealed by BUYER.
4. Certificate of Delivery Confirmation, BUYER is required by law to return to SELLER within 10 days a Certificate of Delivery Confirmation. SELLER will provide to BUYER this document.

## ATTACHMENT "C"
1. Date of carriage is subject to final confirmation of vehicle, load, build and break arrangements at routing and ports of entire requiring necessary permits, license(s), and rights.
2. Freight includes the shipment of Goods with basic load and build.
   a. Freight Price excludes: external crane, storage, customs clearance, duties, taxes, royalties, de-icing, declared value coverage, warehousing, and ground transportation at loading or other, if these cost are incurred they will be charged to BUYER.
3. BUYER agrees to pay surcharges for Goods, if any for: fuel, fluctuation in the U.S. Dollar, handling, load, stevedore, security and / or war risk, hazardous and dangerous goods, build, break, and port fees.
4. BUYER agrees that the carriage schedule and routing are subject to change based on: mechanical issues, hostilities, war, civil unrest, political affairs, embargo(s), and delays caused by shipments prior to the BUYERS shipment, and changes in cargo handling arrangements.
5. BUYER is responsible for having the necessary equipment to off load at port as well as ground transportation.
6. BUYER is responsible to return to SELLER all of SELLERS equipment the BUYER used during the course of business within 15 days. If BUYER is does not return to SELLER its equipment, SELLER may replace equipment and charge BUYER, SELLERS cost.
7. SELLER has the right to offset goods in ATTACHMENT "A" if payment on Invoice(s) are not paid by within 30 days.



**Headquarters**
Nigerian Army
Ministry of Defence
Area 7 Garki,
Abuja.
E-mail: ahq.dapp@army.mil.ng

AHQ DAPP/G5/220/148

## END USER CERTIFICATE

To Whom It May Concern

This is to certify that the Nigerian Army, Federal Republic of Nigeria is ready to procure the following material from Dolarian Capital inc, 1284 West Shaw Avenue, Suite 102, Fresno, California 93711 USA through SEI Nigeria Limited, BP 11737 Abuja. All the below mentioned materials are intended for use by the Nigerian Army and will not be re-exported or sold for export to a third party.

| Description | Quantity |
|---|---|
| 20 x 128mm ammunition | 300,000 |

We certify that the goods will not be used for any purpose connected with chemical, biological or nuclear weapons or missiles capable of delivering such weapons, and that they will not be re-exported or otherwise re-sold or transferred if it is known or suspected that they are intended or likely to be used for such purposes.

For and on behalf of the Nigerian Army,

Rank: Major General                    Title: Chief of Policy and Plans (Army)

Name: **JO NWAOGBO**                   Official Stamp:

Signature:.....................        Date: 18 Aug

# ATTACHMENT

# G



# SOCIETE D'EQUIPMENTS INTERNATIONAUX NIG. LTD

**BLOCK A FLAT 3, 5 SAPELE STREET GARKI 2, ABUJA. FCT NIGERIA**
Tel: +234 708 823 5632 Email: sci_sarl@yahoo.fr

Wenesday , Mai 13 / 2015

**Subjet** : cancellation all contracts for nigerian army

Mr. Dolarian ,

I hope all is ok. I will officially cancel all projects (contracts )outstanding with Dolarian Capital because of Government allocation of monies to purchase not being consistent with actual need for those now. You will receive soon.

I understand and have felt the frustration of the past months. I wish to move forward with the monies that have already been sent. Supply my request and more business will come. Let us start fresh my brother and move forward to the future, with the past being, the past. Much business is coming.

Regards,

Hima Aboubakar
GENERAL MANAGER / SEI NIG LIMITED



Myron J. Smith
4321 W. West Avenue
Suite 106
Fresno, California 93705
Telephone (559) 226-5400

1

**PROOF OF SERVICE**
CCP 1011, 1013, 1013a, 2015.5
**FRCP 5(b)**

2

3

STATE OF CALIFORNIA, COUNTY OF FRESNO:

4

I am employed in the County of Fresno, State of California. I am over the age of 18 and not a party to the within action; my business address is 1284 W Shaw Ave, Suite 102, Fresno, California 93711.

5

6

On **November 16, 2015**, I served the document described as **ANSWER, COUNTERCLAIM, AND 3RD PARTY COMPLAINT** on the interested parties in this action

7

by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:  XX  by placing      the original   XX  a true copy thereof enclosed in sealed envelopes addressed as follows:

8

9

CHRISTOPHER DOMINGUEZ
KLIEN DENATALE
4550 2ND STREET, 2ND FLOOR
BAKERSFIELD CA 93309

10

11

XX  BY MAIL    XX  I deposited such envelope in the mail at Fresno, California. The envelope was mailed with postage thereon fully prepaid.

12

13

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Fresno, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

14

15

16

17

(BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

18

(BY FAX) I caused the above-referenced document to be transmitted by fax to the addressee(s) at the fax number(s) shown.

19

20

(BY OVERNIGHT COURIER) I caused the above-referenced envelope(s) to be delivered to an overnight courier service for delivery to the addressee(s).

21

Executed on **November 16, 2015**, at Fresno, California.

22

_____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24

X  (Federal)      I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

25

26

GARTH DUZI

27

28