1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8

9  SOCIETE D'EQUIPMENTS                     Case No. 1:15-cv-01553-GEB-SKO
   INTERNATIONAUX NIGERIA, LTD,
10
                     Plaintiff,             **FINDINGS AND RECOMMENDATION**
11                                          **GRANTING SOCIETE D'EQUIMENTS**
        v.                                  **INTERNATIONAUX NIGERIA, LTD'S**
12                                          **MOTION TO DISMISS THE**
                                            **COUNTERCLAIM WITH PREJUDICE**
13  DOLARIAN CAPITAL, INC., and ARA G.
    DOLARIAN,
14                                          **Objections Due: 28 Days**
                     Defendants.
15  _____/       (Doc. 18)

16                    **I.      INTRODUCTION**

17         On October 9, 2015, Plaintiff Societe d'Equipments Internationaux Nigeria, Ltd. ("SEI")

18  filed a complaint against Defendants Dolarian Capital, Inc. ("DCI"), and Ara G. Dolarian

19  ("Dolarian") (collectively "Defendants").  (Doc. 1 ("Complaint").)  On November 18, 2015,

20  proceeding *pro se*, Dolarian filed an answer "by and for himself and on behalf of [DCI]," a

21  Counterclaim for breach of contract against SEI, and a third-party complaint against Amanda

22  Giovanni, a defense contractor.  (Docs. 11 ("Answer"); 12 ("Counterclaim").)  On November 30,

23  2015, this Court struck the answer as to DCI pursuant to Local Rule 183(a), which prohibits a

24  corporation or other business entity from appearing in federal court without counsel, and entered

25  default against DCI. (Docs. 15; 16.)

26         On December 9, 2015, SEI filed a motion to dismiss the Counterclaim on the grounds that

27  Dolarian lacks standing to assert his counterclaim for breach of contract against SEI.  (Doc. 18;

28  *see also* Doc. 21 (demonstrating proper service of notice upon Defendants).)  Defendants did not

file an opposition. (*See* Docket.) Having reviewed the parties' papers and all supporting material, the matter is deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the January 13, 2015, hearing is VACATED.

For the reasons set forth below, it is RECOMMENDED that SEI's motion to dismiss the counterclaim be GRANTED with prejudice and without leave to amend.[1]

## II.      BACKGROUND

**A.      Factual Background**[2]

SEI is a Nigerian private limited company "in the business of acquiring various military assets and munitions[,] primarily for the Nigerian armed services." (Compl., p. 2.) SEI contracted with the Nigerian military to acquire and deliver "various military assets and munitions for the use of the Nigerian military in its fight against the terrorist organization known as Boko Haram." (Compl., pp. 2-3.) In May of 2014, DCI was contacted by Marion Ford, a United States citizen residing in the Czech Republic. (Countercl., p. 2.) Ford informed DCI that "he had a customer, who wanted to buy weapons, aircraft, and ammunition on behalf of the Nigerian government." (Countercl., p. 2.) Because Ford was not licensed by the United States Department of State, "DCI offered him an Agency Agreement" and Ford conducted all negotiations in the Czech Republic on DCI's behalf. (Countercl., p. 2.) As alleged in the Complaint, Dolarian made several material representations to SEI to induce them to enter into purchasing contracts:

1.    Dolarian "assured SEI that as an arms broker and supplier, he and his company, [DCI], could obtain, supply, and provide the military assets and munitions needed by SEI and [ ] deliver them to SEI in a timely manner."

2.    Dolarian "represented that he and his company, [DCI], had the experience and the expertise to navigate the regulatory requirements and approvals required by governmental authorities to acquire, sell, supply, and deliver the military assets and munitions to SEI in Nigeria."

---

[1]      Pursuant to Local Rule 302(c)(21), District Judge Burrell referred the Motion to Dismiss to Magistrate Judge Oberto for Findings and Recommendations.

[2]      The parties' allegations are drawn from the complaint and counterclaim and are not factual findings made by the Court. (Compl.; Countercl.)

1      3.  Dolarian "assured SEI that he had numerous contacts and connections that would enable

2          him and his company [DCI] to acquire the military assets and munitions and obtain all

3          necessary governmental approvals necessary for export to Nigeria."

4  (Compl., p. 3.)  DCI and SEI signed several contracts, totaling in value to $246,433,542.50.[3]

5  (Countercl., p. 2.)  One of these contracts, signed in June 2014, involved the sale and supply of

6  military assets and munitions for the sum of $8,616,042.50.  (Compl., p. 3.)  As a condition of the

7  contracts, SEI was to pay a deposit in the amount of "50% of the contract value" at the time of

8  "signing and sealing of the contract" and was to provide DCI "with the necessary End User

9  Certificate(s)" for export.   (Countercl., p. 2.)   SEI made two payments to DCI totaling

10  $8,618,646.57: the first for $4,998,646.57 in June 2014, and the second for $3,620,000 in

11  September 2014.  (Compl., p. 3.)  DCI asserts that the total payments were less than the deposit

12  required by the total contracts, which would have been $123,216,771.25.  (Countercl., p. 3.)  SEI

13  asserts that these sums were paid as payments in full for the June 2014 contract (*see* Compl., p. 3);

14  it is unclear why the amount due and the amount actually paid on this contract differed.

15          Despite that DCI contested the total deposit paid by SEI, at some point DCI "submitted to

16  the [United States] Department of State a request for issuance of a license to supply the goods

17  subject to the contracts."  (Countercl., p. 3.)  The license remains pending, due to the alleged

18  interference of a third party defendant, Amanda Giovanni.  (Countercl., p. 3.)  Dolarian contends

19  Giovanni directly contacted "Daniel Cook, who is known to Dolarian as the Chief of the License

20  section for the US Department of State," and ordered Cook to withhold issuance of the license

21  until Dolarian had "assigned the written contracts to her."  (Countercl., p. 4.)  Because Dolarian

22  refused to assign the DCI-SEI contracts to Giovanni, Dolarian alleges the license has not been

23  approved and he is unable to fulfill the contract.  (Countercl., pp. 4-5.)

24  _____

25  [3]    DCI and SEI entered into at least five signed agreements for the sale and supply of military assets and munitions
between June 4 and August 17, 2014, for a total contractual value of $246,433,542.50.  (*See* Countercl., Exhs. A (sale

26  of six Mi-24/Mi-35 helicopters); B (sale of six DEFA Type 553 revolver cannons, arming wire for high explosive
bombs, a Marta 155 Type rocket launch pad, 1,000 high explosive bombs, 25,000 rounds of helicopter revolver

27  ammunition, 5,000 68 mm SNEB antiaircraft rocket, helicopter pylon cartridges); C (50 20x110 mm single-barrel
autocannons); D (50,000 rounds of autocannon ammunition); E (30 T-72 MBTs (main battle tanks); 20 Zu-23-4

28  mm 4 lightly armored anti-aircraft tracked vehicles, 400,000 Zu-23-4 ammunition rounds, 13,500 125 mm T-72 high
explosive rounds, 1,500 125 mm APFSDS-T armor-piercing anti-tank ammunition rounds).)

DCI did not deliver "*any* military assets or munitions to SEI" pursuant to the June 2014 contract; thus "by letter dated May 7, 2015, SEI formally cancelled the Contract and demanded a return of the money SEI paid to [D]efendants." (Compl., p. 4 (italics in original), Exh. B.) By letter dated May 15, 2015, Defendants allegedly stated "they would return only $7,800,000 of the amount paid as a credit against a purported charge for a 'cancellation fee' of $27,000,000 on supposed other contracts." (Compl., p. 4 (May 15, 2015, letter not provided as exhibit).) SEI seeks damages in the amount of $8,618,646.57 for DCI's failure to provide the military assets and munitions pursuant to the June 2014 contract, as well as prejudgment interest as of May 7, 2015, attorneys' fees, costs, and punitive and exemplary damages. (Compl., p. 9.)

On November 18, 2015, Dolarian filed a counterclaim for breach of contract against SEI. Dolarian alleged SEI had materially breached the terms of the five contracts for the sale and supply of military assets and munitions by failing to make deposit payments in the amount required by total contracts, "which DCI asserts is the sum of $123,216,771.25." (Countercl., p. 3.) Dolarian seeks damages "in [an] amount estimated to be in excess of $20,000,000" as a result of SEI's alleged "failure to perform its obligations and duties assumed in [those] contracts." (Countercl., p. 3.) Dolarian also names Giovanni as a third-party defendant, and seeks compensatory and exemplary damages against Giovanni for intentional interference with contract and negligent interference with contract. (Countercl., p. 5.)

**B.      Procedural Background**

On October 9, 2015, SEI filed a complaint against DCI and Dolarian, alleging several claims flowing from DCI's alleged breach of the June 2014 contract. (Compl.) On November 18, 2015, proceeding *pro se*, Dolarian filed an answer "by and for himself and on behalf of [DCI]," a counterclaim for breach of contract against SEI, and a third-party complaint against Giovanni. (Answer; Countercl.) Because a corporation or other business entity may only appear in federal court with counsel (Local Rule 183(a)), on November 30, 2015, this Court struck the answer as to DCI. (Doc. 15.) Default was entered against DCI by the Clerk of Court that same day. (Doc. 16.)

On December 9, 2015, SEI filed the instant motion to dismiss the Counterclaim on the grounds that Dolarian, proceeding *pro se*, lacks standing to assert his counterclaim for breach of

4

1    contract against SEI.  (Doc. 18.)  Defendants filed no opposition.  (*See* Docket.)

2    **III.   RULE 12(b)(1) STANDARD**

3        "Federal courts are courts of limited jurisdiction.  They possess only that power authorized

4    by Constitution and statute . . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

5    (1994) (internal citations omitted).  Fed. R. Civ. P. 12(b)(1) allows a party to seek dismissal of an

6    action where federal subject matter jurisdiction is lacking.  "When subject matter jurisdiction is

7    challenged under Federal Rules of Civil Procedure 12(b)(1), the plaintiff has the burden of proving

8    jurisdiction in order to survive the motion."  *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d

9    495, 499 (9th Cir. 2001).

10       A party may seek dismissal for lack of jurisdiction "either on the face of the pleadings or

11    by presenting extrinsic evidence."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139

12    (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  In a factual challenge,

13    the court may consider evidence demonstrating or refuting the existence of jurisdiction.  *Kingman*

14    *Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).  "In such

15    circumstances, no presumptive truthfulness attaches to [counterclaimant]'s allegations, and the

16    existence of disputed material facts will not preclude the trial court from evaluating for itself the

17    merits of jurisdictional claims."  *Id.*  (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.

18    1987)).

19    **IV.   DISCUSSION**

20       SEI contends that Dolarian's counterclaim must be dismissed pursuant to Rules 12(b)(1)

21    and 12(b)(6) because "Dolarian is not a party to any of the contracts alleged in the counterclaim,

22    and he does not plead an exception to the general rule that only parties to a contract may sue to

23    enforce its terms."  (Doc. 18-1, p. 2.)  Because Dolarian "has failed to allege facts sufficient to

24    invoke federal subject-matter jurisdiction," SEI contends he also "lacks statutory standing to

25    pursue these alleged contract claims."  (Doc. 18-1, p. 2.)  Dolarian has not opposed SEI's motion

26    to dismiss the counterclaim.  (*See* Docket.)

27    //

28    //

5

1    **A.      DCI Is In Default and the Counterclaim Should Be Stricken as to DCI**

2          As an initial matter, Dolarian captioned and signed the counterclaim as an individual, but

3    refers to both himself and DCI interchangeably as counterclaimant(s) in the body of the

4    counterclaim.  (*See* Countercl.)  To the extent Dolarian intended to file the counterclaim on DCI's

5    behalf, a corporation or other business entity is *only* permitted to appear in federal court through

6    counsel.  Local Rule 183(a); *Rowland v. Calif. Men's Colony, Unit II Men's Advisory Counsel*,

7    506 U.S. 194, 201-02 (1993).  A clerk's entry of default was entered against DCI on November

8    30, 2015, pursuant to Local Rule 183(a).  (Doc. 16.)  *See Rojas v. Hawgs Seafood Bar, Inc.*, No.

9    C08-03819, 2009 WL 1255538, at *1 (N.D. Cal. 2009) ("When a corporation fails to retain

10   counsel to represent it in an action, its answer may be stricken and a default judgment entered

11   against it").  DCI is in therefore in default and the counterclaim should be stricken as to DCI.

12   Accordingly, only Dolarian's standing will be addressed in below.

13   **B.      The Counterclaim Should Be Dismissed as to Dolarian Pursuant to Rule 12(b)(1)**

14         "[T]he standing question is whether the [counterclaimant] has alleged such a personal stake

15   in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to

16   justify exercise of the court's remedial powers on his behalf."  *Warth v. Seldin*, 422 U.S. 490, 498-

17   99 (1975) (internal quotation marks omitted).  In other words, "[s]tanding addresses whether the

18   [counterclaimant] is the proper party to bring the matter to the court for adjudication."  *Chandler*

19   *v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

20         There are three requirements for standing: (1) "the plaintiff must have suffered an injury in

21   fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b)

22   actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection

23   between the injury and the conduct complained of – the injury has to be fairly traceable to the

24   challenged action of the defendant, and not the result of the independent action of some third party

25   not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury

26   will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

27   (1992) (internal quotation marks, citations, and modifications omitted).  "[A] plaintiff must

28   demonstrate standing for each claim he seeks to press and for each form of relief that is sought."

1   *Maya v. Centex Corp.*, 658 F.3d 1060, 1068-69 (9th Cir. 2011) (internal quotation marks omitted).

2   When ruling on a motion to dismiss for lack of standing, the court "must accept as true all

3   material allegations of the complaint and must construe the complaint in favor of the complaining

4   party." *Warth*, 422 U.S. at 501.  The burden to prove that standing exists is, as always, on the

5   party seeking to invoke federal jurisdiction. *Lujan*, 504 U.S. at 560-61.  But at the pleading phase

6   of the proceedings, "general factual allegations of injury resulting from the [counter]defendant's

7   conduct may suffice, for on a motion to dismiss [the court] presum[es] that general allegations

8   embrace those specific facts that are necessary to support the claim."  *Id*.  That said, a

9   counterclaimant may not "rely on a bare legal conclusion" to support the assertion that the

10  counterclaimant has suffered an injury-in-fact. *Maya*, 658 F.3d at 1068.

11  It is undisputed that the only contracts signed were between SEI and DCI, not between SEI

12  and Dolarian.  (*See* Compl.; Countercl.)   The allegations in the Counterclaim support this

13  conclusion. (Countercl., ¶¶ 7; 9; 13.)   The breach of contract cause of action states that "DCI

14  signed the contracts after SEI" and all deposit payments were "to be received by DCI in

15  conjunction with the signing and sealing of the contract."  (Countercl., ¶ 7.)  The Counterclaim

16  states that DCI's agent Ford negotiated on DCI's behalf with SEI, DCI entered into the contracts

17  with SEI, all payments were demanded by and to be made to DCI, DCI applied for the necessary

18  license to execute its contractual obligations, and "DCI has been damaged" as a result of "SEI's

19  failure to perform its obligations and duties assumed in [the] contracts."  (Countercl., ¶¶ 5-13.)

20  Finally, Dolarian has not filed any opposition disputing that he was not in fact a party to the

21  contract. (*See* Docket.)

22  The general rule in California is that one who is not a party to a contract may not sue to

23  enforce its terms.  *See Gantman v. United Pac. Ins. Co.*, 232 Cal. App. 3d 1560, 1566 (1991)

24  ("Someone who is not party to a contract has no standing to enforce the contract") (internal

25  quotation marks and modifications omitted); Cal. Jur. 3d Contracts § 381 (2014) ("A party who is

26  not a party or privy to a contract cannot show a wrong done to him or her for breach of any duty

27  arising out of the contractual relation"); *see also*,13 Williston on Contracts § 37:1 (4th ed.) ("It is

28  essential to the maintenance of an action on any contract that there should subsist a privity

7

between plaintiff and defendant in respect of the matter sued on") (internal quotation marks omitted). Accordingly, a non-party to a contract does not have standing in federal court to sue for breach of that contract. *See, e.g., Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1133 (N.D. Cal. 2010) ("A third party who is only incidentally benefited by a contract does not have standing to enforce the contract").

In the counterclaim, Dolarian alleges that because he is the sole shareholder of DCI, he "has standing to file this Counterclaim in that the damages alleged by Counterclaim Defendant relate to or flow from the duties and actions alleged herein." (Countercl., ¶ 1.) However, the fact that Dolarian is the sole shareholder of DCI is inconsequential to whether he has third-party standing to enforce the contract or bring claims based on the contractual relationship. *NovelPoster v. Javitch Canfield Group*, No. 13-cv-05186-WHO, 2014 WL 5687344, at *6 (N.D. Cal. Nov. 4, 2014); *Ambers v. Wells Fargo Bank, N.A.*, No. 13-cv-03940-N C, 2014 WL 883752, at *4 (N.D. Cal. Mar. 3, 2014) ("A person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship"). Although there are exceptions to the general rule that a non-party to a contract has no standing to seek its enforcement, *see, e.g., Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) (third-party intended beneficiaries may enforce terms of a contract), on the face of the Counterclaim it does not appear that Dolarian falls under such an exception. Further, Dolarian has made no attempt to allege or explain in an opposition to SEI's motion to dismiss how his breach of contract claim fits within such an exception. The Court concludes that Dolarian does not have standing to seek enforcement of the contracts entered into by DCI.

As currently pled, the claim for breach of contract in the Counterclaim is properly brought only by DCI, not by Dolarian. Because the Counterclaim does not allege that Dolarian entered into a contract with SEI, Dolarian does not have standing to bring a breach of contract claim and the breach of contract cause of action must be dismissed. Accordingly, it is RECOMMENDED

//

//

1  that the motion to dismiss the Counterclaim pursuant to Rule 12(b)(1) be GRANTED.[4]

2  **B.      Leave to Amend Would be Futile**

3       Dolarian's Counterclaim should be dismissed for lack of standing pursuant to Fed. R. Civ.

4  P. 12(b)(1).  Though ordinarily a *pro se* litigant will be granted an opportunity to amend deficient

5  pleadings, *see Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Wilhelm v. Rotman*,

6  680 F.3d 1113, 1121 (9th Cir. 2012)), here Dolarian seeks to enforce the terms of a contract to

7  which he was not a party.  No additional set of facts can invoke this Court's jurisdiction over

8  Dolarian's claims for damages to remedy harm alleged to have been caused by SEI's breach of

9  contract.  Amendment of the Counterclaim would therefore be futile, and leave to amend should

10  not be granted.

11                          **IV.   RECOMMENDATION**

12       For the reasons set forth above, the undersigned RECOMMENDS that Plaintiff Societe

13  d'Equipments Internationaux Nigeria, Ltd.'s motion to dismiss be GRANTED and that Defendant

14  Ara G. Dolarian's Counterclaim be DISMISSED with prejudice and without leave to amend.

15       These findings and recommendations are submitted to the district judge assigned to this

16  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-

17  eight (28) days of service of this recommendation, any party may file written objections to these

18  findings and recommendations with the Court and serve a copy on all parties.  The document

19  should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

20  district judge will review the magistrate judge's findings and recommendations pursuant to

21  28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the

22  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

23  839 (9th Cir. 2014).

24

25  IT IS SO ORDERED.

26  Dated:   __**January 12, 2016**__              _____**/s/ Sheila K. Oberto**_____
                                                   UNITED STATES MAGISTRATE JUDGE

27

---

[4]    The Court makes no finding on SEI's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), as

28  dismissal of the Counterclaim pursuant to Rule 12(b)(1) for lack of standing has been recommended.