1  Barry L. Goldner, SBN 107126
   Christopher E.  Dominguez, SBN 193850
2  KLEIN, DENATALE, GOLDNER,
   COOPER, ROSENLIEB & KIMBALL, LLP
3  4550 California Ave., Second Floor
   Bakersfield, CA 93309
4  Telephone:   661-395-1000
   Facsimile:   661-326-0418
5  Email:   bgoldner@kleinlaw.com
            cdominguez@kleinlaw.com
6
   Attorneys for Plaintiff
7

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11  SOCIETE D'EQUIPMENTS                  Case No. 1:15-cv-01553-DAD-SKO
    INTERNATIONAUX NIGERIA, LTD.,         Hon. Sheila K. Oberto
12
                          Plaintiff,      **MEMORANDUM OF POINTS AND**
13                                        **AUTHORITIES IN SUPPORT OF**
         v.                               **MOTION FOR ENTRY OF DEFAULT**
14                                        **JUDGMENT AGAINST DOLARIAN**
    DOLARIAN CAPITAL, INC., and ARA G.    **CAPITAL, INC.**
15  DOLARIAN

16                        Defendants.
                                          Date:       April 13, 2016
17                                        Time:       9:30 a.m.
                                          Location:   Courtroom 7
18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 1

III. STANDARD FOR DEFAULT JUDGMENT .................................................... 3

A.   SEI has satisfied the procedural requirements for default judgment. ................................ 3

B.   SEI meets the substantive requirements for entry of default. ................................................ 4

   1. Factor 1: Possibility of Prejudice to SEI. .......................................................... 5

   2. Factors 2 & 3: Merits of SEI's Claims and Sufficiency of the Complaint. ............................ 5

      a. Rescission for Failure of Consideration. ............................................................ 6

      b. Money Had and Received. ............................................................................ 7

      c. Breach of Contract. ................................................................................ 7

      d. Conversion. ........................................................................................ 8

      e. Fraud ............................................................................................. 8

   3. Factor 4: Sum of Money at Stake. ..................................................................... 9

   4. Factor 5: Possibility of a Dispute Concerning Material Facts ........................................ 10

   5. Factor 6: Whether Default was Due to Excusable Neglect. ............................................. 11

   6. Factor 7: Policy Favoring Decision on the Merits. .................................................. 11

C.   Judgment against DCI is appropriate under Fed. R. Civ. P. 54(b). ................................... 11

D.   SEI has established the amount of damages due from DCI. ............................................ 13

   1. The court may rely on judicial admissions as admissible evidence to determine damages. ........... 13

   2. SEI has been damaged in the amount of $8,618,646.57. ............................................... 14

IV.  CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988)..........................................13, 14

*Amini Innovation Corp. v. KTY Intern. Marketing*, 768 F.Supp.2d 1049 (C.D. Cal. 2011) ....................................................................................................................................5, 13

*Compass Bank v. Morris Cerullo World Evangelism*, 2015 WL 5098401 (S.D. Cal. 2015) ............................................................................................................................................9

*Directi Internet Solutions Pvt. Ltd. v. Dhillon*, 2013 WL 460319 (E.D. Cal. 2013) .....................15

*DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847 (9th Cir. 2007)....................................................3, 6, 10

*Douglas v. Metro Rental Services, Inc.* 827 F.2d 252 (7th Cir. 1987) ...........................................12

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir.1986) ...............................................................................5

*Huey v. Honewell, Inc.* 82 F.3d 327 (9th Cir. 1996)......................................................................14

*In re Oregon Bulletin Printing & Publishing Co.*, 18 F.Cas. 773 (D. Or. 1876)...........................14

*Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010 (N.D. Cal. 2012) ......................................................7

*Mktg. Info. Masters, Inc. v. Bd. of Trustees of California State Univ. Sys.*, 552 F. Supp. 2d 1088 (S.D. Cal. 2008) ...............................................................................................8

*PepsiCo, Inc. v. Cal. Security Cans*, 238 F.Supp.2d 1172 (C.D. Cal. 2002)............................9, 11

*Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003) ........................................................................................................................................13

*Reliance Fin. Corp. v. Miller*, 557 F.2d 674 (9th Cir. 1977)..........................................................6

*Sacramento E.D.M., Inc.v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141 (E.D. Cal. 2013) ......................................................................................................................9

*Shanghai Automation Instrument Co., Ltd. v. Kuei* 194 F.Supp.2d 995 (N.D. Cal. 2001) ..................................................................................................................................5, 12, 13

*TeleVideo Systems Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir.1987)..................................3, 6, 9, 10

*Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998 (C.D. Cal. 2014)..........................................3, 5, 6, 10

*Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010) ...................................7

*Wyler v. Feuer*, 85 Cal.App.3d 392 (Cal. Ct. App. 1978) ..............................................................6

**Statutes**

Cal. Civ. Code, § 1689.....................................................................................................................6

ii

MEMO OF P&A'S ISO PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DCI

**Other Authorities**

A. Wallace Tashima & James Wagstaffe, CAL. PRAC. GUIDE FED. CIV. PRO.
   BEFORE TRIAL Ch. 6-D § 6:94 (Rutter Group, 2015) ...................................................13

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................4

Fed. R. Civ. P. 4 ...................................................................................................................4

Fed. R. Civ. P. 54 ...........................................................................................................13, 15

Fed. R. Civ. P. 55 .................................................................................................................4

Fed. R. Civ. P. 8 ..........................................................................................................3, 6, 10

MEMO OF P&A'S ISO PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DCI

## I.   INTRODUCTION

The gravamen of this action is Dolarian Capital, Inc.'s ("DCI") wrongful retention of over $8.6 million paid to DCI by Plaintiff Societe D'Equipments Internationaux Nigeria, Ltd. ("SEI") for the purchase of military assets and munitions. DCI failed to provide any military assets or munitions—in breach of its contractual obligations—but refuses to return any of the money SEI paid to it. SEI seeks the return of all funds paid to DCI.

DCI failed to defend this action and SEI now seeks entry of default judgment against DCI pursuant to Rule 55 of the Federal Rules of Civil Procedure.

## II.   STATEMENT OF FACTS

The following statement of facts arise from the material factual allegations of the complaint (which are deemed admitted and taken as true), DCI's stricken answer, and the declarations of Christopher Dominguez and Hima Aboubakar.

SEI is a private limited company organized under the laws of Nigeria operating out of Abuja, Nigeria. (Doc. 1 [Complaint], ¶ 1); (Declaration of Hima Aboubakar ["Aboubakar Decl."], ¶ 4.)

DCI is a corporation organized under the laws of California with its principal place of business in Fresno, California. (Doc. 1, ¶ 2); Doc. 11 [Dolarian Answer/DCI's (Stricken) Answer], ¶ 2.) Ara G. Dolarian is the president and sole shareholder of DCI. (Doc. 1, ¶ 3; Doc. 11, ¶ 3.)

In 2014, SEI learned that DCI was in the arms-dealing business. (Aboubakar Decl., ¶ 6.) SEI's Director, Hima Aboubakar, made contact with DCI's agent, Marion Ford, to discuss potential arms transactions whereby DCI would procure and sell military assets and munitions to SEI for use by the Nigerian military. (Aboubakar Decl., ¶ 7); (Doc. 12 [Dolarian Counterclaim], ¶ 2 [Marion Ford was DCI's agent].)

In initial discussions, Mr. Ford represented that DCI either had or could acquire the military assets and munitions the Nigerian military needed. (Aboubakar Decl., ¶ 8.) Mr. Ford further represented that DCI had contacts and connections that would enable DCI to export these assets and munitions to Nigeria. (Aboubakar Decl., ¶ 9.)

1

1    In June 2014, DCI and SEI entered into a Sales Agreement for the purchase of military

2  assets and munitions for the use of the Nigerian military in its fight against the terrorist

3  organization known as Boko Haram. The contract price was for $8,616,042.50. (Doc. 1, ¶ 12);

4  (Aboubakar Decl., ¶ 10, **Ex. A.**)

5    Following execution of the Sales Agreement, Mr. Ford continued to represent that DCI

6  either had or could acquire the military assets and munitions the Nigerian military needed, and

7  specifically, those specified in the Sales Agreement. (See Aboubakar Decl., ¶ 11.) Mr. Ford

8  further assured SEI that DCI was seeking the appropriate export licenses from the United States

9  government. Based on these representations, in June 2014, SEI made an initial payment toward

10  the contract price in the amount of $4,998,646.57. (Doc. 1, ¶ 13); (Aboubakar Decl., ¶¶ 11, 15-16,

11  **Exs. B, D**; see Doc. 11, ¶ 13.)

12    Mr. Ford requested that SEI pay the balance of the contract price, and represented that

13  upon receipt, DCI would start delivering the military assets and munitions. (Aboubakar Decl.,

14  ¶ 12.) Mr. Ford stated to SEI that DCI had received confirmation that it had the appropriate

15  export licenses from the United States government. (Aboubakar Decl., ¶ 13.) SEI paid an

16  additional sum of $3,620,000.00 to DCI in September 2014. (Doc. 1, ¶ 13); (Aboubakar Decl.,

17  ¶¶ 14-15, 17-18, **Exs. C, D**.)

18    In sum, SEI's payments to DCI under the Sales Agreement totaled $8,618,646.57. (Doc.

19  1, ¶¶ 12-13); (Aboubakar Decl., ¶¶ 10-18, **Exs. B, C, D**; see Doc. 11, ¶ 13.) DCI acknowledged

20  receipt of the $8,618,646.57 in a letter to SEI dated September 18, 2014. (Aboubakar Decl., ¶ 18,

21  **Ex. D**.) These payments were $2,604.07 in excess of the contract price of $8,616,042.50 due to a

22  miscalculation by SEI. (Aboubakar Decl., ¶ 15.)

23    DCI failed to supply any military assets or munitions to SEI as required under the Sales

24  Agreement. (Doc. 1, ¶¶ 15, 22, 34); (Doc. 11, ¶¶ 15, 22); (Aboubakar Decl., ¶ 19.)

25    Based on DCI's failure to perform, SEI cancelled the Sales Agreement and demanded the

26  return of the money paid to DCI. (Doc. 1, ¶ 16, Ex. B); (Aboubakar Decl., ¶ 20, **Ex. E**.) DCI

27  refused and failed to return any amount of the $8,618,646.57 it received. (Doc. 1, ¶¶ 18, 40); (see

28  Aboubakar Decl., ¶¶ 19-23, **Exs. E, F, G**.)

2

1    SEI filed its complaint against DCI and Dolarian on October 9, 2015. (Doc. 1);

2  (Declaration of Christopher E. Dominguez ["Dominguez Decl."], ¶ 4.) DCI was served with the

3  summons and complaint on October 14, 2015. (Doc. 4 ["Summons Returned Executed"]);

4  (Dominguez Decl., ¶ 4.) After SEI granted an extension to respond to the complaint, DCI

5  attempted to file an answer *in propria persona* on November 18, 2015. (Doc. 11); (Dominguez

6  Decl., ¶¶ 5-6.)

7    The court struck the answer as to DCI *sua sponte*. (Doc. 15 ["Order"]); (Dominguez

8  Decl., ¶ 7.) Pursuant to SEI's request, the Clerk subsequently entered default against DCI on

9  November 30, 2015. (Doc. 10 ["Request for Entry of Default"]); (Doc. 16 ["Clerk's Entry of

10  Default"]); (Dominguez Decl., ¶ 7.) Defendants have been served with written notice of this

11  motion for entry of default judgment. (Dominguez Decl. ¶ 8; see proofs attached to each

12  document filed in support of this motion.)

13  **III.    STANDARD FOR DEFAULT JUDGMENT**

14    A court properly grants default judgment after proof of satisfaction of three elements: (1)

15  the procedural requirements set forth in Fed. R. Civ. P. 55, (2) the substantive considerations set

16  forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), and (3) proof of damages. When

17  considering these elements, the court takes all well-pleaded factual allegations in the complaint

18  relating to liability as true. Fed. R. Civ. P. 8(b)(6); *TeleVideo Systems Inc. v. Heidenthal*, 826 F.2d

19  915, 917 (9th Cir.1987); *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 851 (9th Cir. 2007); *Vogel

20  v. Rite Aid Corp.,* 992 F.Supp.2d 998, 1005 (C.D. Cal. 2014).

21    SEI's motion satisfies these requirements. DCI's answer was properly stricken and its

22  default properly entered. (Docs. 15, 16.) The *Eitel* factors weigh in favor of entry of default

23  judgment against DCI. And SEI's damages are proven by admissible evidence, including DCI's

24  own admissions in its stricken answer.

25    ***A.    SEI has satisfied the procedural requirements for default judgment.***

26    Fed. R. Civ. P. 55 provides two procedural requirements applicable to the instant motion.

27  First, after the proposed judgment defendant's time to plead or otherwise respond has expired, the

28  plaintiff must request, and the clerk must enter, default against the proposed judgment defendant.

3

1   Fed. R. Civ. P. 55(a); *see also* Fed. R. Civ. P. 12 [governing the time to file an answer or other

2   responsive pleading]. Implied within this requirement is that the proposed judgment defendant

3   has been properly served. *See id.*; *see* also Fed. R. Civ. P. 4 [governing service of the summons

4   and complaint].

5          Second, after the proposed judgment defendant's default is entered, the plaintiff must

6   apply to either the clerk or the court for default judgment and give notice to the proposed

7   judgment defendant if it has appeared in the action.  See Fed. R. Civ. P. 55(b).  Fed. R. Civ. P. 55

8   and the Servicemembers Civil Relief Act also contain special requirements for default judgments

9   against minors, incompetent persons, and persons in military service or otherwise exempted under

10  the Servicemembers Civil Relief Act; but because DCI is a corporation, those requirements are

11  inapplicable here. *Id.*

12         SEI has satisfied the Rule 55 procedural requirements. First, Defendant DCI was

13  personally served with summons and complaint on October 14, 2015. (Doc. 4); (Dominguez

14  Decl., ¶ 4.) DCI attempted to appear through its officer and sole shareholder, Ara G. Dolarian, *in*

15  *propria persona* (Doc. 11); (Dominguez Decl. ¶ 6), but its answer was appropriately stricken.

16  (Doc. 15); (Dominguez Decl., ¶ 7.) On November 30, 2015, and upon SEI's request, the Clerk

17  entered default against DCI. (Doc. 10); (Doc. 16); (Dominguez Decl., ¶ 7.)

18         Second, SEI now applies to the Court for default judgment against DCI. Although not

19  required because it has not appeared—its answer was properly stricken—DCI has been served

20  with written notice of this motion for entry of default judgment. (Dominguez Decl. ¶ 8; see proofs

21  attached to each document filed in support of this motion.) And, because DCI is a corporation

22  organized under the laws of California, it is not a minor, incompetent person, or in military

23  service or otherwise exempted under the Servicemembers Civil Relief Act. (Doc. 1, ¶ 2); (Doc.

24  11, ¶ 2); (Dominguez Decl., ¶ 10.)

25         ***B.     SEI meets the substantive requirements for entry of default.***

26         The Ninth Circuit has enumerated seven factors that the Court should consider in deciding

27  whether to enter default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of

28  plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake,

4

(5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Amini Innovation Corp. v. KTY Intern. Marketing*, 768 F.Supp.2d 1049, 1054 (C.D. Cal. 2011). These factors represent a "totality of the circumstances" or a "balancing" test—the Court is *not required to find that all factors support the entering of default judgment. See Eitel*, 782 F.22d at 1472. The balancing of the *Eitel* factors strongly weighs in favor of default judgment.

### 1.  Factor 1: Possibility of Prejudice to SEI.

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *Vogel v. Rite Aid Corp.,* 992 F.Supp.2d 998, 1007 (C.D. Cal. 2014) (citing *PepsiCo v. Cal. Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002)). If Plaintiff's motion for default judgment is not granted, Plaintiff will be without other recourse for recovery against DCI. DCI has taken more than $8.6 from SEI and refuses to return it. Only through entry of judgment for $8,618,646.57 can SEI begin the arduous process of trying to locate and collect the money taken and kept by DCI. See *id.* (finding that absence of recourse for alleged wrongs is prejudicial and weighs in favor of entry of a default judgment); see also *Shanghai Automation Instrument Co., Ltd. v. Kuei* 194 F.Supp.2d 995, 1004-1005 (N.D. Cal. 2001) (finding prejudice where recovery on breach of contract and conversion claims would be delayed by not granting default judgment, corporate defendants' operations had been suspended, and there was substantial risk that assets which could potentially be used to satisfy judgment would be moved out of country).

### 2.  Factors 2 & 3: Merits of SEI's Claims and Sufficiency of the Complaint.

The second and third factors "require that a plaintiff state a claim on which [it] may recover." *Vogel v. Rite Aid Corp.,* 992 F.Supp.2d 998, 1007 (C.D. Cal. 2014) (citing *PepsiCo,* 238 F.Supp.2d at 1175). That is, the court examines whether, between the allegations of the complaint and any evidence submitted in support of the motion, the plaintiff has demonstrated a claim upon which relief can be granted. *See id.* at 1007-1012 [considering allegations as well as statements contained in declaration in support of motion].

3HZ724407

MEMO OF P&A'S ISO PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DCI

Here, SEI has asserted the following claims against DCI: (1) rescission for failure of consideration; (2) money had and received; (3) breach of contract; (4) conversion; and (5) fraud. Having defaulted, DCI has admitted the material factual allegations of SEI's complaint, and they are deemed true for purposes of this motion. Fed. R. Civ. P. 8(b)(6); see *TeleVideo Systems Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir.1987); *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 851 (9th Cir. 2007); *Vogel v. Rite Aid Corp.,* 992 F.Supp.2d 998, 1005 (C.D. Cal. 2014). SEI also has provided sufficient extrinsic evidence to support its claims.

### a.   Rescission for Failure of Consideration.

Under California law, a plaintiff may bring an affirmative claim for rescission—seeking to restore it to its former position had it not entered into the subject contract (and paid consideration in exchange for a promise by the counterparty to perform)—premised upon the failure of consideration (i.e., the promise to perform) provided by the counterparty. *See* Cal. Civ. Code, § 1689(b)(4); *Reliance Fin. Corp. v. Miller,* 557 F.2d 674, 681 (9th Cir. 1977). To prevail on a claim for rescission for failure of consideration, the plaintiff must show that the consideration which he was supposed to receive failed in whole or in material part. *Wyler v. Feuer*, 85 Cal.App.3d 392, 403 (Cal. Ct. App. 1978).

Here, DCI and SEI entered into a Sales Agreement for the purchase of military assets and munitions for the use of the Nigerian military in its fight against the terrorist organization known as Boko Haram. (Doc. 1, ¶¶ 8, 12, 20, Ex. A); (Aboubakar Decl., ¶ 10, **Ex. A**.) SEI provided DCI with $8,618,646.57 in full performance of its obligations under the Sales Agreement. (Doc. 1, ¶¶ 12-13, 20, 21, Ex. A); (Aboubakar Decl., ¶¶ 11, 14-18, **Exs. B, C, D**.) DCI did not provide SEI with *any* military assets or munitions as required under the contract. (Doc. 1, ¶¶ 15, 22); (Doc. 11, ¶¶ 15, 22); (Aboubakar Decl., ¶ 19.) DCI admits that it has not performed, but asserts that its performance was frustrated by an inability to obtain the necessary approvals from the United States Department of State. (See Doc. 12, ¶¶ 17-21.) Regardless of cause, DCI's consideration (i.e., its promise to perform) has failed. Further, DCI has refused to return any monies SEI paid to it, notwithstanding DCI's admitted failure to perform. (Doc. 1, ¶¶ 15, 22, 24); (see Doc. 11, ¶¶ 15,

/ / /

6

1  22 [DCI admits it did not deliver any assets or munitions]); (Aboubakar Decl., ¶¶ 19-23, **Exs. E,**

2  **F, G**.)

3      SEI properly stated a claim for rescission for failure of consideration.

4                    **b.  Money Had and Received**

5      A cause of action for money had and received is stated if the plaintiff alleges the

6  defendant "is indebted to the plaintiff in a certain sum for money had and received by the

7  defendant for the use of the plaintiff." *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031,

8  1047 (N.D. Cal. 2010) (*citing Schultz v. Harney,* 27 Cal.App.4th 1611, 1623 (Cal. Ct. App.

9  1994)).

10      SEI paid DCI $8,618,646.57 to acquire and deliver military assets and munitions as

11  provided in the "Sales Agreement." (Doc. 1, ¶¶ 12-13, 20, 21, 27, Ex. A); (Aboubakar Decl.,

12  ¶¶ 10, 11, 14-18, **Exs. A, B, C, D**.) DCI did not perform as agreed. (Doc. 1, ¶¶ 15, 22, 24, 28);

13  (see Doc. 11, ¶¶ 15, 22 [DCI admits it did not deliver any assets or munitions]); (Aboubakar

14  Decl., ¶ 19.) Therefore, DCI is indebted to SEI in the sum of $8,618,646.57 for improperly

15  retaining payments received from SEI without providing any of the munitions and military items

16  promised. (Doc. 1, ¶¶ 27-30); (see Doc. 11, ¶ 22 [DCI admits it has not returned any funds

17  provided by SEI]); (Aboubakar Decl., ¶¶ 19-23, **Exs. E, F, G**.)

18      SEI properly pleaded a claim for money had and received.

19                    **c.  Breach of Contract**

20      To state a claim for breach of contract, a plaintiff must plead the existence of a contract,

21  plaintiff's performance or excuse for nonperformance, defendant's breach, and the damage to

22  plaintiff therefrom. *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1028 (N.D. Cal. 2012) (citing

23  *Gautier v. General Tel. Co.,* 234 Cal.App.2d 302, 305 (Cal.Ct.App. 1965)).

24      SEI contracted with DCI for the purchase of military assets and munitions in a "Sales

25  Agreement." (Doc. 1, ¶¶ 12, 20); (Aboubakar Decl., ¶ 10, **Ex. A**.) SEI paid DCI $8,618,646.57 in

26  full performance of the terms and conditions of the Sales Agreement. (Doc. 1, ¶¶ 13, 20, 21, 27,

27  32); (Aboubakar Decl., ¶¶ 10, 11, 14-18, **Exs. A, B, C, D**.) DCI breached the contract by failing

28  to provide SEI with any military assets or munitions, despite SEI's demands. (Doc. 1, ¶¶ 15, 22,

1  24, 28, 33, 34); (see Doc. 11, ¶¶ 15, 22, 34 [DCI admits it did not deliver any assets or

2  munitions]); (Aboubakar Decl., ¶ 19.) SEI was damaged because DCI retained all monies paid

3  under the contract without performing its contractual obligations. (Doc. 1, ¶¶ 18, 22, 23, 29, 30,

4  35, 36); (Doc. 11, ¶ 22 [DCI admits it has not returned any funds provided by SEI]); (Aboubakar

5  Decl., ¶¶ 19-23, **Exs. E, F, G.**)

6       SEI properly stated a claim for breach of contract.

7              **d.  Conversion**

8       To state a claim for conversion under California law, a plaintiff must establish "(1) the

9  plaintiff's ownership or right to possession of certain property; (2) the defendant's conversion of

10 the property by a wrongful act or disposition of property rights; and (3) damages." *Mktg. Info.*

11 *Masters, Inc. v. Bd. of Trustees of California State Univ. Sys.*, 552 F. Supp. 2d 1088, 1098 (S.D.

12 Cal. 2008) (*citing Oakdale Village Group v. Fong,* 43 Cal.App.4th 539, 543–44 (1996)).

13      When SEI learned that DCI would not or was unable to perform, SEI canceled the

14 contract and demanded return of the monies it had paid to DCI under the "Sales Agreement."

15 (Doc. 1, ¶¶ 16, 24, 29, 35, Ex. B); (Doc. 11, ¶¶ 22, 23 [DCI admits SEI sent DCI a letter on May

16 7, 2015 and that DCI has not returned any funds provided by SEI]); (Aboubakar Decl., ¶ 20, **Ex.**

17 **E.**) Until such time as DCI performed its obligations to provide the military assets and munitions

18 specified in the "Sales Agreement," SEI was the rightful owner and had a right to possession of

19 the $8,618,646.57 it had paid to DCI. (Doc. 1, ¶¶ 38-39.) DCI refused to comply with SEI's

20 demand, and has knowingly retained and refused to return the $8,618,646.57, interfering with

21 SEI's personal property rights. (Doc. 1, ¶¶ 18, 22, 29, 30, 35, 36, 39-41); (Doc. 11, ¶ 22 [DCI

22 admits it has not returned any funds provided by SEI]); (Aboubakar Decl., ¶¶ 20-23, **Exs. E, F,**

23 **G.**)

24      SEI properly stated a claim for conversion.

25              **e.  Fraud**

26      To state a claim for fraud under California law, the plaintiff must establish the following

27 elements: (1) misrepresentation of a material fact (consisting of false representation, concealment

28 or nondisclosure); (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4)

8

MEMO OF P&A'S ISO PLAINTIFF'S MOTION FOR
                                                       ENTRY OF DEFAULT JUDGMENT AGAINST DCI

1    justifiable reliance on the misrepresentation; and (5) resulting damage. *Sacramento E.D.M., Inc.v.*

2    *Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1151 (E.D. Cal. 2013) (*citing City of*

3    *Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 68 Cal.App.4th 445, 481 (Cal. Ct.

4    App. 1998)).

5           DCI knowingly made false representations to SEI. (Doc. 1, ¶¶ 46-51; Aboubakar Decl.,

6    ¶¶ 8-9, 11-13.) Marion Ford and Ara Dolarian represented numerous times to SEI between June

7    2014 and April 2015 that DCI had the ability to obtain all necessary governmental regulatory

8    approvals for the acquisition and export of military assets and munitions to Nigeria. (Doc. 1,

9    ¶¶ 47, 50); (Aboubakar Decl., ¶¶ 8-9, 11-13.) These statements were knowingly false at the time

10   they were made and were meant to intentionally deceive SEI and induce SEI's reliance. (Doc. 1,

11   ¶¶ 51, 52.) SEI justifiably relied on these representations in entering the Sales Agreement with

12   DCI. (Doc. 1, ¶ 52); (Aboubakar Decl., ¶¶ 8-10.) As a direct result of this deceit, SEI was

13   damaged in the amount of $8,618,646.57. (Doc. 1, ¶¶ 52-58); Doc. 11, ¶¶ 15, 22, 23, 34 [DCI

14   admits it did not deliver any assets or munitions and that it has not returned any funds provided

15   by SEI]); (Aboubakar Decl., ¶¶ 11, 14-18.) DCI has realized profits and unjust enrichment from

16   this fraud by wrongfully receiving and retaining the $8,618,646.57 paid by SEI. (Doc. 1, ¶¶ 55-

17   57.)

18          SEI properly stated a claim for fraud. SEI has satisfied the second and third *Eitel* factors

19   by properly pleading claims for which it seeks relief.

20                         **3.  Factor 4: Sum of Money at Stake**

21          Under the fourth *Eitel* factor, the court must consider the sum of money at stake in relation

22   to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F.Supp.2d

23   1172, 1176 (C.D. Cal. 2002). Large sums of money for a default judgment may be justified to

24   enter judgment in relation to the defendant's conduct. *See TeleVideo Systems, supra*, 826 F.2d at

25   916 (affirming district court's entry of default judgment against the defendant for fraud and

26   perjury in excess of $11 million after striking the defendant's answer); *Compass Bank v. Morris*

27   *Cerullo World Evangelism*, 2015 WL 5098401 (S.D. Cal. 2015) , at *2 (default judgment

28   / / /

                                                    9

MEMO OF P&A'S ISO PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DCI

1   awarding $3.5 million under breach of contract theory where plaintiffs transferred same sum to

2   defendant under contract and defendant did not perform).

3       The sum of money SEI seeks as a default judgment is directly proportionate to DCI's

4   conduct. DCI received over $8.6 million in consideration for DCI's promise to acquire and

5   deliver certain military assets and munitions. (Doc. 1, ¶¶ 12, 13, 20, 21, 27, 32, 38-39, Ex. A);

6   (Aboubakar Decl., ¶¶ 10, 11, 14-18, **Exs. A, B, C, D**); (see Doc. 11, ¶¶ 13, 22, 27, 38 [DCI

7   admits receiving money from SEI].) DCI failed to perform. (Doc. 1, ¶¶ 15, 22, 24, 28, 33, 34);

8   (see Doc. 11, ¶¶ 15, 22, 34 [DCI admits it did not deliver any assets or munitions]); (Aboubakar

9   Decl., ¶ 19.) SEI now seeks the return of $8,618,646.57 (the amount paid to DCI). Therefore, the

10  sum of money at stake is directly proportional to the seriousness of DCI's conduct. For further

11  evidence regarding damages, see Section D below.

12      **4.   Factor 5: Possibility of a Dispute Concerning Material Facts**

13      The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the

14  case. Upon entry of default, all well-pleaded facts in the complaint are taken as true. *See*

15  *TeleVideo, supra*, 826 F.2d at 917-918.

16      Here, there is no genuine dispute of material facts. By its default, DCI has admitted the

17  material factual allegations of SEI's complaint, and they are deemed true for purposes of this

18  motion. Fed. R. Civ. P. 8(b)(6); see *TeleVideo Systems Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th

19  Cir.1987); *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 851 (9th Cir. 2007); *Vogel v. Rite Aid*

20  *Corp.,* 992 F.Supp.2d 998, 1005 (C.D. Cal. 2014). Moreover, in its stricken answer:

21      • DCI admits that it entered into a contract with SEI for the sale of military assets

22          and munitions. (Doc. 11, ¶ 12); (see also Doc. 1, ¶ 12, Ex. A); (Aboubakar Decl.,

23          ¶ 10, **Ex. A.**);

24      • DCI admits that it received money from SEI in performance of the contract. (Doc.

25          11, ¶¶ 13, 22, 27, 38); (see also Doc. 1, ¶¶ 12, 13, 20, 21, 22, 27, 32, 38-39, Exs.

26          A, B); (Aboubakar Decl., ¶¶ 10, 11, 14-18, 20-22 **Exs. A, B, C, D, E, F, G.**);

27  / / /

28  / / /

- DCI admits it did not deliver any military assets or munitions to SEI. (Doc. 11, ¶¶ 15, 22, 34); (see also Doc. 1, ¶¶ 15, 22, 24, 28, 33, 34); (Aboubakar Decl., ¶ 19.); and

- DCI admits it did not return any of the money SEI paid to DCI. (Doc. 11, ¶¶ 18, 22); (see also Doc. 1, ¶¶ 18, 22, 24, 29, 36, 40, 56); (Aboubakar Decl., ¶ 23.)

Therefore, there is no genuine dispute of material facts alleged in the Complaint, and default may be entered against DCI.

### 5. Factor 6: Whether Default was Due to Excusable Neglect.

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Here, DCI was properly served with summons and complaint on October 14, 2015. (Doc. 4.) After DCI requested an extension to seek counsel, DCI purported to file its answer *in propria persona* on November 18, 2015. (Doc. 11.) On November 30, 2015, the Court struck DCI's answer for failure to comply with local rules and federal law. (Doc. 15.) At SEI's request, the Clerk entered DCI's default on November 30, 2015. (Doc. 10); (Doc. 16.) Between the date of service and the entry of default, DCI had over 45 days to retain counsel to defend it. DCI failed to do so. Since that time—over 100 days later—DCI has made no attempt to seek to have its default set aside. DCI's default cannot reasonably be seen as a result of excusable neglect.

### 6. Factor 7: Policy Favoring Decision on the Merits.

The seventh *Eitel* factor considers the policy in favor of deciding cases on their merits. However, a defendant's failure to answer a complaint makes a decision on the merits impractical if not impossible. *PepsiCo, Inc.*, 238 F.Supp.2d at 1177. Therefore, Fed. R. Civ. P. 55(b) allows for the termination of a case before a hearing on the merits. *Id.* DCI has failed to defend this action after being given ample time and opportunity to do so.

Based on review of the *Eitel* factors, default judgment should be entered against DCI and in favor of SEI.

### C.   *Judgment against DCI is appropriate under Fed. R. Civ. P. 54(b).*

In order for a plaintiff moving for judgment against fewer than all defendants to have judgment entered in its favor, Fed. R. Civ. P. 54(b) requires the court to make a finding that there

11

MEMO OF P&A'S ISO PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DCI

1    is no just reason for delay for entry of judgment. In considering whether there is just reason for

2    delay, courts must also find that a final judgment against the defaulting defendant is not, or will

3    likely not be, logically inconsistent with a judgment in favor of the non-defaulting defendant.

4    *Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001)

5    (citing *Frow v. De La Vega,* 82 U.S. 552 (1872)).

6         Here, SEI alleges three claims against both DCI and Mr. Dolarian: (1) Money Had &

7    Received; (2) Conversion; and (3) Fraud. As explained below, a judgment against DCI on these

8    claims would not be inconsistent with a judgment in favor of Mr. Dolarian on the same claims.

9    SEI asserts only several liability on these claims—while Mr. Dolarian may be found jointly liable

10   if he directed DCI's actions, a finding that Mr. Dolarian is not jointly liable would not be

11   inconsistent with a judgment against DCI. In connection with this motion, SEI has presented

12   evidence that Marion Ford, DCI's agent (Doc. 12, ¶ 2), made fraudulent representations to induce

13   SEI to contract with DCI, and to make payments under that contract (Aboubakar Decl., ¶¶ 8, 9,

14   11, 13.). *See Douglas v. Metro Rental Services, Inc.* 827 F.2d 252, 254-256 (7th Cir. 1987) (cited

15   with approval in *Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1008

16   (N.D. Cal. 2001).) (In a case involving alleged racial discrimination, where the corporation had

17   default judgment entered against it but the corporation's president went to trial and obtained

18   judgment in his favor, the Seventh Circuit upheld the default judgment, finding (1) each the

19   corporation and its president had been sued individually, and (2) the claimed inconsistency could

20   be explained by either (a) the discrimination having been committed by a different representative

21   of the corporation, or (b) that the corporation had a policy of discrimination set by its board. The

22   court held that the default judgment was entitled to stand, noting that "[f]or whatever reason, [the

23   corporation], by defaulting, admitted its guilt," and observing that the default may have been

24   "oversight or a misguided tactical decision.")

25         California courts examining Fed. R. Civ. P. 54(b) and *Frow* have held that even where

26   there are multiple defendants who raise similar defenses, the court may still enter default

27   judgment where the plaintiff would be prejudiced if entry of judgment is delayed. *Shanghai*

28   *Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1009 (N.D. Cal. 2001). In *Shanghai*

12

1    *Automation*, the court found that default judgment was appropriate, where (1) the non-defaulting

2    individual defendant's liability for breach of contract and conversion turned on facts "with respect

3    to his own conduct and involvement," and (2) the court observed the "danger that any damages

4    awarded [would likely] become increasingly uncollectible with the passage of time." *Id.* at 1009-

5    1010. Here, there is significant risk of prejudice if entry of judgment is delayed, in that the

6    damages sought are significant (presenting a collectability risk) and, if Mr. Dolarian's

7    representation that the United States government has seized certain funds related to the SEI

8    money, there is a possibility that DCI's fraud on SEI was part of a larger, international, criminal

9    scheme, presenting risk that (1) the funds may be laundered or transferred overseas, or (2) that

10    DCI or Mr. Dolarian will use the SEI funds to defend any future criminal charge.

11         The court should find that there is no just reason for delay and that there is no risk of

12    logically inconsistent judgments. Default judgment should be entered against DCI.

13         **D.    *SEI has established the amount of damages due from DCI.***

14         Plaintiffs must "prove up" their monetary damages when seeking entry of default

15    judgment, and the damages sought should be in accordance with the amount and legal theories

16    specified in the complaint. Fed. R. Civ. P. 54(c); *Philip Morris USA, Inc. v. Castworld Products,*

17    *Inc.,* 219 F.R.D. 494, 498 (C.D. Cal. 2003); *Amini Innovation Corp.,* 768 F.Supp.2d at 1054.

18         Here, the admissible evidence conclusively demonstrates that SEI has been damaged in

19    the amount of $8,618,646.57.

20            **1.    The court may rely on judicial admissions as admissible evidence to**

21                   **determine damages.**

22         Proving up damages may require admissible evidence to support the damage calculations.

23    *Philip Morris USA, Inc., supra,* 219 F.R.D. at 498; *Amini Innovation Corp., supra,* 768 F.Supp.2d

24    at 1054; *see also* A. Wallace Tashima & James Wagstaffe, CAL. PRAC. GUIDE FED. CIV. PRO.

25    BEFORE TRIAL CH. 6-D § 6:94 (Rutter Group, 2015).

26         The admissibility of evidence is a procedural matter governed by the Federal Rules of

27    Evidence. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Under federal

28    law, admissions in pleadings are generally considered binding on the parties and the court. *Id.* A

1    statement in an answer or an answer's failure to deny an allegation is a judicial admission. *Id.*

2    Judicial admissions in an answer that is later amended or withdrawn are still admissible evidence.

3    *Huey v. Honewell, Inc.* 82 F.3d 327, 333 (9th Cir. 1996). Judicial admissions in a defendant's

4    answer are still admissible and binding even where the underlying answer is stricken. *In re*

5    *Oregon Bulletin Printing & Publishing Co.*, 18 F.Cas. 773, 776 (D. Or. 1876) (*overruled on other*

6    *grounds in In re Oregon Bulletin Printing & Publ'g Co.,* 18 F. Cas. 783 (C.C.D. Or. 1876)).

### 2.    SEI has been damaged in the amount of $8,618,646.57.

8    SEI requests compensatory damages in the amount of $8,618,646.57. A judgment in this

9    amount is supported by DCI's judicial admissions in its Answer to Complaint, SEI's well-pleaded

10    factual allegations, the Declaration of Hima Aboubakar, and other admissible evidence.

11    The amount of the Sales Agreement is evident on the face of the document. (Doc. 1, ¶ 12,

12    Ex. A); (Aboubakar Decl., ¶ 10, **Ex. A.**) DCI also admitted in its stricken answer that it entered

13    into the Sales Agreement with SEI. (Doc. 11, ¶ 12.) The Sales Agreement provided that SEI

14    would purchase military assets and munitions from DCI for $8,616,042.57. (Doc. 1, ¶ 12, Ex. A);

15    (Aboubakar Decl., ¶ 10, **Ex. A.**)

16    SEI made two payments to Dolarian Capital under the Sales Agreement totaling

17    $8,618,042.57; the first was for $4,998,646.57 in June 2014; the second and final payment was

18    made in September 2014 for $3,620,000.00. (Doc. 1, ¶ 13); (Aboubakar Decl., ¶¶ 11, 14-18, **Exs.**

19    **B, C, D.**)

20    DCI's receipt of the $8,618,646.57 is evidenced in a letter from DCI dated September 18,

21    2014. (Aboubakar Decl., ¶ 18, **Ex. D.**) The letter indicates the value of the Sales Agreement,

22    identified as "14_90v4," and the receipt of two payments from SEI in September and June 2014

23    for a "Total Received $8,618,646.57." (*Id.*)

24    DCI also admitted in its stricken answer to receiving money from SEI and does not deny

25    that the amount totaled $8,618,042.57. (Doc. 11, ¶¶ 13, 22, 27, 38.) The failure to deny

26    allegations in a complaint constitutes a judicial admission. DCI admits, therefore, it received

27    $8,618,042.57 from SEI in payment of the contract.

28    / / /

MEMO OF P&A'S ISO PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DCI

DCI further confirmed its admission to receiving at least at least $7.823 million from SEI in a May 12, 2015, letter. In that letter, DCI agreed to cancel the Sales Agreement for a "credit" of "$7,823,646.57" applied to another alleged contract between the parties. (Aboubakar Decl., ¶ 21, **Ex. F**.) A second letter from May 15, 2015 again gives SEI the option of a $7,800,000 credit against the cancellation of all contracts between the Parties. (Aboubakar Decl., ¶ 22, **Ex. G**.) Therefore, DCI has further acknowledged that it received at least $7.8 million from SEI in fulfillment of the Sales Agreement. DCI's sole shareholder and president Ara Dolarian, even went as far to say the following: "You mention legal action. DCI will use all the money you have paid it against you and more. Whether you win or lose this will cost you tens of millions of dollars and 10 years." (*Id.*)

DCI admits that it has not provided any military assets or munitions to SEI. (Doc. 11, ¶¶ 15, 22, 34); (see also Aboubakar Decl., ¶ 19.) DCI also admits that it has not returned any funds provided by SEI. (Doc. 11, ¶¶ 18, 22); (see also Aboubakar Decl., ¶ 23.)

Based on admissible evidence and admissions, the Court is justified in awarding $8,618,042.57 in compensatory damages to SEI.

SEI has also incurred costs of $738.43 in connection with pursuing default judgment against Dolarian. (Dominguez Dec. ¶ 9.) These costs, including filing fees, process server's fees, and postage, are recoverable. Fed. R. Civ. P. 54(d); see also *Directi Internet Solutions Pvt. Ltd. v. Dhillon*, 2013 WL 460319 (E.D. Cal. 2013) at *5.

Since SEI has no evidence of the net worth or value of SEI at this time, it waives its claim to seek punitive damages in this motion for default judgment.

## IV.    CONCLUSION

SEI requests that this Court enter default judgment against Defendant DCI. DCI has failed to defend the claims against it. SEI has pleaded the relevant facts giving rise to the causes of action in its complaint. And SEI has provided proof that its damages under those claims totaled $8,618,042.57, plus $738.43 in costs.

1 Dated: March 15, 2016

            KLEIN, DeNATALE, GOLDNER,
            COOPER, ROSENLIEB & KIMBALL, LLP

2

3          By: /s/ *Christopher E. Dominguez*
            CHRISTOPHER E.  DOMINGUEZ

4            Attorneys for Plaintiff

16

MEMO OF P&A'S ISO PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AGAINST DCI

## CERTIFICATE OF SERVICE

I, Laura Butterbredt, hereby declare:

I am employed in the County of Kern, California in the office of a member of the bar of this court whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is 4550 California Avenue, Second Floor, Bakersfield, California 93309.

On March 15, 2016, I caused the following documents, described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DOLARIAN CAPITAL, INC.**

to be served via United States Mail as follows:

Dolarian Capital, Inc.
1284 W. Shaw Avenue, #102
Fresno, CA  93711

Ara G. Dolarian
1284 W. Shaw Avenue, #102
Fresno, CA  93711

I declare under penalty of perjury that the above is true and correct. Executed on March 15, 2016, in Bakersfield, California.

_/s/ Laura Butterbredt_____
Laura Butterbredt
