1

2

3

4

5

6 # UNITED STATES DISTRICT COURT

7 ## EASTERN DISTRICT OF CALIFORNIA

8

9 SOCIETE D'EQUIPMENTS
INTERNATIONAUX NIGERIA, LTD,

Case No.  1:15-cv-01553-GEB-SKO

10
Plaintiff,

**AMENDED FINDINGS AND**
11 **RECOMMENDATION GRANTING IN**
**PART SOCIETE D'EQUIMENTS**
v.
12 **INTERNATIONAUX NIGERIA, LTD'S**
**MOTION FOR DEFAULT JUDGMENT**

13 DOLARIAN CAPITAL, INC., and ARA G.
DOLARIAN,
**Objections Due: 14 Days**
14
Defendants.
(Doc. 32)
15 _____/

16
## I.     INTRODUCTION

17         On October 9, 2015, Plaintiff Societe d'Equipments Internationaux Nigeria, Ltd. ("SEI")

18 filed a complaint against Defendants Dolarian Capital, Inc. ("DCI"), and Ara G. Dolarian

19 ("Dolarian") (collectively "Defendants").  (Doc. 1 ("Complaint").)  On November 18, 2015,

20 proceeding *pro se*, Dolarian filed an answer "by and for himself and on behalf of [DCI]," a

21 Counterclaim for breach of contract against SEI, and a third-party complaint against Amanda

22 Giovanni, a defense contractor.  (Docs. 11 ("Answer"); 12 ("Counterclaim").)  On November 30,

23 2015, this Court struck the answer as to DCI pursuant to Local Rule 183(a), which prohibits a

24 corporation or other business entity from appearing in federal court without counsel, and entered

25 default against DCI, and on January 12, 2016, dismissed the counterclaim pursuant to Fed. R. Civ.

26 P. 12(b)(1).  (Docs. 15; 23.)

27         On November 19, 2015, SEI filed a request for the Clerk of Court to enter default against

28 Defendant DCI, and on November 30, 2015, default was entered.  (Docs. 10; 16.)  On March 15,

2016, SEI filed a motion for default judgment against Defendant DCI pursuant to Federal Rule Civil Procedure 54(b) seeking damages in the amount of $8,618,646.57 and costs in the amount of $738.43.  (Docs. 32; 33).  Defendant DCI did not file an opposition.  (*See* Docket.)  Having reviewed the parties' papers and all supporting material, the matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the April 20, 2016, hearing was VACATED.

For the reasons set forth below, it is RECOMMENDED that SEI's motion for default judgment be GRANTED.[1]

## II.   BACKGROUND

### A.   Factual Background

SEI is a private limited company organized under the laws of Nigeria operating out of Abuja, Nigeria.  (Compl., ¶ 1; Doc. 35 (Declaration of Hima Aboubakar (Aboubakar Decl.), ¶ 4.) SEI is "in the business of acquiring various military assets and munitions[,] primarily for the Nigerian armed services."  (Compl., ¶ 8; *see also* Aboubakar Decl., ¶ 7.)  SEI contracted with the Nigerian military to acquire and deliver "various military assets and munitions for the use of the Nigerian military in its fight against the terrorist organization known as Boko Haram.  (Compl., ¶ 8; Aboubakar Decl., ¶ 10.)

In 2014, SEI contacted DCI's agent Marion Ford, to discuss potential arms transactions whereby DCI would procure and sell military assets and munitions to SEI for use by the Nigerian military.  (Aboubakar Decl., ¶ 7.)  Ford represented to SEI that DCI either had or would be able to acquire the military assets and munitions the Nigerian military needed, and had contacts and connections that would enable DCI to export these assets and munitions to Nigeria.  (Aboubakar Decl., ¶¶ 8-9.)

DCI and SEI signed several contracts, totaling in value to $246,433,542.50.[2]  One of these contracts, signed in June 2014, involved the sale and supply of military assets and munitions for

---

[1]   On May 4, 2016, the Court recommended that Plaintiff's motion for default judgment against DCI be granted on all counts.  (Doc. 38.)

[2]   DCI and SEI entered into at least five signed agreements for the sale and supply of military assets and munitions between June 4 and August 17, 2014, for a total contractual value of $246,433,542.50.  (*See* Countercl., Exhs. A (sale

2

the sum of $8,616,042.50.  (Aboubakar Decl., Exh. A).)  As a condition of the contracts, SEI was to pay a deposit in the amount of "50% of the contract value" at the time of "signing and sealing of the contract" and was to provide DCI "with the necessary End User Certificate(s)" for export.

SEI made two payments to DCI totaling $8,618,646.57: an initial payment for $4,998,646.57 in June 2014, and, upon assurances from Ford that DCI had the appropriate export licenses to begin delivering the military assets and munitions upon receipt of the balance of the contract price, a second payment for $3,620,000 in September 2014.  (Aboubakar Decl., Exhs. C, D.)  DCI acknowledged receipt of the $8,618,646.57 in a letter to SEI dated September 18, 2014. (Aboubakar Decl., Exh. D.)  These payments were $2,604.07 in excess of the contract price of $8,616,042.50 due to a miscalculation by SEI.  (Aboubakar Decl., ¶ 15.)

DCI, however, did not deliver *any* military assets or munitions to SEI in accordance with the June 2014 contract.  (Compl., ¶¶ 15, 23, 34; Aboubakar Decl., ¶ 19.)  SEI therefore cancelled the June 2014 contract by letter dated May 7, 2015, based on the "constant delay of execution of the contract" and DCI's "[f]ailure to obtain export license[s]."  (Compl, Exh. B; Aboubakar Decl., Exh. E).)  SEI further demanded that DCI return the money already paid.  (Compl, Exh. B; Aboubakar Decl., Exh. E).)

By letter dated May 15, 2015, DCI agreed "to cancel [the June 2014 contract] in [the] amount of $7,823,646.57" and apply the amount as a credit against another contract entered into between SEI and DCI.  (Aboubakar Decl., Exh. F.)  DCI further demanded an additional $2,583,890.93 "due and payable" on this second contract.  (Aboubakar Decl., Exh. F.)  DCI has continued to refuse and has failed to return any amount of the $8,618,646.57 it received.  (Compl., ¶¶ 18, 40; Aboubakar Decl., Exhs. E, F, G.)

SEI seeks damages in the amount of $8,618,646.57 for DCI's failure to provide the military assets and munitions pursuant to the June 2014 contract, as well as prejudgment interest

of six Mi-24/Mi-35 helicopters); B (sale of six DEFA Type 553 revolver cannons, arming wire for high explosive bombs, a Marta 155 Type rocket launch pad, 1,000 high explosive bombs, 25,000 rounds of helicopter revolver ammunition, 5,000 68 mm SNEB antiaircraft rocket, helicopter pylon cartridges); C (50 20x110 mm single-barrel autocannons); D (50,000 rounds of autocannon ammunition); E (30 T-72 MBTs (main battle tanks); 20 Zu-23-4 23 mm 4 lightly armored anti-aircraft tracked vehicles, 400,000 Zu-23-4 ammunition rounds, 13,500 125 mm T-72 high explosive rounds, 1,500 125 mm APFSDS-T armor-piercing anti-tank ammunition rounds).)

as of May 7, 2015, attorneys' fees, costs, and punitive and exemplary damages.  (Compl.)

**B.      Procedural Background**

On October 9, 2015, SEI filed a complaint against DCI and Dolarian, alleging several claims flowing from DCI's alleged breach of the June 2014 contract.  (Compl.)  SEI alleges claims for failure of consideration and breach of contract against DCI alone.  (*Id.*, pp. 4-9.)  SEI alleges claims for money had and received, conversion, and fraud against DCI and Dolarian jointly and severally.  (*Id.*)

On November 18, 2015, proceeding *pro se*, Dolarian filed an answer "by and for himself and on behalf of [DCI]," a counterclaim for breach of contract against SEI, and a third-party complaint against Giovanni.  (Answer; Countercl.)  Because a corporation or other business entity may only appear in federal court with counsel, *see, e.g., Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) (noting that 28 U.S.C. § 1654 does not allow corporations, partnerships, or associations to appear in federal court other than through a licensed attorney); Local Rule 183(a) ("A corporation or other entity may appear only by an attorney"), on November 30, 2015, this Court struck the answer as to DCI (Doc. 15) and default was entered against DCI by the Clerk of Court (Doc. 16).  On January 12, 2016, this Court dismissed DCI's counterclaim for lack of standing.  (Doc. 23.)

On March 15, 2016, SEI filed the instant motion for default judgment against DCI.  (Doc. 30.)  No opposition has been filed.  (*See* Docket.)

### III.      MOTION FOR DEFAULT STANDARD

**A.      Fed. R. Civ. P. 55(b)**

Pursuant to Rule 55(b)(2), the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b).  Following entry of default, a district court may in its discretion grant relief upon an application for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a district court may consider in exercising its discretion include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility

of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Factual allegations detailed in the complaint are taken as true, except for those allegations relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (citing *Geddes v. United Financial Group*, 559 F.2d 557, 560 (1977); *Philip Morris USA v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal.2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of [Plaintiff's] averments."). "A party seeking default judgment must state a claim upon which it may recover." *Philip Morris USA*, 219 F.R.D. at 501. A plaintiff must also prove all damages sought in the complaint. *Id.* at 498; *see also* Fed. R. Civ. P. 55(b)(2) ("In determining damages, a court can rely on the declarations submitted by the plaintiff").

**B.      Fed. R. Civ. P. 54(b)**

"When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (noting that the court has discretion to enter a default judgment as to less than all defendants). Under certain circumstances, however, default judgement is inappropriate. Default judgment should be denied in those cases where default judgment entered against one defendant would be inconsistent with judgment on the merits in favor of the remaining answering defendant(s). *See Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872).

## IV.    DISCUSSION

**A.      Threshold Issues**

**1.       This Court May Exercise Personal Jurisdiction Over DCI.**

As an initial matter, SEI has established that this Court may exercise personal jurisdiction over DCI even though DCI has not yet appeared. First, it is undisputed that on October 14, 2015, SEI personally served a copy of the complaint upon DCI's agent for service of process: Dolarian, the sole shareholder and owner of DCI. (Doc. 4, p. 2.) Although a federal court lacks personal

1   jurisdiction over a defendant until the defendant has been served in accordance with Rule 4, *see*

2   *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982), "Rule 4 is a flexible rule that should

3   be liberally construed so long as a party receives sufficient notice of the complaint." *United Food*

4   *& Commercial Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179, and 1532 v.*

5   *Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984).  Here, DCI acknowledged receipt of service

6   of the complaint, and waived any objection to such service, when it filed the Answer.

7   (*See* Answer[3].)

8       Additionally, while simply providing "actual notice" or "naming the defendant in the

9   complaint" is insufficient to establish personal jurisdiction without "substantial compliance with

10  Rule 4," a "general appearance or responsive pleading by a defendant that fails to dispute personal

11  jurisdiction will waive any defect in service or personal jurisdiction." *Benny v. Pipes*, 799 F.2d

12  489, 492 (9th Cir. 1986) (citing *Jackson*, 682 F.2d at 1347); Fed. R. Civ. P. 12(h)(1).

13  (*See* Answer, p. 3 (admitting jurisdiction and venue).)  A general appearance "ordinarily is an

14  overt act by which the party comes into court and submits to the jurisdiction of the court.  This is

15  an affirmative act involving knowledge of the suit and an intention to appear." *Id.* (citing 28 Fed.

16  Proc. (L. Ed.) § 65.137 at 526 (1984)); *see also Wilson v. Moore and Associates, Inc.*, 564 F.2d

17  366, 368-69 (9th Cir.1977) (informal contact between parties constitutes appearance when

18  defendant shows "clear purpose to defend the suit").

19      Here, DCI filed an Answer to the complaint.  Though the Answer was stricken by this

20  Court as to DCI pursuant to Local Rule 183(a) (Doc. 15), the filing of the Answer demonstrates

21  DCI's awareness of the suit and intent to defend the suit.  Moreover, by failing to raise service or

22  personal jurisdiction in the Answer (*see* Answer, p. 2) or at any time since, DCI has waived any

23  defect in such service or personal jurisdiction.

24      Second, based upon the complaint and evidence produced by SEI, this Court's exercise of

25  personal jurisdiction over DCI is appropriate under the circumstances.  It is undisputed that DCI is

26

27  [3]   Though the Answer was stricken as to DCI, the Answer is still admissible and binding as "it is a part of the files
and records of this court, and is an admission as to the facts contained in it."  *In re Oregon Bulletin Printing & Publ'g*

28  *Co.*, 18 F. Cas. 773, 776 (D. Or.), *rev'd on other grounds*, 18 F. Cas. 783 (C.C.D. Or. 1876).

1  a corporation organized under the laws of California, with its principal place of business in Fresno,

2  California.   (Compl., ¶ 2; Answer, ¶ 2.)   This Court has personal jurisdiction over DCI in this

3  action.

4          **2.        The Contracts at Issue Do Not Violate the AECA.**

5          The export from the United States of arms, munitions, weapons, equipment for military use

6  and related components, and the technology to design, build, and test such items ("defense articles

7  and defense services") is strictly controlled and regulated under federal law.

8          The Arms Export Control Act ("AECA") authorizes the President of the United States to

9  control the import and export of defense articles and defense services in furtherance of world

10  peace, national security, and the foreign policy of the United States and to establish and maintain a

11  United States Munitions List (the "Munitions List") for that purpose.   22 U.S.C. § 2778 *et seq.*

12  The President has delegated the authority to regulate the export of defense articles and defense

13  services to the Secretary of State.  *Id.*

14          The International Traffic in Arms Regulations ("ITAR") implements the AECA.

15  22 C.F.R. §§ 120 *et seq.*   The Munitions List is a catalog of designated defense articles and

16  defense services that are subject to export restrictions.  *See* 22 C.F.R. § 121.  The Department of

17  State is the licensing authority for items on the Munitions List.  *See id.*, §§ 120, 120.1 (referring to

18  Executive Order 11958, as amended (42 Fed. Reg. 4311)).   No defense articles or defense services

19  designated by the President may be exported without a license for such export from the United

20  States Department of State.  22 U.S.C. § 2278(b)(2).

21          Though there are "normal commercial use" exceptions in the Munitions List, "[t]he

22  exemption from a State Department license is limited [ ] to components (not the principal device

23  of which they form a part), and to components which are in normal commercial use.  The 'plain

24  language' of the exception is so clear that any exporter claiming that the exception is applicable to

25  the principal items covered by (a) or (b) does so at his peril."  *United States v. Gregg*, 829 F.2d

26  1430, 1438 (8th Cir. 1987).  Further, even "nonworking" defense articles that are "inoperable" or

27  in need of "overhaul, repair, [or] modification" are included in the Munitions List.  *See United*

28  *States v. Fu Chin Chung*, 931 F.2d 43, 45 (11th Cir. 1991); *see also United States v. Sun*, 278 F.3d

302, 310 (4th Cir. 2002) (noting that a license is unnecessary if the military item "has been rendered useless beyond the possibility of restoration to its original identity by means of mangling, crushing, or cutting").

Here, many of the military munitions and assets that DCI promised to provide to SEI are listed on the Munitions List.  (*See* Countercl., Exhs. A-E.)  It is undisputed that under the contract,

> [DCI] warrants it is in full compliance with all applicable United States laws, and regulations and will remain in full compliance with all applicable laws and legal standards during the term of this Agreement.  [DCI] further covenants, warrants and represents that it shall comply with all applicable United States laws, including regulations and Executive Orders, applicable to this Agreement and performance of the obligations herein, including but not limited to any applicable United States export control laws and trade restrictions, including but not limited to the U.S. International Traffic in Arms Regulations ("ITAR") and Foreign Assets Control Regulations ("OFAC Regulations"), which govern the export and re-export of U.S. Origin defense articles and technology and goods and technology subject to U.S. jurisdiction.

> [SEI] acknowledges and agrees that the Materials may be subject to Export Controls.  The Parties may not export, re-export or transfer, whether directly or indirectly, the Materials, or any portion thereof, without first complying strictly and fully with any applicable Export Controls regarding the Materials.

(Compl., Exh. A, ¶¶ 1(a)-(b).)  Because the contracts between SEI and DCI included a provision requiring DCI to obtain the necessary licenses from the State Department in compliance with ITAR, they do not violate the AECA.  Further, SEI alleges that DCI's failure to obtain the necessary licenses from the State Department *caused* the breach, supporting an inference that the parties formed the contract with the express intent to comply with the AECA, and DCI does not contend that the contracts are unenforceable.  SEI has met its burden of demonstrating that the contracts do not violate the AECA and that damages may be recovered for DCI's breach.

**B.      Entry of Default Judgment is Appropriate Pursuant to Rule 55(b)**

The *Eitel* factors favor the entry of default judgment against DCI in the amount of $8,618,646.57.  *Eitel*, 782 F.2d 1470.

**1.      Prejudice to Plaintiff**

Considering the first *Eitel* factor, if SEI's application for default judgment were denied, SEI would be left without a remedy because DCI has refused to participate in the litigation.  It is

1    undisputed that SEI paid DCI a total of $8,618,646.57 for the June 2014 contract.  (Aboubakar

2    Decl., Exh. A; *see also* Compl., p. 4.)  It is also undisputed that DCI failed to fulfill the terms of

3    the June 2014 contract, or to return any portion of the $8,618,646.57 after SEI cancelled the June

4    2014 contract.  (Aboubakar Decl., Exhs. B, C, D, E; *see also* Compl., p. 4.)  DCI has further failed

5    to offer any evidence disputing the allegations of the complaint or opposed the motion for default

6    judgment.  (*See* Docket.)  SEI would be left without a remedy and prejudiced were the Court to

7    deny its application for default judgment.  This factor therefore weighs in favor of granting default

8    judgment.  *Philip Morris USA*, 219 F.R.D. at 499 ("prejudice" exists where the plaintiff has no

9    "recourse for recovery" other than default judgment).

10              **2.      Merits of the Claims and Sufficiency of the Complaint**

11             Under an *Eitel* analysis, the merits of a plaintiff's substantive claims and the sufficiency of

12   the complaint are often analyzed together.  These two factors require that the plaintiff's allegations

13   "state a claim on which the [plaintiff] may recover."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th

14   Cir. 1978).

15              **a.      Failure of consideration**

16             The allegations of SEI's complaint and the evidence filed in support of the motion for

17   default judgment support a finding that SEI is entitled to relief on its affirmative claim for

18   rescission for failure of consideration.  Material failure of consideration is a ground for rescission

19   under California law.  Cal. Civ. Code § 1689(b)(4).  A party to a contract is entitled to rescind the

20   contract, and seek to be restored to its former position had it not entered into the subject contract,

21   if "through the fault of the other party the consideration which he was supposed to receive fails in

22   whole or in a material part[.]"  *Wyler v. Feuer*, 85 Cal. App. 3d 392, 403-04 (1978) ("a failure of

23   consideration must be 'material,' or go to the 'essence' of the contract before rescission is

24   appropriate").

25             Here, it is undisputed that DCI and SEI entered into the June 2014 contract for the

26   purchase of military assets and munitions, that DCI promised to provide those military assets and

27   munitions to SEI in exchange for $8,616,042.50, that SEI paid DCI $8,618,646.57 in full

28   performance of its obligations under the June 2014 contract, and that DCI did not provide SEI

with *any* military assets or munitions as required under the June 2014 contract.  (*See* Aboubakar Decl., Exhs. A, B, C, D; Compl., ¶¶ 8, 12-13, 15, 19-21.)  Further, DCI has admitted that it has not performed its obligations under the 2014 contract.  (Answer, ¶¶ 15, 22; Countercl., ¶¶ 17-21 (stating it was unable to do so because it was unable to procure the necessary licenses from the State Department to comply with the AECA and ITAR); *see also* Aboubakar Decl., Exhs. E, F, G.)  DCI has refused to return the money paid to it pursuant to the June 2014 contract despite acknowledging its failure to meet its obligations under the June 2014 contract.  (*See* Aboubakar Decl., ¶¶ 19-23.)  Therefore, SEI cannot be restored to its former position had it not entered into the subject contract absent default judgment against DCI.  *See Wyler*, 85 Cal. App. 3d at 403-04.

SEI has properly stated a claim for rescission for failure of consideration, and default judgment is appropriate on this claim.

**b.     Breach of Contract**

The allegations of SEI's complaint and the evidence filed in support of the motion for default judgment establish that DCI breached the June 2014 contract with Plaintiff.  To establish a claim for breach of contract, a plaintiff must allege (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff.  *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002) (citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570); *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 305 (1965).

Here, it is undisputed that DCI and SEI entered into the June 2014 contract for the purchase of military assets and munitions, that DCI promised to provide those military assets and munitions to SEI in exchange for $8,616,042.50, that SEI paid DCI $8,618,646.57 in full performance of its obligations under the June 2014 contract, that DCI did not provide SEI with *any* military assets or munitions as required under the June 2014 contract, and that DCI has retained all monies paid under the June 2014 contract without performing its contractual obligations.  (*See* Aboubakar Decl., Exhs. A, B, C, D, E, F, G; Compl., ¶¶ 8, 12-13, 15, 19-21; Answer, ¶¶ 15, 22; 12 ¶¶ 17-21.)  Therefore, SEI has established the existence of the contract, its own performance and DCI's nonperformance under the contract, and damages resulting from its own performance and DCI's nonperformance.

1    SEI has properly stated a claim for breach of contract, and default judgment is appropriate

2    on this claim.

3        **c.    Money Had and Received**

4    SEI fails to state a cognizable claim for money had and received.  "The foundation of an

5    action for conversion on a money had and received count is the unjust enrichment of the

6    wrongdoer, and in order for plaintiff to recover in such action she must show that a definite sum,

7    to which she is justly entitled, has been received by defendant."  *Bastanchury v. Times-Mirror*

8    *Co.*, 68 Cal. App. 2d 217, 236 (1945).  A plaintiff must plead that the defendant "is indebted to the

9    plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff."

10   *Schultz v. Harney*, 27 Cal.App.4th 1611, 1623 (1994) (citation and internal quotation marks

11   omitted).

12       A claim for money had and received operates by imposing an implied or quasi-contract on

13   the parties in order to avoid unjust enrichment.  *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No.

14   1:11-cv-01273-LJO, 2012 WL 691758, at *11 (E.D. Cal. Mar. 2, 2012), *aff'd*, 587 F. App'x 654

15   (Fed. Cir. 2014).  *See Paracor Finance, Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th

16   Cir.1996).  An implied or quasi-contract cannot be imposed where there is already a valid, express

17   contract defining the rights of the parties; the two are mutually exclusive.  *Berkla v. Corel Corp.*,

18   302 F.3d 909, 918 (9th Cir. 2002); *Paracor*, 96 F.3d at 1167.  Therefore, a claim for unjust

19   enrichment or money had and received *cannot* hinge upon the existence of a valid, express

20   contract.  *See, e.g., Gerlinger v. Amazon, Inc.*, 311 F.Supp.2d 838, 856-57 (N.D.Cal. 2004)

21   (plaintiff cannot bring a claim for unjust enrichment while relying on the existence of a valid

22   contract to establish standing).

23       As set forth more fully above, it is undisputed that DCI and SEI entered into the June 2014

24   contract for the purchase of military assets and munitions, that DCI promised to provide those

25   military assets and munitions to SEI in exchange for $8,616,042.50, that SEI paid DCI

26   $8,618,646.57 in full performance of its obligations under the June 2014 contract, and that DCI

27   admits it did not perform as agreed.  (*See* Aboubakar Decl., Exhs. A, B, C, D; Compl., ¶¶ 8-28;

28   Answer, ¶¶ 15, 22; Countercl., ¶¶ 17-21 (stating it was unable to do so because it was unable to

1   procure the necessary licenses from the State Department to comply with the AECA and ITAR).)

2   Because SEI relies on the existence of the June 2014 contract to show that it was entitled to

3   performance of the agreed upon terms, "it cannot then turn around and argue that no agreement

4   exists such that an implied or quasi-contract should now be imposed" to state a claim for

5   rescission for money had and received.  *Rasmussen v. Dublin Rarities*, No. C 14-1534 PJH, 2015

6   WL 1133189, at *12 (N.D. Cal. Feb. 27, 2015); *Paracor*, 96 F.3d at 1167; *Gerlinger*, 311

7   F.Supp.2d at 856; *Gerawan Farming*, 2012 WL 691758, * 12 (noting that "[t]his tension within

8   [plaintiff]'s claim is fatal to the claim's viability").

9       Accordingly, the Court does not recommend a judgment for money had and received

10   against DCI.

11          **d.     Conversion**

12       SEI has also sufficiently demonstrated it is entitled to default judgment on its claim for

13   conversion.  The elements of a conversion claim are: (1) plaintiff's ownership or right to possess

14   the property at issue; (2) defendant's conversion by wrongful act or disposition of property rights;

15   and (3) damages.  *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).  Conversion is any act

16   of dominion wrongfully exerted over another's property in denial of or inconsistent with the rights

17   therein.  *Fischer v. Machado*, 50 Cal. App. 4th 1069, 1072 (1996).  Money may be the subject of a

18   conversion action if it involves a specific sum capable of identification.  *Weiss v. Marcus*, 51 Cal.

19   App. 3d 590, 599 (1975).

20       As discussed above, it is undisputed that DCI and SEI entered into the June 2014 contract,

21   that DCI promised to perform its obligations in exchange for $8,616,042.50, that SEI paid DCI

22   $8,618,646.57 in full performance of its own obligations under the June 2014 contract, that DCI

23   failed to perform its obligations under the June 2014 contract, and that DCI has retained all monies

24   paid to it under the June 2014 contract despite its nonperformance.  (*See* Aboubakar Decl., Exhs.

25   A, B, C, D, E, F, G; Compl., ¶¶ 8, 12-13, 15, 19-21; Answer, ¶¶ 15, 22; 12 ¶¶ 17-21.)  Until such

26   time as DCI fully performed its obligations under the June 2014 contract, SEI was the rightful

27   owner and had a right to possession of the $8,618,646.57 it had paid to DCI.  (*See id*., ¶¶ 38-39.)

28   It is undisputed that DCI has interfered with SEI's personal property rights by knowingly retaining

1   and refusing to return the $8,618,646.57 despite its non-performance and SEI's demands (*see id.*,

2   ¶¶ 18, 22, 29, 30, 35-36, 39-41).  (Aboubakar Decl., Exhs. E, F, G.)

3        Therefore, SEI has established DCI's unlawful conversion of the $8,618,646.57, and

4   default judgment is appropriate on this claim.

5                    **e.      Fraud**

6        Finally, SEI has sufficiently demonstrated it is entitled to default judgment on its claim for

7   fraud.  Common law elements of fraud which give rise to the tort action for deceit under California

8   law are (1) misrepresentation of a material fact (consisting of false representation, concealment or

9   nondisclosure); (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4) justifiable

10  reliance on the misrepresentation; and (5) resulting damage.  *Sacramento E.D.M., Inc. v. Hynes*

11  *Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1151 (E.D. Cal. 2013) (citing *City of Atascadero v.*

12  *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 481 (1998)).

13       Here, it is undisputed that DCI and its agents made repeated material representations to

14  SEI regarding DCI's ability to obtain all necessary governmental regulatory approvals for the

15  acquisition and export of military assets and munitions to Nigeria.  (Aboubakar Decl., ¶¶ 8-9, 11-

16  13; Compl., ¶¶ 46-51.)  SEI has alleged that these statements were knowingly false at the time

17  they were made and were meant to intentionally deceive SEI and induce SEI's reliance, and that

18  SEI justifiably relied on these statements in entering the June 2014 contract with DCI.

19  (Aboubakar Decl, ¶¶ 8-10; Compl., ¶¶ 51, 52.)  DCI has offered no evidence to the contrary.  (*See*

20  Docket.)

21       It is further undisputed that SEI has been damaged because it paid DCI $8,618,646.57 in

22  full performance of its obligations under the June 2014 contract and that DCI thereafter failed to

23  perform its own obligations under the June 2014 contract.  (*See* Aboubakar Decl., ¶¶ 11, 14-18;

24  Compl., ¶¶ 52-58; *see also* Answer, ¶¶ 15, 22; Countercl., ¶¶ 17-21 (admitting DCI did not

25  perform its obligations under the June 2014 contract).)  Therefore, SEI has adequately articulated a

26  claim for fraud, and default judgment is appropriate on this claim.

27  //

28  //

### f.      Default Judgment is Favored

Having demonstrated the merits of its four valid claims, the sufficiency of the complaint and the fact that it will suffer prejudice in the absence of a default judgment because it would otherwise lack recourse for recovery, SEI has established that these factors favor the granting of default judgment as to its claims for failure of consideration, conversion, breach of contract, and fraud.

### 3.      Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172 (C.D.Cal.2002); *see also Eitel*, 782 F.2d at 1471-72.  Although the amount SEI seeks is relatively large -- $8,618,646.57 -- it is undisputed that SEI and DCI entered into the June 2014 contract for $8,616,042.50, and SEI paid $8,618,616.57 to DCI in two installments in fulfillment of the June 2014 contract.  (*See* Aboubakar Decl., Exhs. B, C, D.)  Therefore, damages of $8,618,646.57 were within the contemplation of the parties under the terms of the June 2014 contract.  (*See* Aboubakar Decl., Exh. A; Compl., Exh. A.)

Moreover, the amount of damages is capable of ascertainment from definite figures contained in the declaration of Hima Aboubakar, Director of SEI, and Christopher E. Dominguez, counsel for SEI, and the supporting materials attached thereto.  (Aboubakar Decl.; Doc. 34 (Declaration of Christopher Dominguez).)     Accordingly, this factor favors granting default judgment.

### 4.      Potential Disputes of Material Fact

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  *TeleVideo Sys., Inc.*, 826 F.2d at 917-18; *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists").  As a result, there is a very small likelihood that any genuine issue of material facts exists.  *See e.g.*, *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*,

725 F. Supp. 2d 916, 922 (C.D. Cal. 2010) (where a plaintiff "has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment"); *accord Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996) (a "plaintiff's presumptively accurate factual allegations leave little room for dispute," especially where the "defendant had the opportunity to dispute the facts alleged, but has avoided and utterly failed to respond to plaintiff's allegations").

Here, SEI filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the court clerk entered default against DCI.  DCI's Answer failed to materially refute any of the specific allegations in the complaint.  (*See* Answer.)  The Answer has been stricken from the docket as to DCI pursuant to Local Rule 183(a) (Doc. 15) <u>and</u> it failed to dispute that DCI entered into the June 2014 contract with Plaintiff, was paid by SEI, and failed to return any portion of the money paid to it by SEI.  Thus, no dispute has been raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is, at best, remote. This factor favors default judgment.

### 5. No Evidence that Default is Due to Excusable Neglect

There is no evidence in the record that DCI's failure to appear or otherwise oppose the motion to strike and the motion for default judgment is the result of excusable neglect.  Rather, since filing the Answer, Dolarian, the sole owner and shareholder of DCI, has filed his consent to magistrate judge jurisdiction (Doc. 31) and a notice of change of address for both himself and DCI (Doc. 25), and has appeared for a scheduling conference (Doc. 29).  Dolarian has adequately demonstrated that DCI's failure to oppose the motion for default is not the result of excusable neglect.  This factor, therefore, favors the entry of default.

### 6. Strong Policy Favoring Decisions on the Merits

Although the Federal Rules espouse a preference for resolving cases on their merits, *see Eitel*, 782 F.2d at 1472; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177, DCI's failure to comply with the judicial process makes a decision on the merits likely impossible.  DCI, having never been represented by counsel, has never made an appearance recognized under the federal or local rules.

Although a decision on the merits is preferable, the seventh *Eitel* policy factor alone does not preclude the entry of default judgment.

**C.     Exercise of the Court's Discretion to Enter Default Judgment Against Fewer Than All Defendants is Appropriate.**

Plaintiff seeks judgment against DCI, even though Dolarian answered the complaint and remains in the action.  Thus, the question arises as to whether the Court should enter default judgment against fewer than all of the defendants.

"When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  Therefore, the Court has discretion to deny entry of default judgment where a just reason exists to delay entry of a final judgment as to DCI.  *Id.*; *see also Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001); *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (noting that the court has discretion to enter a default judgment as to less than all defendants).

As discussed above, the factors that militate in favor of entering a default judgment here would also tend to indicate that "there is no just reason for delay."  However, in *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872), the Supreme Court held that under certain circumstances, the court should not enter a default judgement against one or more defendants that is, or is likely to be, inconsistent with judgment on the merits in favor of the remaining answering defendant(s).

**1.     *Frow* Standard**

The Supreme Court warned that "absurdity might follow" in instances where a court "can lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined against the others."  *Frow*, 82 U.S. at 554.  The Ninth Circuit has summarized the *Frow* standard as follows: "[W]here a complaint alleges that defendants are *jointly* liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants."  *In re First T.D. & Investment*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow*, 82 U.S. at 554); 10A Charles Alan Wright, Arthur R. Miller &

Mary Kay Kane, Federal Practice and Procedure: Civil 3D § 2690 (2001) (noting that *Frow* stands for the proposition that "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted").  The rule is designed to avoid inconsistent judgments against defaulting defendants and the remaining defendants. *Shanghai Automation*, 194 F. Supp. 2d at 995 (citing *Frow*, 82 U.S. at 554-55).

"While *Frow* 'undoubtedly stands for the proposition that in certain circumstances it is inappropriate to enter a default judgment against one defendant when other defendants in the same case have prevailed,' subsequent courts have pointed out that the precise holding of what those circumstances are is unclear." *Shanghai Automation*, 194 F. Supp. 2d at 1006 (quoting *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) (noting that the *Frow* court did not identify what the Court intended to be "certain circumstances," largely in part due to the Court's ambiguity and failure to identify the relationship between the co-defendants)).

"As a result, the scope of *Frow*'s injunction against entering default judgments while claims are pending against other defendants has been stated variously.  Some courts have focused on whether the complaint seeks to hold defendants *jointly* liable -- such as where a tortious act is committed by several persons acting in concert wherein each tortfeasor is entirely responsible for the resulting damage -- in contrast to cases in which there is 'several' or 'joint and several' liability wherein a finding of liability as to one defendant is consistent with a finding of no liability as to others." *Shanghai Automation*, 194 F. Supp. 2d at 1006 (collecting cases).  Further, some courts have held that *Frow* "is not limited to claims asserting joint liability, but extends to certain circumstances in which the defendants have closely related defenses or are otherwise similarly situated." *Id.* (collecting cases).  "Most jurisdictions have narrowly construed *Frow* to bar entry of default judgment against one of several defendants only if 'the theory or recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." *Phoenix Renovation Corp. v. Gulf Coast Software, Inc.*, 197 F.R.D. 580, 582-83 (E.D. Va. 2000).

The two lines of cases "are not at odds but reflect a more general principle[:] *Frow*'s applicability turns not on labels such as 'joint liability' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform. . . . [W]here uniformity of liability is not logically required by the facts and theories of the case, the risk of inconsistent judgments is not sufficiently extreme to bar entry of default judgment as a matter of law." *Shanghai Automation*, 194 F. Supp. 2d at 1008-09.

### 2.   *Frow* Does Not Preclude Entry of Default Judgment Against DCI

SEI alleges claims for conversion and fraud against both DCI[4] and Dolarian:

- **Count 4: Conversion:** SEI alleges it was the rightful owner and had a right to possession of the $8,618,646.57 sent to defendants until such time as defendants performed the June 2014 contract, defendants have knowingly and intentionally retained and refused to return the $8,618,646.57 as demanded by SEI, defendants' retention of the $8,618,646.57 has substantially interfered with SEI's personal property rights over the money, and SEI has been harmed and damaged by defendants' conduct in retaining the $8,618,646.57 since the date of conversion, May 7, 2015.

- **Count 5: Fraud:** SEI alleges Dolarian, on his own behalf and on behalf of DCI, made numerous false representations to SEI to induce SEI to sign the June 2014 contract with DCI, pay DCI, and delay demand for the return of the money paid to DCI, and that defendants repeatedly misrepresented the state of DCI's ability to perform the requirements of the June 2014 contract, the status of governmental approvals required for performance of the June 2014 contract. SEI alleges the statements made by defendants were knowingly false at the time they were made and intentionally made to induce SEI's reliance in entering into the June 2014 contract and in paying defendants $8,618,646.57.

(*See* Compl., pp. 4-9.)   As SEI's allegations show, SEI brings these claims against DCI and Dolarian under a theory of joint and several liability.  Thus, while Dolarian may be found jointly liable if he directed DCI's actions, a finding that Dolarian is *not* jointly liable would *not* be

//

---

[4]   SEI also alleges claims for failure of consideration (Count 1) and breach of contract (Count 3) against DCI alone, which do not implicate the *Frow* analysis under Rule 54(b).  As discussed above, *see supra* at IV(B)(2)(c), the undersigned declines to recommend default judgment be entered against DCI for money had and received (Count 2) as the claim is *not* viable against either defendant. *Rasmussen*, 2015 WL 1133189, at *12; *Gerawan Farming*, 2012 WL 691758, at *12, *aff'd*.  Therefore, SEI's claim for money and received also does not implicate the *Frow* analysis under Rule 54(b).

1   inconsistent with a judgment against DCI. [5]   Put another way, SEI's claims for conversion and

2   fraud can stand against DCI without necessarily finding Dolarian individually liable as well.[6]   *See,*

3   *e.g., Shanghai Automation*, 194 F. Supp. 2d at 1009 (claim for conversion can stand against other

4   defendants without necessarily finding individual liable as well); *Provident Land Corp. v. Bartlett*,

5   72 Cal. App. 2d 672, 687 (1946) (noting a corporate officer or agent may also be held liable to a

6   third party injured by the corporation's fraud or deceit, "if they assist or participate knowingly or

7   recklessly without knowledge, in obtaining property by fraud or deceit").

8        Given that SEI's claims against Dolarian and DCI are predicated on joint and several

9   liability, *Frow* does not preclude the entry of default judgment against DCI alone.   *See Shanghai*

10   *Automation*, 194 F. Supp. 2d at 1008 (citing *Douglas v. Metro Rental Servs., Inc.*, 827 F.2d 252,

11   254-55 (7th Cir. 1987) (observing that the *Frow* rule applies to cases where all the defendants

12   were claimed to be jointly, not severally, liable)).   As explained by the *Shanghai Automation*

13   court, "'[t]he result in *Frow* was clearly mandated by the Court's desire to *avoid logically*

14   *inconsistent adjudications* as to liability.'"   *Id.* (quoting *In re Uranium Antitrust Litigation*, 617

15   F.2d 1248, 1257 (7th Cir. 1980)).   The Court continued:

16        Rule 54(b) was amended in 1961 to permit entry of judgment in multiple party
17        litigation in order the deal with the problem of hardship resulting from delay in
       waiting until completion of the entire case.   The purpose of Rule 54(b) which
18        post-dates *Frow* by nearly a century,[FN9] is to "strike a balance between premature
       decision-making and the pragmatic needs of the litigants in complex multiple-
19        party actions."   Preserving the Court's discretion in balancing those competing
       interests comports with other provisions of the Federal Rules which weigh the
20        policy against inconsistent judgments against the pragmatic consideration of the
       hardship to existing parties in the litigation.   **To hold that the mere possibility of**
21        **inconsistent judgment divests the Court of its discretion under Rule 54(b)**
       **would imply that whenever there are multiple defendants who raise similar**

22

---

23   [5]   As of the time of issuance of these findings and recommendation, no party has pled that "there exists a unity of
     interest and ownership" between Dolarian and DCI "such that any separateness between them has ceased to exist."
24   *Cf. Pharmaplast S.A.E. v. Zeus Medical Holdings, LLC*, No. 2:15-cv-JAD-PAL, 2016 WL 923092 (D. Nev. Mar. 10,
     2016) (holding that where plaintiff sought relief against "all defendants collectively, for jointly undertaken action, and
25   based primarily on unity-of-interest [alter ego] theories," the *Frow* doctrine "cautions against entering a default
     judgment against [the corporate entity] while its management co-defendants continue to actively defend these jointly
26   targeted claims").

27   [6]   For example, while SEI may be entitled to judgment on its claim against DCI for fraud based upon DCI and its
     agents' repeated material misrepresentations, *see supra* at IV(B)(2)(e), Dolarian may be able to prove he did not make
     any material misrepresentations as an individual or as an agent on behalf of DCI.   *See Shanghai Automation*, 194 F.
28   Supp. 2d at 1009.

**defenses, the court could never enter a default judgment until conclusion of the entire case regardless of the substantial prejudice likely to be suffered by the plaintiff as a result of the delay.  Such a rule would contravene the purpose of the 1961 amendment to Rule 54(b).**

[. . .]

> FN9    The Second Circuit has suggested but not held that it is unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b).  *See International Controls Corp. v. Vesco*, 535 F.2d 742, 746-47 n.4 (2d Cir. 1976).

*Id.* at 1008-09 (internal citations omitted) (emphasis added).

In sum, *Frow* does not preclude the entry of default judgment against DCI alone.  *See Shanghai Automation*, 194 F. Supp. 2d at 1008 (citing *Douglas*, 827 F.2d at 254-55 (observing that the *Frow* rule applies to cases where all the defendants were claimed to be jointly, not severally, liable)).

### 3.    The Court Should Enter Default Judgment under These Circumstances

Here, like *Shanghai Automation*, "because differing judgments would not necessarily be illogical, *Frow* does not apply, and the Court retains discretion to enter default judgments against less than all defendants under Rule 54(b).  This is an appropriate case to exercise such discretion." *Id.* at 1009-10.

There are strong reasons favoring entry of a default judgment against DCI even though defendant Dolarian will remain in the case.  Nearly all the factors enumerated in *Eitel v. McCool*, militate in SEI's favor.  *See supra.*  Further weighing in favor of granting default judgment at this stage is the danger that any damages awarded is likely to become increasingly uncollectible with the passage of time.  *Cf. In re Uranium Antitrust Litig.*, 473 F. Supp. 382, 390 (N.D. Ill. 1979) (plaintiff faced the possibility that the "defaulting defendants, which are all foreign corporations, may conceal or transfer their assets which are subject to execution by United States Courts").  There is significant risk of prejudice if entry of judgment against DCI is delayed, in that the damages sought are significant, and defendant Dolarian has previously represented to the Court that the United States government has seized some or all of the funds paid to DCI by SEI under the June 2014 contract (*see* Answer, ¶ 18 (stating that "Defendants admit that they have not returned funds provided by SEI, as those funds have been improperly seized by the United States

Government and [ ] are not in Defendants' possession, custody, or control")).  Regardless of the reason the money has been seized, SEI has sufficiently demonstrated the risk of prejudice by a delayed grant of default against DCI.

Accordingly, IT IS RECOMMENDED that default judgment be GRANTED against defaulting defendant Dolarian Capital, Inc., in the amount of $8,618,646.57.

**E.      Damages and Attorney's Fees**

As stated above, SEI seeks a total award of $8,618,646.57 -- the total sum of money paid to DCI under the June 2014 contract.  California law provides that, "[f]or the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."  Cal. Civ. Code § 3300.  In addition, breach of contract damages must be "clearly ascertainable in both their nature and origin."  *Id.*, § 3301.

Here, SEI has provided evidence demonstrating it has been damaged in the amount of $8,618,646.57.  (*See* Aboubakar Decl. and exhibits attached thereto.)  It is RECOMMENDED that Plaintiff's request for damages be GRANTED.

Further, SEI has incurred costs of $738.43 in connection with pursuing default judgment against DCI.  (*See* Dominguez Decl., ¶ 9.)  This cost is recoverable under Fed. R. Civ. P. 54(d).  It is therefore RECOMMENDED that Plaintiff's request for costs be GRANTED.

## V.      CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS that:

1.      Plaintiff Societe d'Equipments Internationaux Nigeria, Ltd.'s motion for default judgment be GRANTED against Defendant Dolarian Capital, Inc., on Plaintiff's claims for failure of consideration, breach of contract, conversion, and fraud;

2.      Plaintiff Societe d'Equipments Internationaux Nigeria, Ltd.'s motion for default judgment be DENIED against Defendant Dolarian Capital, Inc., on Plaintiff's claim for money had and received as it fails to state a claim upon which relief may be granted against any defendant;

3.      Defendant Dolarian Capital, Inc., be ORDERED to pay damages in the amount of $8,618,646.57 to Plaintiff Societe d'Equipments Internationaux Nigeria, Ltd.; and

4.      Defendant Dolarian Capital, Inc., be ORDERED to pay costs in the amount of $738.43 to Plaintiff Societe d'Equipments Internationaux Nigeria, Ltd.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **August 17, 2016**                              /s/ *Sheila K. Oberto*
                                                UNITED STATES MAGISTRATE JUDGE

22