UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIETE D'EQUIPMENTS INTERNATIONAUX NIGERIA, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>DOLARIAN CAPITAL, INC., and ARA G. DOLARIAN,<br><br>Defendants. | No. 1:15-cv-01553-DAD-SKO<br><br><br>ORDER DENYING DEFENDANT ARA G. DOLARIAN'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 45) |

On October 9, 2015, plaintiff Societe d'Equipments Internationaux Nigeria, Ltd. ("SEI") filed a complaint against defendants Dolarian Capital, Inc. ("DCI"), and Ara G. Dolarian ("Dolarian") seeking a return of the $8,618,646.57 it paid pursuant to a contract under which defendants were to supply military assets and munitions to SEI. (Doc. No. 1.) Plaintiff alleges defendants breached that contract by accepting payment of the full purchase price and then failing to supply the promised military assets and munitions. (*Id*.) In its complaint, plaintiff brings causes of action for (1) rescission for failure of consideration; (2) money had and received; (3) breach of contract; (4) conversion; and (5) fraud. (*Id*. at 13.)

On July 22, 2016, defendant Dolarian moved for summary judgment in his favor as to plaintiff's second, fourth, and fifth claims on the grounds that the contract in question was illegal because: (1) SEI did not provide a valid End User Certificate necessary for

1

defendants to obtain governmental approval of the transaction; and (2) the funds SEI paid to DCI were stolen from the Nigerian government resulting in the seizure of those funds by the United States government. (Doc. Nos. 45-46.) On August 10, 2016, plaintiff filed an opposition to defendant Dolarian's motion. (Doc. No. 55.) On October 18, 2016, the motion came before the court for hearing. (Doc. No. 72.) Defendant Dolarian appeared telephonically at the hearing in pro se on his own behalf. (*Id.*) Attorneys Christopher Dominguez and Barry Goldner appeared on behalf of plaintiff. (*Id.*) No appearance was made on behalf of defendant DCI.[1] For the reasons set forth below, defendant Dolarian's motion for summary judgment will be denied.

## BACKGROUND

**A.    Statement of Facts**

Defendant Dolarian has submitted a statement of undisputed facts in connection with his motion for summary judgment. (Doc. No. 47.) Plaintiff filed a response to that statement of undisputed facts. (Doc. No. 55-1.) In addition, plaintiff has submitted declarations from its Director, Hima Aboubakar, and attorney Christopher Dominguez (Doc. Nos. 55-2 and 55-3), while defendant Dolarian has submitted his own declaration. (Doc. No. 48.)[2] The evidence before the court on summary judgment is as follows.

In June 2014, SEI and DCI entered into a contract pursuant to which DCI agreed to sell certain military assets and munitions to SEI for the sum of $8,616,042.50. (*See* Doc.

/////

/////

---

[1] Defendant DCI has not appeared in this action and has not responded to the complaint. Accordingly on November 30, 2015, a Clerk's Certificate of Entry of Default was filed as to defendant DCI. (Doc. No. 16.) Plaintiff has filed a motion for entry of default judgment against defendant DCI (Doc. No. 32) and that motion will be the subject of a separate court order.

[2] Court records in this action also reflect an earlier declaration by Hima Aboubakar submitted by plaintiff in support of its motion for entry of default judgment against defendant DCI (Doc. No. 35), as well as an earlier declaration by defendant Dolarian submitted in support of his motion to unseal a seizure warrant (Doc. No. 51). The court will take judicial notice of these declarations which appear in the court's own records.

Nos. 35 at 6–11 and 48 at 9–14.)[3] The contract provided:

> SELLER agrees that it shall maintain all permits, licenses and other government approvals that may be required by the United States for SELLER's performance under this agreement. Specifically, SELLER is responsible for all Export License(s) applications from Country of Export and the End User (BUYER) is responsible for Import Permits or Waivers thereof. Buyer will cooperate with Seller and will provide a valid executed acceptable End User Certificate and other documentation, if required by any Governmental Agency associated with this transaction. Attachment "B".

(Doc. Nos. 35 at 7 and 48 at 10.) The contract also stated, "SELLER will prepare End User Certificate for Buyer and Buyer will return to SELLER the executed original to SELLER." (Doc. Nos. 35 at 10 and 48 at 13.)

On June 16, 2014, defendants received payment from plaintiff in the sum of $4,998,700.00 on the written contract sent via wire transfer from USBC, Hong Kong. (Doc. Nos. 48 at 3 and 55-1 at 4.) According to SEI Director Hima Aboubakar, DCI agent Marion Ford thereafter requested that SEI pay the balance of the contract price and represented that upon receipt of those funds DCI would start delivering the contracted for military assets and munitions. (Doc. No. 35 at 2.) Ford also represented that DCI had received confirmation that it had the appropriate export licenses from the United States government. (*Id.*) On September 9, 2014, defendants received from plaintiff the remainder of the consideration due under the contract by way of a second wire transfer from Zenith Bank in the amount $3,620,000.00. (Doc. Nos. 47 at 3 and 55-1 at 4.)

/////

---

[3] Plaintiff objects that defendant Dolarian has not properly authenticated the contract attached as Exhibit B to his declaration filed in support of the motion for summary judgment. (*See* Doc. No. 55-5 at 7–8.) Plaintiff is correct that defendant Dolarian's exhibit has not been properly authenticated under Rule 901 of the Federal Rules of Evidence. However, plaintiff attached an authenticated version of the same contract as an exhibit to the declaration of its Director, Hima Aboubakar, which it submitted in support of its earlier filed motion for entry of default judgment against defendant DCI. (*See* Doc. No. 35 at 6–11.) Moreover, there appears to be no real dispute that plaintiff SEI paid defendants the sum of $8,618,646.57 pursuant to the terms of the contract. (*See* Doc. No. 55-2 at 2 and 55-6 at 8.) Accordingly, the court will consider the contract before it in ruling on the pending motion.

In moving for summary judgment in his favor, defendant Dolarian relies upon his own declaration in which he states in conclusory fashion that "the funds wired as consideration under the contract were stolen from the Nigerian Government by M.S. Dasuki (Nigerian National Security Advisor)." (Doc. No. 48 at 3.) To support this claim, defendant Dolarian asks that the court take judicial notice of a "report issued by the Nigerian Government in support of the arrest of Nigerian Security Advisor M.S. Dasuki." (Doc. No. 49 at 1.) Defendant Dolarian's request for judicial notice references an "Exhibit A" in this regard. (*Id.*)[4] However, no reports or exhibits were in fact attached to that request for judicial notice. (*Id.*) Moreover, none of the exhibits attached to defendant Dolarian's declaration in support of summary judgment suggest in any way that the funds paid to defendants by plaintiff were stolen. (*See* Doc. No. 48.)

With respect to his contention that he is entitled to summary judgment because plaintiff did not provide defendants a valid End User Certificate necessary to obtain governmental approval of the transaction, defendant Dolarian declares:

> It took months to secure what I thought was an acceptable End User Certificate from plaintiff. I received End User Certificate for another submission to the U.S. Department of State on or about July 6, 2015. Dolarian Capital applied to the US Department of State for approval on July 13, 2015. The United States Department of State returned my application 'Returned Without Action' because the Department of State could not obtain confirmation of the End User Certificate from the Nigerian Government.

(Doc. No. 48 at 2.) In support of this claim on summary judgment defendant Dolarian has submitted an incomplete February 2016 denial of application for brokering activity that references an attached six page application. (*Id*. at 16–17.) Notably, only the first page of

/////

/////

/////

---

[4] At the hearing on the motion defendant Dolarian represented that the document he was asking the court to judicially notice was actually "Exhibit B" to his request. This representation also appears to have been in error.

what was apparently a five-page application has been submitted to the court in that exhibit. (*Id.*)[5]

Finally, Dolarian states in his declaration that on or about February 3, 2015, the United States Department of Homeland Security seized all of the funds paid by plaintiff to the defendants. (Doc. No. 48 at 4.) In support of this representation, defendant Dolarian has come forward merely with copies of four seizure warrants issued by a magistrate judge of this court on February 2, 2015 authorizing the seizure of a combined amount not to exceed just under $7 million from various bank accounts in names other than those of the defendants in this action. (Doc. No. 48 at 24–28.)[6]

In addition to the obvious evidentiary deficiencies with the evidence submitted by defendant Dolarian in support of his motion for summary judgment, even if the facts as represented by him had some evidentiary support, they have been disputed by plaintiff's evidence. In this regard plaintiff SEI's director, Aboubakar, states in his declaration submitted under penalty of perjury that:

> The $8,618,646.57 paid by SEI to Dolarian Capital, Inc. (DCI) and Ara G. Dolarian was not received by the Nigerian Government as part of some illegal scheme or money laundering operations. The money was part of a legitimate Nigerian Government operation intended to procure weaponry for Nigeria's fight against Boko Haram. The funds provided to DCI and Mr. Dolarian were not 'stolen' from the Nigerian government.
>
> * * *

---

[5] Defendant Dolarian has not authenticated this document pursuant to Rule 901 of the Federal Rule of Evidence nor has he produced any evidence to support a finding that the document is what he claims it to be. Moreover, the late dates on the one page of the purported application and denial submitted to the court, both dates after SEI cancelled the transaction in question, suggests that the document is not related to the contract at issue in this action.

[6] Defendant Dolarian has not authenticated the four February 2, 2105 seizure warrants and has not presented the affidavits submitted in support of those warrants that might explain what they relate to. However, at the hearing on the pending motion counsel for plaintiff did not appear to dispute the fact that at least some of the funds paid by plaintiff to defendants under the contract were seized by the United States government.

> The end user certificates (EUC) for the contract at issue were provided to SEI by Dolarian Capital, Inc. and Mr. Dolarian.
>
> SEI forwarded the EUCs provided by DCI and Mr. Dolarian to the Nigerian authorities for execution. To my knowledge, every EUC was properly executed by the Nigerian authorities and returned to DCI and Mr. Dolarian. SEI is unaware of what steps DCI and Mr. Dolarian took concerning the EUCs after they were provided to them.
>
> * * *
>
> Mr. Dolarian and DCI never provided any military items or munitions to SEI and refused to return to SEI the $8,618,646.57 paid under the contract.

(Doc. No. 55-2 at 2.) (*Id.*) Finally, there is evidence before the court that on May 7, 2015, Mr. Aboubakar sent a letter to DCI informing it that plaintiff SEI was cancelling the contract due to defendants' delay in performance and failure to obtain an export license. (Doc. No. 35 at 3, 19.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether

1  there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

2  "In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**DISCUSSION**

As noted above, defendant Dolarian moves for summary judgment in his favor with respect to plaintiff's second, fourth, and fifth claims on the grounds that the parties' contract was illegal because:  (1) plaintiff was responsible for providing a valid End User Certificate to DCI, but because the End User Certificate was not confirmed by Nigeria, DCI could not deliver the promised goods; and (2) the United States Department of Homeland Security seized the funds paid by plaintiff to defendants because those funds were stolen from the Nigerian government.

However, defendant Dolarian has failed to satisfy his initial burden of coming forward with evidence establishing the absence of a genuine issue of material fact.  *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.  Moreover, he has certainly failed to establish that under the undisputed facts before the court he is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  In this regard, defendant Dolarian has simply failed to come forward with any evidence establishing that under the parties' contract it was plaintiff who was solely responsible for the End User Certificate or that plaintiff breached any duty it had with respect to that certificate.  Indeed, the contract before the court on summary judgment appears to clearly provide that defendants were responsible for preparing the End User Certificate and

plaintiff was responsible merely for returning the executed original to defendants.  (*See* Doc. Nos. 35 at 10 and 48 at 13) ("SELLER will prepare End User Certificate for Buyer and Buyer will return to SELLER the executed original to SELLER.").  Defendant has also come forward with no evidence that the $8,618,646.57 paid by plaintiff to defendants pursuant to their contract constituted money stolen from the Nigerian government.  *See Orr*, 285 F.3d at 773 ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").

Finally, even if the conclusory arguments advanced by defendant Dolarian in support of his motion were supported by any evidence, plaintiff has met any burden it might bear by tendering evidence of specific facts in the form of declarations establishing that, at the very least, a dispute exists as to issues of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  Accordingly, defendant Dolarian's motion for summary judgment must be denied.

## CONCLUSION

For all of the reasons set forth above, defendant Ara G. Dolarian's motion for summary judgment (Doc. No. 45) is denied.

IT IS SO ORDERED.

Dated: **November 18, 2016**

UNITED STATES DISTRICT JUDGE