UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIETE D'EQUIPMENTS INTERNATIONAUX NIGERIA, LTD., <br><br> Plaintiff, <br><br> v. <br><br> DOLARIAN CAPITAL, INC. and ARA G. DOLARIAN, <br><br> Defendants. | No. 1:15-cv-01553-DAD-SKO <br><br><br> ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> (Doc. No. 82) |

This matter is before the court on plaintiff's motion for partial summary judgment with respect to its claim for conversion. Having reviewed the parties' written submissions and heard oral argument, and for the following reasons, plaintiff's motion will be denied.

## BACKGROUND

**A.  Factual Background**

The relevant facts that follow are largely undisputed and are principally derived from the parties statements of fact presented on summary judgment. (*See* Doc. Nos. 82-2, 92, 97-1 (collectively, "SF").)

Ara G. Dolarian ("Dolarian") is the sole shareholder, president, and chairman of Dolarian Capital, Inc. ("DCI"). (SF ¶ 1.) In June 2014, Societe D'Equipments Internationaux Nigeria, Ltd. ("SEI"), a Nigerian company, executed Contract No. 14_090v4 with DCI (the "sales

1

contract"), whereby SEI agreed to purchase, and DCI agreed to sell, military assets and munitions for a price of $8,616,042.50. (SF ¶ 2.)[1] DCI did not have any bank accounts with which to receive payment from SEI, so Dolarian directed SEI to make payments under the contract to DCI's client trust account held by attorney Myron Smith. (SF ¶ 3.) By September 2014, SEI paid at least $8,618,646.57 into the client trust account as payment under the sales contract. (SF ¶ 4.) DCI never delivered any of the items identified in the sales contract. (SF ¶ 5.) In May 2015, SEI gave notice to DCI that SEI was cancelling the sales contract and demanded that its money be returned. (SF ¶ 6.) Neither DCI nor Dolarian has returned any of the funds paid by SEI. (SF ¶ 7.)

Of the monies purportedly received, Dolarian or DCI: (1) paid $750,000 to Marion Ford for his services as DCI's representative in dealings with SEI; (2) paid approximately $50,000 to the California Franchise Tax Board for a DCI tax obligation; (3) transferred $6.8 million to Martel 3D, LLC, a company wholly owned by Dolarian's wife, and controlled by her and possibly his children—$4.35 million of which was subsequently transferred to Arthur Ave. Consulting, Inc., a corporation wholly owned and controlled by Dolarian himself; (4) purchased a BMW X3 automobile; and (5) cannot be account for nearly $900,000 of the funds. (*See* SF ¶¶ 8– 14, 17–18.) Dolarian also states that he used some of the funds from the transaction to make deposits to hold the goods necessary to fulfill the sales contract, although it is unclear whether those funds were ultimately used to pay for the goods. (*See* Doc. No. 94 ¶ 18.) In February, 2015, the United States Department of Homeland Security seized all remaining funds from the bank accounts held by Martel 3D, LLC and Arthur Ave. Consulting, Inc. (SF ¶ 20.)

/////

/////

---

[1] The sales contract sets forth several terms and conditions between the purported buyer—SEI, acting on behalf of the Nigerian Ministry of Defense—and the purported seller, DCI. (*See* Doc. No. 48, Ex. 4.) Of particular relevance here, the sales contract provided that SEI and DCI were separately responsible for furnishing documents and certification prior to delivery of the military assets and munitions. (*See id.* at 5.) For example, DCI was required to prepare an End User Certificate for SEI, and thereafter SEI was to return an executed original to DCI. (*Id.*) SEI was also required to provide DCI with an original Import Certificate or Waiver of Requirement. (*Id.*)

**B.     Procedural Background**

Plaintiff SEI commenced this action on October 9, 2015, against defendants Dolarian and DCI seeking a return of the $8,618,646.57 it paid DCI pursuant to the June 2014 sales contract (Doc. No. 1.) Plaintiff alleges the following causes of action: (1) rescission for failure of consideration; (2) money had and received; (3) breach of contract; (4) conversion; and (5) fraud.

On December 21, 2016, plaintiff moved for partial summary judgment on its conversion claim against defendant Dolarian only.[2] (Doc. No. 82.) On January 19, 2017, defendant Dolarian, then proceeding *pro se*, filed his opposition to that motion. (Doc. No. 93.) On January 31, 2017, plaintiff filed its reply. (Doc. No. 97.) This matter came before the court for hearing on February 7, 2017. (Doc. No. 101.) Attorney R. Jeffrey Warren appeared on plaintiff SEI's behalf. On the day of the hearing, the court granted leave to substitute counsel Roger Wilson as attorney for defendant Dolarian, and accordingly, attorney Wilson appeared on defendant Dolarian's behalf at the hearing.[3] Due to the late appearance of attorney Wilson in the matter, the court granted the parties leave to file limited supplemental post-hearing briefing with respect to plaintiff's motion for partial summary judgment. On February 13, 2017, defendant Dolarian filed a supplemental letter brief in opposition to the motion. (Doc. No. 103.) On February 17, 2017, plaintiff filed a supplemental letter brief in reply. (Doc. No. 105.)

/////

/////

---

[2] If not clear from the statement of facts above, this case is quite unusual and confounding in many respects. In keeping with its unusual nature, plaintiff has moved for summary judgment in its favor solely with respect to its conversion claim. As observed at the hearing, it is the court's perception that there is much it has not been made privy to due to the tightly focused nature of the motion for partial summary judgment. Of course, that matters not for purposes of resolving the pending motion but is offered only in partial explanation for why the pending motion has been submitted for decision as long as it has been.

[3] As of the date of the hearing, defendant DCI had not appeared in this action and had not responded to the complaint. Accordingly, on November 30, 2015, default of defendant DCI was entered by the Clerk of the Court. (Doc. No. 16.) Plaintiff then filed a motion seeking entry of default judgment against defendant DCI. (Doc. No. 32.) However, on November 21, 2016, the court denied that motion without prejudice to its renewal upon disposition of plaintiff's claims against defendant Dolarian. (Doc. No. 74.)

# LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Where the party moving for summary judgment will bear the burden of proof at trial, as is the case here, that party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

If the moving party meets its initial burden of production, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**DISCUSSION**

Here, plaintiff SEI has moved for summary judgment in its favor only with respect to its conversion claim against defendant Dolarian. The elements of conversion in California are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (citing *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014)); *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998). As a strict liability tort, the knowledge, intent, good faith, and motive of the defendant are immaterial to a conversion claim. *Welco*

/////

*Elecs.*, 223 Cal. App. 4th at 208; *see also L.A. Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012).

As to the first element of conversion, plaintiff SEI argues that it had a right to possession of the money it paid DCI, as of the date of its notice of cancellation.[4] Specifically, plaintiff contends it is entitled to recovery of the money paid under contract law—either as damages resulting from DCI's failure to perform under the sales contract (*see* Doc. No. 82-1 at 5–6 (citing California. Commercial Code § 2711(1))), or as equitable relief should the sales contract be deemed void as a matter of law (*see* Doc. No. 105 at 2–5 (citing *Smith v. Bach*, 183 Cal. 259, 263 (1920))). "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994)). Thus, a breach of contract may also constitute tortious conduct "when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." *Id.* at 553–54 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105 (1995)). This requirement for independent duties is rooted in the distinction between contract law and tort law: "[c]ontract law exists to enforce legally binding agreements between parties; tort law is

/////

---

[4] On summary judgment, plaintiff SEI does not appear to contend that it retained ownership of or actually possessed the money at any point after it made payments to DCI's client trust account. To the extent its conversion claim is based on theories of ownership or actual possession, plaintiff SEI has presented no evidence on summary judgment to support the notion that SEI retained title to the money after transferring it to DCI. *See, e.g.*, *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 233–34 (2014) (holding that the plaintiff could not state a claim for conversion because it neither owned nor possessed a $3-million deposit it paid to the defendant, and because it transferred title to the deposit at the time of payment, despite separate contractual rights to recovery of the deposit); *Cakebread v. Berkeley Millwork & Furniture Co.*, No. 16-cv-00083-RS, 2017 WL 579913, at *8 (N.D. Cal. Feb. 13, 2017) (holding that the plaintiff could not state a claim for conversion with respect to a deposit payment, even if the plaintiff maintained a contractual right to repayment after cancellation).

designed to vindicate social policy." *Applied Equip.*, 7 Cal. 4th at 514 (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683, 765 P.2d 373, 389 (1988)).

Here, plaintiff SEI's theory of liability under tort law is predicated exclusively on its right to recovery under contract law. In other words, on summary judgment as to its conversion claim SEI only offers evidence that it was entitled to contract remedies either: (1) under California Commercial Code § 2711, flowing from defendant Dolarian's purported breach of the sales contract; or (2) under principles of equity if the sales contract is determined to be illegal. However, plaintiff SEI has not identified, nor can this court discern, either evidence of or legal authority tending to support the existence of an independent right to possession of the paid monies, outside the context of the sales contract. *Cf. Dep't of Indus. Relations v. UI Video Stores, Inc.*, 55 Cal. App. 4th 1084, 1096 (1997) (finding that a state agency with a right to collect and deposit unpaid benefits under the Labor Code had a right to immediate possession of those benefits for purposes of a conversion claim); *Cerra v. Blackstone*, 172 Cal. App. 3d 604, 609 (1985) (holding the defendant car dealer liable in conversion where the plaintiff had a right to reinstate an auto loan under a state consumer protection statute and, consequently, a right to possession of his vehicle).

Separately, in moving for summary judgment in its favor plaintiff SEI relies on the decision in *Fischer v. Machado*, 50 Cal. App. 4th 1069 (1996), to extend its conversion claim to defendant Dolarian. In that case, the California Court of Appeal recognized the long-standing principle that "an agent, with knowledge of another's right to receive a specific amount of money, can be liable for conversion when he applies it for his own use." *Id.* at 1073. However, to the extent plaintiff's theory of liability for conversion is based on defendant Dolarian's misappropriation of payments made to DCI under the sales contract, such a theory still requires plaintiff to establish that it had a right to possession of the monies—ostensibly under contract law. Even if this court held that a conversion claim against a corporate agent can be predicated solely on the corporation's breach of contract—and it declines to do so now—the evidence presented here on summary judgment raises at least a triable issue as to whether defendant DCI breached the contract in the first place and whether plaintiff was entitled to contract remedies.

For example, Mr. Ford, DCI's representative, states he provided a draft End User Certificate to SEI but never received a fully executed version in return, as required under the sales contract. (Doc. No. 95 ¶¶ 6, 10.) Moreover, the court cannot conclude, as a matter of law, that DCI's eleven-month delay in delivering military assets and munitions preceding SEI's notice of cancellation, was unreasonable. *See* Cal. Com. Code § 2309 cmt. 1 ("The reasonable time [for shipment or delivery under a contract] . . . depends upon what constitutes acceptable commercial conduct in view of the nature, purpose and circumstances of the action to be taken."). Thus, at minimum, plaintiff has failed to come forward with evidence on summary judgment sufficient to carry its initial burden of showing it had an undisputed right to possession over the money paid to defendant DCI.

**CONCLUSION**

For the reasons set forth above, the court concludes that the evidence now before it would not entitle plaintiff to a directed verdict with respect to conversion if presented at trial. *See C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480; *Houghton*, 965 F.2d at 1536. Accordingly, plaintiff SEI's motion for partial summary judgment with respect to its conversion claim (Doc. No. 82) is denied.

IT IS SO ORDERED.

Dated: **September 12, 2017**

UNITED STATES DISTRICT JUDGE